## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| William Masten and Catherine McAlister, on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs,<br><br> vs.<br><br>Metropolitan Life Insurance Company, the Metropolitan Life Insurance Company Employee Benefits Committee and John/Jane Does 1-20<br><br>   Defendant. | Civil Action No. 18-cv-11229<br><br><br><br><br>CLASS ACTION |

## COMPLAINT

Plaintiffs William Masten and Catherine McAlister, by and through their attorneys, on behalf of themselves and all others similarly situated, based on personal knowledge with respect to their own circumstances and based upon information and belief pursuant to the investigation of their counsel as to all other allegations, allege the following.

## INTRODUCTION

1. This is a class action against Defendant Metropolitan Life Insurance Company ("Metropolitan"), the Metropolitan Life Insurance Company Employee Benefits Committee (the "Committee"), and the individual members of the Committee (collectively with Metropolitan and the Committee, the "Defendants") concerning the failure to pay the alternative benefits available under its defined benefit Metropolitan Life Retirement Plan (the "Plan") in amounts that are actuarially equivalent to the Plan's default benefit as required under ERISA and the terms of the Plan itself. By not offering actuarially equivalent pension benefits, Metropolitan is causing retirees to lose part of their vested retirement benefits in violation of ERISA § 203(a), 29 U.S.C. § 1053(a).

2.     Metropolitan sponsors the Plan for its eligible employees and the eligible employees of certain participating affiliates.  The Plan transitioned from a traditional defined benefit plan to a cash balance benefit plan effective January 1, 2002.  All new hires after December 31, 2002, were automatically enrolled in the cash balance benefit plans (the "Current Plan"), while employees hired before December 31, 2002, had to choose between moving to the cash balance plan or remaining grandfathered in the preexisting defined benefit plan (the "Traditional Plan").

3.     Notwithstanding that retirees *accrued* benefits under the Traditional and Current Plans pursuant to different formulae, the Plan provides that the *default* benefit *payable* under the Plan is essentially uniform.  All unmarried retirees who retire under the Current Plan and unmarried retirees under the Traditional Plan who retired prior to July 1, 2008, receive by default a 5 Year Certain and Life Annuity ("5YCLA").  Unmarried retirees under the Traditional Plan who retire on or after July 1, 2008, receive a 12 Year Certain and Life Annuity ("12YCLA," and, collectively with the "5YCLA," the "Default Benefits").  *See* Plan at §§ 5.02, 5.02-A.

4.     The Plan (under both the Current and Traditional formulations) also offers several other optional benefits (the "Alternate Annuity Benefits").  For example, ERISA requires that pension plans offer married retirees the option of receiving a payment stream for their life and their spouse's life after the retiree dies (a "joint and survivor annuity").  ERISA § 205(d), 29 U.S.C. § 1055.  A joint and survivor annuity is expressed as a percentage of the benefit paid during the retiree's life.  For example, a 50% joint and survivor annuity provides a surviving spouse with 50% of the amount that was paid during the retiree's life.  The Plan mandates a joint and survivor annuity for married Participants unless both the participant and his or her spouse select otherwise.

5.     When retirees receive a joint and survivor annuity, they receive lower monthly pension payments than they would if they chose the Default Benefit in exchange for their spouses receiving payments after their deaths.  However, the Plan specifically promises that joint and

survivor annuities will be "actuarially equivalent" to each retiree's Default Benefit, meaning that the present value of the payment streams must be the same.

6.      The Plan also offers other Alternate Annuity Benefits, including First-To-Die Annuities, Single Life Annuities, additional Life Annuities with Noncommutable Terms Certain different from the Default Benefits, and Qualified Pre-Retirement Survivor Annuities.  The Plan specifically represents that each of these other Alternate Annuity Benefits will be "actuarially equivalent" to the Default Benefits (*see* Plan at §§ 5.05, 5.05-A).

7.      In order to calculate the payment amount of the Alternate Annuity Benefit, actuarial assumptions are applied to calculate the present value of the future payments of each type of benefit.  These assumptions are based on a set of mortality tables and long-term interest rates.  The present values of a retiree's Alternate Annuity Benefit must equal the present value of the retiree's Default Benefit so that the two forms of payment are "actuarily equivalent."

8.      Mortality rates have improved over time with advances in medicine and better collective lifestyle habits. People who have retired recently are expected to live longer than those who retired in previous generations.   Older morality tables predict that people will die at a faster rate than current mortality tables.   Using an older mortality table with accelerated death rates decreases the present value of the Alternate Annuity Benefit and, ultimately, the monthly payment that retirees receive under that Alternate Annuity Benefit.

9.      The interest rate used also affects the amount of an Alternate Annuity Benefit.

10.     The mortality table and interest rate ***together*** are used to calculate a "conversion factor" which is used to determine an equivalent benefit between a retiree's Default Benefit and the Alternate Annuity Benefit selected by a retiree.  For example, under the conversion factor analysis, an old mortality table with an unreasonably high mortality rate (which results in a lower benefit) can be offset by an unreasonably high interest rate (which provides for a higher benefit).

The issue is whether the mortality and interest rate assumptions together result in a conversion factor that provides for a truly equivalent benefit.

11.     The Plan specifies the actuarial assumptions used to calculate the conversion factor (and thus the value of the Alternate Annuity Benefits).  Specifically, in terms of a mortality table, the Plan uses the 1971 Group Annuity Mortality Table for Males (the "1971 GAM" table), set back one year for Participants or Former Participants and set back five years for beneficiaries.  The 1971 GAM table was developed *over 45 years ago,* when people had much shorter life expectancies.

12.     Metropolitan's use of the 1971 GAM mortality table is inherently unreasonable because of its outdated accelerated mortality rates.  The Plan also uses a 6 percent interest rate.

13.     The combined result of using a 6 percent interest rate and the 1971 GAM mortality table is that Defendants do not provide actuarially equivalent Alternate Annuity Benefits, but instead provide Alternate Annuity Benefits that are materially ***lower*** than the benefits that would be a true equivalent to Default Benefits.  Accordingly, Defendants caused Plaintiffs and Class Members to unknowingly forfeit and lose part of their vested benefits due under the terms of the Plan. Improperly reduced pension benefits violate ERISA's anti-forfeiture rule and cause Plaintiffs and other participants and beneficiaries of the Plan injury every month and will continue to affect them throughout their retirements.

14.     Plaintiffs accordingly seek an order from the Court reforming the Plan to conform to ERISA, payment of future benefits in accordance with the reformed Plan as required under ERISA, payment of amounts improperly withheld, and such other relief as the Court determines to be just and equitable.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29

U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA").

16.     This Court has personal jurisdiction over the Defendant because it is headquartered and transact business in, or resides in, and has significant contacts with, this District, and because ERISA provides for nationwide service of process.

17.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some or all of the violations of ERISA occurred in this District and Defendant resides and may be found in this District.  Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does business in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## PARTIES

### Plaintiffs

18.     Plaintiff William Masten is a resident of Spokane, Washington, and a beneficiary in the Plan.  Mr. Masten worked for Metropolitan for over 32 years until he retired in 2012.  Under the terms of the Plan, Mr. Masten and his wife receive a joint and survivor retirement annuity.

19.     Plaintiff Catherine McAlister is a resident of Jacksonville, FL and a beneficiary in the Plan.  Ms. McAlister worked for Metropolitan for approximately 40 years until she retired in December 2014.  Under the terms of the Plan, Ms. McAlister and her husband receive a joint and survivor retirement annuity.

### Defendants

20.     Defendant Metropolitan Life Insurance Company ("Metropolitan") is among the largest providers of insurance, annuities and employee benefit programs with its headquarters and principal place of business in New York, NY.  Metropolitan is the sponsor the Plan, and the Plan names Metropolitan as the administrator of the Plan.

21.     Defendant Metropolitan Life Insurance Company Employee Benefits Committee (the "Committee") is the committee that has fiduciary responsibility for the administration and operation of the Plan as set forth in the Plan document.  The Committee is a named fiduciary in the Plan, and is a fiduciary for the Plan within the meaning of ERISA § 3(21(A), 29 U.S.C. § 1002(21)(A), because it exercises discretionary authority or control respecting the management of the Plan and authority or control respecting the management or disposition of Plan assets.

22.     John/Jane Does 1 through 20, inclusive, are the individual members of the Committee, or any other committee(s) responsible for administering the Plan.  Their names and identities are not currently known.

## APPLICABLE ERISA REQUIREMENTS

23.     ERISA requires that benefits from a defined benefit plan be paid to married Participants in the form of a qualified joint and survivor annuity (a "QJSA") unless the participant, with the consent of his or her spouse, elects an alternative form of payment, making the QJSA the default benefit under an ERISA plan for employees who are married.  ERISA § 205(a) and (b), 29 U.S.C. § 1055(a) and (b).

24.     A QJSA is an annuity for the life of the plan participant with a survivor benefit for the life of the spouse that is not less than 50%, and not greater than 100% of the annuity payable during the joint lives of the participant and the spouse.  ERISA § 205(d)(1), 29 U.S.C. § 1055(d)(1). For example, if a plan participant receives $1,000 per month under a 50% joint and survivor annuity, the spouse will receive $500 a month after the participant's death.   Metropolitan offers a 50% QJSA.

25.     A QJSA "must be as least as valuable as any other optional form of benefit under the plan at the same time."  26 C.F.R. § 1.401(a)-20 Q&A 16.

26.     Pension plans may also offer participants alternative forms of survivor annuities, known as qualified optional survivor annuities ("QOSA").   ERISA § 205(d)(2), 29 U.S.C. § 1055(d)(2)); *see also* 26 U.S.C. § 417(g).  For example, a pension plan might offer a QJSA in the form of a 50% joint and survivor annuity, while offering 75% and 100% joint and survivor annuities as QOSAs.   In this case, Plaintiffs Madsen and McAlister both selected a joint and survivor annuity.

27.     Other common forms of QOSAs are "First-To-Die" joint and survivor annuities and alternate "certain and life" annuities (for example, while the Default Benefits under the Plan includes 5 or 12 year term certain life annuities, the Plan also offers 10, 15 and 20 year terms certain).

28.     ERISA also requires that defined benefit plans provide a qualified pre-retirement survivor annuity ("QPSA").   ERISA § 205(a)(2), 29 U.S.C. § 1055(a)(2).  A QPSA is an annuity for the life of the participant's surviving spouse (*e.g.*, a beneficiary) if the participant dies before reaching the plan's normal retirement age.  ERISA § 205(e), 29 U.S.C. § 1055(e).  ERISA requires that a QPSA be actuarially equivalent to what the surviving spouse would have received under the plan's QJSA and any QOSAs.  *Id*. at § 205(e)(1)(A), 29 U.S.C. § 1055(e)(1)(A).

29.     ERISA does not require that pension plans offer lump-sum distributions of vested benefits to retirees upon their retirement.  ERISA § 205(g), 29 U.S.C. § 1055(g).  If plans offer a lump-sum distribution as an optional benefit, Section 205(g)(3) of ERISA, 29 U.S.C. § 1055(g)(3), requires that the interest rate and mortality table specified in annually updated Treasury regulations be used to determine the actuarial equivalence of a lump-sum distribution of a plan's standard benefit.

30.     The Treasury regulations for the Tax Code provision corresponding to ERISA § 205 (26 U.S.C. § 401(a)(11)), similarly provide that a QJSA "must be at least the actuarial

equivalence of the normal form of life annuity or, if greater, of any optional form of life annuity offered under the plan.  Equivalence may be determined on the basis of consistently applied *reasonable* actuarial factors..."  26 C.F.R. 1.401(a)-11(b)(2) (emphasis added).

31.    The Treasury regulations further provide that the term "life annuity" includes annuities with terms certain in additional to single life annuities. "The term 'life annuity' means an annuity that provides retirement payments and requires that survival of the participant or his spouse as one of the conditions for payment or possible payment under the annuity.  For example, annuities that make payments for 10 years or until death, whichever occurs first or whichever occurs last, are life annuities."   26 C.F.R. 1.401(a)-11(b)(1)(i).

32.    For QJSAs, QOSAs and QPSAs, although the interest rate and mortality table specified by the Treasury regulations *may* be used, a plan is permitted use alternative actuarial assumptions, so long as they are *reasonable*. Treasury regulations concerning disclosures to plan participants provide that Alternative Annity Benefits, like a QOSA, must be compared to a QJSA using:

> . . . a single set of interest and mortality assumptions that are *reasonable* and that are applied uniformly with respect to all such optional forms payable to the participant . . . .  For  this purpose, the reasonableness of interest and mortality assumptions is determined without regard to the circumstances of the individual participant.  In addition, the applicable mortality table and applicable interest rate (as prescribed by the Treasury) are considered reasonable actuarial assumptions for this purpose and thus are permitted (but not required) to be used.

26 C.F.R. 1.417(a)(3)-1(c)(2)(iv)(B)(emphasis added).

33.    Section 203(a) of ERISA, 29 U.S.C. § 1053(a), provides that an employee's right to his or her vested retirement benefits is non-forfeitable.  The Treasury regulation for the Tax Code provision corresponding to ERISA § 203 (26 U.S.C. § 411), states that "adjustments in excess of reasonable actuarial reductions, can result in rights being forfeitable."  26 C.F.R. § 1.411(a)-4(a).

## SUBSTANTIVE ALLEGATIONS

### I.    THE PLAN

34.    Metropolitan established the Plan to "provide[] a solid foundation on which to build your financial freedom."  *See*, *e.g.*, Summary Plan Description (SPD).  Metropolitan sponsors the Plan.

35.    All participants in and beneficiaries of the Plan are current and former employees of Metropolitan, spouses of current and former employees, or other beneficiaries.   Under the terms of the Plan, participants are entitled to receive a monthly pension that begins at the Normal Retirement Date of age 65, although various early retirement options are available

36.    The Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(a)(A).

37.    The Plan is a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35).

38.    The Plan is administered by Metropolitan.   Metropolitan has delegated to the Committee the responsibility for carrying out at least some of its fiduciary responsibilities with respect to the Plan.

39.    In addition to the Default Benefits, the Plan offers several Alternate Annuity Benefits, including:

- the 50% QJSA for married couples;

- additional joint and survivor annuities that offer alternate percentage survivorship benefits to a Plan participant's surviving spouse;

- "first to die annuities" that are similar to joint and survivor annuities except that the "survivor" benefit begins for the remaining spouse once ***either*** the participant ***or*** the participant's spouse dies;

- single life annuities with no minimum term certain;

- single life annuities with alternate certain terms from those offered in the Default Benefits, including 10, 15 and 20 year terms);  and

- QPSAs.

40.     The Plan promises that each of these Alternate Annuity Benefits will be "actuarially equivalent" to a retiree's Default Benefit.  *See* Plan at § 5.05, 5.05-A; Summary Plan Description effective January 1, 2009 ("SPD") at p. 9; 2017 Form 5500 (the "Form 5500") at Schedule SB, Part V.

41.     The Default Benefits are life annuities within the meaning of 26 C.F.R. 1.401(a)-11(b)(1)(i).  Accordingly, they must be actuarially equivalent to a QJSA in accordance with the terms of that Regulation.

## II.     The Plan's Alternate Annuity Benefits Are Not Actuarially Equivalent to the Default Benefits.

### A.     Converting a Default Benefit to an Alternate Annuity Benefit.

42.      To convert a retiree's Default Benefit into an Alternate Annuity Benefit, the present value of the ***aggregate*** (*i.e.,* total) future benefits that the participant (and, if applicable, the beneficiary) is expected to receive under both the Default Benefit and the Alternate Annuity Benefit must be determined.  The present values are then compared to determine the conversion factor.  There are two main components of these present value calculations: an interest rate and a mortality table.

43.     An interest rate is used to determine the present value of each future payment.  This is based on the time value of money, meaning that money available now is worth more than the same amount in the future due to the ability to earn investment returns.  The rate that is used is often called a "discount rate" because it discounts the value of a future payment.

44.     The interest rate that a defined benefit plan uses should be based on prevailing market conditions.  As such, the interest rate may be broken into segments of short-term, medium-term and long-term expectations pertaining to each future payment.

45.     A mortality table is a series of rates which predict how many people at a given age will die before attaining the next higher age. More recent tables are "two-dimensional" in that the rates are based not only on the age of the individual but the year of birth. The Society of Actuaries, an independent actuarial group, publishes the mortality tables that are the most widely-used by defined benefit plans when doing these conversions.  New mortality tables were published in 1971 (the "1971 GAM"), 1983, 1984 (the "UP 1984"), 1994 (the "1994 GAR"), 2000 (the "RP-2000") and 2014 ("RP-2014") to account for changes to a population's mortality experience.

46.     Since at least the 1980s, the life expectancies in mortality tables have steadily improved as shown below:



Source: Aon Hewitt, *Society of Actuaries Finalizes New Mortality Assumptions: The Financial and Strategic Implication for Pension Plan Sponsors* (November 2014) at 1.  According to this paper, there have been "increasing life expectancies over time" and just moving from the 2000 mortality table to the 2014 table would increase pension liabilities by 7%.

47.    In the years between the publication of a new mortality table, mortality rates are often "projected" to future years to account for expected improvements in mortality.  For example, the RP-2014 mortality table is commonly projected by actuaries using a mortality improvement scale to account for additional reductions in mortality rates that have occurred since 2014.

48.    Using the selected interest rate and mortality table, the present values of the Default Benefit and the Alternate Annuity Benefit can be compared to calculate a conversion factor that will determine the amount of the Alternative Benefit that is actuarially equivalent to the Default Benefit.

49.    Changes to interest rates or mortality assumptions can have dramatic effects on the conversion factor and the value of an Alternate Annuity Benefit.  When a higher interest rate is used, the amount of the monthly benefit under a joint and survivor annuity increases.  More antiquated mortality assumptions (*i.e.*, using a mortality table with higher probabilities of death at a given age than is currently the case) generate lower present values of future payments, and the amount of the monthly benefit under a joint and survivor annuity decreases.

50.    Because antiquated mortality rates and higher interest rates have the opposite effects on the value joint and survivor annuities, using unreasonable assumptions for both criteria may produce a reasonable result.  Put differently, using a high interest rate may counterbalance the effects of an old mortality table.  The interest rate and mortality table used to calculate actuarial equivalent benefits must be viewed together to determine if they produce a reasonable, and equivalent, benefit for participants and beneficiaries.

**B.    The Plan Does Not Provide Actuarially Equivalent Benefits to Participants Who Receive an Alternative Annuity Benefit.**

51.    Throughout the Class Period, the Plan has used a 6 percent interest rate and the 1971 Group Annuity Mortality table for Males ("1971 GAM"), set back one year for Participants

or Former Participants and set back five years for other beneficiaries, to convert the Default Benefits to Alternate Annuity Benefits.

52.    The 6 percent interest rate that the Plan uses is not, ***standing alone***, necessarily unreasonable.

53.    However, the Plan's use of the 1971 GAM table to calculate actuarially equivalent benefits ***is*** unreasonable when combined with a 6 percent interest rate.

54.    The 1971 GAM mortality table is nearly ***50 years*** out of date, and as such it overstates mortality rates.  Mortality rates, particularly for males, have steadily declined since the 1970s.  The setbacks the Plan uses do not correct the 1971 GAM table's outdated mortality assumptions and the mortality rates the Plan used to calculate participants' retirement benefits improperly lowered their pension benefits.

55.    By using the 1971 GAM table, the Plan is decreasing the value of the Alternate Annuity Benefits relative to the Default Benefits, thereby materially reducing the monthly benefits that participants and beneficiaries would receive if updated, current mortality assumptions were used.

56.    Metropolitan and the Committee knew or should have known that the 1971 GAM table used mortality rates that were outdated and that produced lower monthly benefits for participants and beneficiaries receiving an Alternate Annuity Benefit.

57.    Indeed, Metropolitan and the Committee use very different mortality assumptions (and interest rates) when they convert a retiree's retirement account cash balance under the Current Plan into the 5-Year Certain and Life Annuity Default Benefit:

> The [cash] balance shall be converted to an ***actuarial equivalent*** of a 5 Year Certain and Life Annuity at retirement using the 30-Year Treasury Rate for the preceding November and ***the applicable mortality table (as defined in IRC § 417(e))***.

Form 5500 at Schedule SB, Part V (emphasis added);

58.     Accordingly, Defendants know that the proper practice when calculating "actuarial equivalence" is to use the annually-updated mortality table designated and used by the IRS (as well as the annually updated 30 Year Treasury Rate for the interest rate).  Yet Defendants instead use the 1971 GAM table, a mortality table nearly 50 years our-of-date, to convert Default Benefits to Alternate Annuity Benefits.[1]

59.     At all times during the Class Period, Metropolitan's use of the 1971 GAM mortality table to calculate actuarially equivalent benefits was unreasonable.

60.     Because the Plan used grossly outdated mortality tables throughout the Class Period, the benefits paid to Plan participants and beneficiaries who receive payments under an Alternate Annuity Benefit are *not* actuarially equivalent to what they would have received if they had selected the Default Benefit, in violation of ERISA § 205(d)(1)(B), 29 U.S.C. § 1055(d)(1)(B) and ERISA § 205(d)(2)(A), 29 U.S.C. § 1055(d)(2)(A).  Rather, the benefits payable under these optional forms of benefits are much lower than they should be.

61.     Plaintiffs are each beneficiaries of the Plan who are receiving an Alternate Annuity Benefit (specifically, a joint and survivor annuity).  Because their benefits were calculated by using a 6 percent interest rate and the 1971 GAM mortality table, Plaintiffs are receiving less each month than they would if the Plan used current, reasonable actuarial assumptions.  They, along with other class members, have been substantially damaged as a result of receiving benefits below an actuarially equivalent amount.

## CLASS ACTION ALLEGATIONS

62.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the class (the "Class") defined as follows:

---

[1]  It appears that Defendants have not updated the mortality table actuarial assumptions used to calculate the conversion factor since the Plan was implemented on January 1, 1976, as a substitute for the previous plan and ostensibly to bring the Plan into compliance with ERISA.

> All participants in and beneficiaries of the Plan who elected to receive an Alternate Annuity Benefit. Excluded from the Class are Defendants and any individuals who are subsequently to be determined to be fiduciaries of the Plan.

63.     The members of the Class are so numerous that joinder of all members is impractical. Upon information and belief, the Class includes thousands of persons; Metropolitan employs nearly 50,000 persons and the Plan in question covers all U.S. salaried or commissioned employees who have completed a year of service.

64.     Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs' claims and the claims of all Class members arise out of the same policies and practices as alleged herein, and all members of the Class are similarly affected by Defendants' wrongful conduct.

65.     There are questions of law and fact common to the Class and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

    A.     Whether the Plan's formulae for calculating Alternate Annuity Benefit provide benefits that are actuarially equivalent to Default Benefits;

    B.     Whether the Plan's actuarial assumptions are reasonable;

    C.     Whether the Plan should be reformed to comply with ERISA; and

    D.     Whether Plaintiffs and Class members should receive additional benefits.

66.     Plaintiffs will fairly and adequately represent the Class and have retained counsel experienced and competent in the prosecution of ERISA class actions. Plaintiffs have no interests antagonistic to those of other members of the Class. Plaintiffs are committed to the vigorous prosecution of this action and anticipate no difficulty in the management of this litigation as a class action.

67.     This action may be properly certified under either subsection of Rule 23(b)(1). Class action status is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.  Class action status is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

68.     In the alternative, certification under Rule 23(b)(2) is warranted because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

69.     In the alternative, certification under Rule 23(b)(3) is warranted because the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**FIRST CLAIM FOR RELIEF**
**Declaratory and Equitable Relief**
**(ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3))**

70.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

71.     The Plan improperly reduces annuity benefits for participants and beneficiaries who receive an Alternate Annuity Benefit below the benefits that they would receive if those benefits were actuarially equivalent to the Default Benefit as ERISA requires.

72.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

73.     Pursuant to this provision, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiffs seek declaratory relief, determining that the Plan's established methodologies for calculating actuarial equivalence of Alternate Annuity Benefits, including the joint and survivor annuity, single life annuity, and "certain and life" options, violate ERISA because they do not provide an actuarially equivalent benefit.  By not providing an actuarially equivalent benefit, Defendants have violated ERISA's anti-forfeiture clause, ERISA § 203(a), 29 U.S.C. § 1053(a).

74.     Plaintiffs further seek orders from the Court providing a full range of equitable relief, including but not limited to:

(a)     re-calculation, correction and payment of benefits previously paid for Alternate Annuity Benefits;

(b)     an "accounting" of all prior benefits and payments;

(c)     a surcharge;

(d)     disgorgement of amounts wrongfully withheld;

(e)     disgorgement of profits earned on amounts wrongfully withheld;

(f)     a constructive trust;

(g)     an equitable lien;

(h)     an injunction against further violations; and

(i)     other relief the Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### For Reformation of the Plan and Recovery of Benefits Under the Reformed Plan
### (ERISA § 502(a)(1) and (3), 29 U.S.C. § 1132(a)(1) and (3))

78.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

79.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to:  "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

80.     The Plan improperly reduces annuity benefits for participants who receive Alternate Annuity Benefits below the benefits that they would receive if those benefits were actuarially equivalent to the Default Benefit as ERISA requires. By not providing an actuarially equivalent benefit, Defendants have violated ERISA's anti-forfeiture clause, ERISA § 203(a), 29 U.S.C. § 1053(a).

81.     Plaintiffs are entitled to reformation of the Plan to require Defendants to provide actuarially equivalent benefits.

82.     ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), authorizes a participant or beneficiary to bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

83.     Plaintiffs are entitled to recover actuarially equivalent benefits, to enforce their right to the payment of past and future actuarially equivalent benefits, and to clarify their rights to future actuarially equivalent benefits, under the Plan following reformation.

### THIRD CLAIM FOR RELIEF
#### Breach of Fiduciary Duty
#### (ERISA §§ 1104 and 502(a)(3), 29 U.S.C. §§ 1104 and 1132(a)(3))

84.    Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

85.    As the Plan's administrator, Metropolitan is a named fiduciary of the Plan.

86.    The Committee is a named fiduciary of the Plan.

87.    ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who in fact perform fiduciary functions. Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). This is a functional test. Neither "named fiduciary" status nor formal delegation is required for a finding of fiduciary status, and contractual agreements cannot override finding fiduciary status when the statutory test is met.

88.    The Committee and its members are fiduciaries for the Plan because they exercised discretionary authority or discretionary control respecting management of such plan or exercised any authority or control respecting management or disposition of Plan assets.  In particular, they had authority or control over the amount and payment of benefits paid through Alternate Annuity Benefits which were paid from Plan assets.

89.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides that a fiduciary shall discharge its duties with respect to a plan in accordance with the documents and instruments governing the plan insofar as the Plan is consistent with ERISA.

90.     The Plan is not consistent with ERISA because it uses the outdated 1971 GAM mortality table to calculate actuarially equivalent benefits.  When combined with the Plan's use of a 6% interest rate, the Plan's calculation of benefits other than the Default Benefits does not provide actuarially equivalent options which resulted in participants and beneficiaries illegally forfeiting and losing vested benefits.

91.     In following the Plan in violation of ERISA, the Committee and its members exercised their fiduciary duties and control over Plan assets in breach of their fiduciary duties.

92.     ERISA imposes on fiduciaries that appoint other fiduciaries the duty to monitor the actions of those appointed fiduciaries to ensure compliance with ERISA.  In allowing the Committee to pay unreasonably low benefits in violation of ERISA, Metropolitan breached its fiduciary duty to supervise and monitor the Committee.

93.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to:  "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

94.     Pursuant to this provision, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiff seeks declaratory relief, determining that the Plan's established methodologies for calculating actuarial equivalence of Alternate Annuity Benefits violate ERISA because they do not provide an actuarially equivalent benefit.

95.     Plaintiffs further seek orders from the Court providing a full range of equitable relief, including but not limited to:

      (a)    re-calculation, correction and payments of benefits previously paid for Alternate Annuity Benefits;

      (b)    an "accounting" of all prior benefits and payments;

      (c)    a surcharge;

      (d)    disgorgement of amounts wrongfully withheld;

      (e)    disgorgement of profits earned on amounts wrongfully withheld;

      (f)    a constructive trust;

      (g)    an equitable lien;

      (h)    an injunction against further violations; and

      (i)    other relief the Court deems just and proper.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants on all claims and requests that the Court award the following relief:

A.    Certifying this action as a class pursuant to FED. R. CIV. P. 23;

B.    Declaring that the Plan fails to properly calculate and pay Alternate Annuity Benefits that are actuarially equivalent to the Default benefits, in violation of ERISA;

C.    Ordering Defendants to bring the Plan into compliance with ERISA, including, but not limited to, reforming the Plan to bring them into compliance with ERISA with respect to calculation of actuarially equivalent Alternate Annuity Benefits;

D.    Ordering Defendants to correct and recalculate benefits that have been paid;

E.    Ordering Defendants to provide an "accounting" of all prior payments of benefits under the Plan to determine the proper amounts that should have been paid;

F.    Ordering Metropolitan to pay all benefits improperly withheld, including under the theories of surcharge and disgorgement;

G.  Ordering Metropolitan to disgorge any profits earned on amounts improperly withheld;

H.  Imposition of a constructive trust;

I.  Imposition of an equitable lien;

J.  Reformation of the Plan;

K.  Ordering Defendants to pay future benefits in accordance with ERISA's actuarial equivalence requirements;

L.  Ordering Defendants to pay future benefits in accordance with the terms of the Plan, as reformed.

M.  Awarding, declaring, or otherwise providing Plaintiffs and the Class all relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems proper;

N.  Awarding attorneys' fees and expenses as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

O.      Any other relief the Court determines is just and proper.


Dated: December 3, 2018                    Respectfully submitted,

                                      *s/ Christopher M. Barrett*
                                  **IZARD, KINDALL & RAABE LLP**
                                  Robert A. Izard (to be admitted *pro hac vice*)
                                  Seth R. Klein (to be admitted *pro hac vice*)
                                  Christopher M. Barrett
                                  Douglas P. Needham
                                  29 South Main Street, Suite 305
                                  West Hartford, CT 06107
                                  Tel: (860) 493-6292
                                  Fax: (860) 493-6290
                                  Email:  rizard@ikrlaw.com
                                  Email:  sklein@ikrlaw.com
                                  Email:  cbarrett@ikrlaw.com
                                  Email:  dneedham@ikrlaw.com


                                  Gregory Y. Porter (to be admitted *pro hac vice*)
                                  Mark G. Boyko (to be admitted *pro hac vice*)
                                  **BAILEY & GLASSER LLP**
                                  1054 31st Street, NW, Suite 230
                                  Washington, DC 20007
                                  (202) 463-2101
                                  (202) 463-2103 fax
                                  gporter@baileyglasser.com
                                  mboyko@baileyglasser.com


                                  ***Counsel for Plaintiffs***