## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| William Masten and Catherine McAlister, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>Metropolitan Life Insurance Company, the Metropolitan Life Insurance Company Employee Benefits Committee and John/Jane Does 1-20,<br><br>        Defendants. | No. 18-cv-11229-RA |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

Myron D. Rumeld
Russell L. Hirschhorn
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Tel.: 212.969.3000
mrumeld@proskauer.com
rhirschhorn@proskauer.com

*Counsel for the Defendants*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ......................................................................................4

A.    The Plan ...............................................................................................4

B.    Plaintiffs...............................................................................................6

C.    The Original Complaint and Amended Complaint....................................................7

ARGUMENT .....................................................................................................9

I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS
TO PLAUSIBLY ALLEGE A VIABLE CLAIM FOR RELIEF.............................10

II.    EACH CLAIM INDEPENDENTLY FAILS TO STATE A CLAIM
FOR RELIEF. .....................................................................................13

    A.    Plaintiffs' Claim for Benefits Fails Because Their Benefits Were
Calculated Using the Assumptions Mandated by the Plan ............................14

    B.    Plaintiffs Fail To State a Claim for Violation of ERISA § 203(a)................14

    C.    Plaintiffs Have No Viable Claim for Breach of Fiduciary Duty .................18

    D.    Plaintiff Masten's Claims Are Time-Barred and Should Be
Dismissed.....................................................................................19

        1.    Plaintiff Masten's Fiduciary Breach Claim is Time-Barred. .............20

        2.    Plaintiff Masten's Benefit and Statutory Claims are Time-
Barred...................................................................................20

III.    IF NOT DISMISSED ON THE MERITS, THE COURT SHOULD
DISMISS OR STAY THIS ACTION BECAUSE PLAINTIFFS
HAVE NOT EXHAUSTED THE PLAN'S CLAIMS PROCEDURES. .................23

CONCLUSION....................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abdul-Aziz v. Nat'l Basketball Ass'n Players' Pension Plan*,
   No. 17-cv-8901, 2019 WL 1284591 (S.D.N.Y. Mar. 20, 2019), *appeal filed*,
   No. 19-782 (2d Cir. Mar. 27, 2019) ...................................................................20, 21

*Artistic Carton Co. v. Paper Indus. Union-Mgmt. Pension Fund*,
   971 F.2d 1346 (7th Cir. 1992) ..............................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................................................................11

*Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Just Born II, Inc.*,
   888 F.3d 696 (4th Cir. 2018) ................................................................................12

*Bates v. United States*,
   522 U.S. 23 (1997).................................................................................................16

*Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v. Weinstein*,
   107 F.3d 139 (2d Cir. 1997)............................................................................16, 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................................11

*Bekker v. Neuberger Berman Grp., LLC*,
   No. 16-cv-6123, 2018 WL 4636841 (S.D.N.Y. Sept. 27, 2018) ...........................13

*Bona v. Barasch*,
   No. 01-cv-2289, 2003 WL 1395932 (S.D.N.Y. Mar. 20, 2003).............................20

*Burke v. PriceWaterhouseCoopers LLP Long Term Disability Plan*,
   572 F.3d 76 (2d Cir. 2009)....................................................................................20

*Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*,
   201 F.3d 44 (2d Cir. 1999)....................................................................................21

*Carter v. HealthPort Techs., LLC*,
   822 F.3d 47 (2d Cir. 2016)....................................................................................10

*Chendes v. Xerox HR Sols., LLC*,
   No. 16-cv-13980, 2017 WL 4698970 (E.D. Mich. Oct. 19, 2017)....................15, 16

*CIGNA Corp. v. Amara*,
   563 U.S. 421 (2011)...............................................................................................14

*Combs v. Classic Coal Corp.*,
   931 F.2d 96 (D.C. Cir. 1991) .................................................................12

*D'Amico v. CBS Corp.*,
   297 F.3d 287 (3d Cir. 2002) .................................................................23

*D'Iorio v. Winebow, Inc.*,
   920 F. Supp. 2d 313 (E.D.N.Y. 2013) ..................................................12

*DePasquale v. DePasquale*,
   No. 12-cv-2564, 2013 WL 789209 (E.D.N.Y. Mar. 1, 2013), *aff'd*, 568 F.
   App'x 55 (2d Cir. 2014) .................................................................21, 22

*DeSilva v. North Shore-Long Island Jewish Health Sys., Inc.*,
   770 F. Supp. 2d 497 (E.D.N.Y. 2011) ..................................................23

*Diamond v. Loc. 807 Lab.-Mgmt. Pension Fund*,
   No. 12-cv-5555, 2014 WL 527898 (E.D.N.Y. Feb. 7, 2014), *aff'd*, 595 F.
   App'x 22 (2d Cir. 2014) .......................................................................24

*GlaxoSmithKline LLC v. Beede*,
   No. 13-cv-00001, 2014 WL 896724 (N.D.N.Y. Mar. 6, 2014) ................4

*Gruby v. Brady*,
   838 F. Supp. 820 (S.D.N.Y. 1993) .......................................................20

*Hartline v. Sheet Metal Workers' Nat'l Pension Fund*,
   134 F. Supp. 2d 1 (D.D.C. 2000), *aff'd*, 286 F.3d 598 (D.C. Cir. 2002) ................................19

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
   571 U.S. 99 (2013) ...............................................................................25

*Hirt v. Equitable Ret. Plan for Emps.*,
   450 F. Supp. 2d 331 (S.D.N.Y. 2006), *aff'd*, 285 F. App'x 802 (2d Cir. 2008) .................... 21

*Hughes Aircraft Co. v. Jacobson*,
   525 U.S. 432 (1999) ..............................................................................19

*In re Citigroup ERISA Litig.*,
   No. 07-cv-9790, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009) .............16

*Jaen v. Sessions*,
   899 F.3d 182 (2d Cir. 2018) .................................................................16

*Janese v. Fay*,
   692 F.3d 221 (2d Cir. 2012) .................................................................19

*Kennedy v. Empire Blue Cross & Blue Shield*,
 989 F.2d 588 (2d Cir. 1993)...............................................................................23

*Kollman v. Hewitt Assocs., LLC*,
 487 F.3d 139 (3d Cir. 2007)...............................................................................15

*Larson v. Northrop Corp.*,
 21 F.3d 1164 (D.C. Cir. 1994)............................................................................20

*Laurent v. PricewaterhouseCoopers LLP*,
 No. 06-cv-2280, 2017 WL 3142067 (S.D.N.Y. July 24, 2017), *appeal filed*,
 No. 18-487 (2d Cir. Feb. 21, 2018)....................................................................19

*Makar v. Health Care Corp. of Mid–Atl.*,
 872 F.2d 80 (4th Cir. 1989) ...............................................................................24

*Martin v. Consultants & Adm'rs, Inc.*,
 966 F.2d 1078 (7th Cir. 1992) ............................................................................20

*McCarthy v. Dun & Bradstreet Corp.*,
 482 F.3d 184 (2d Cir. 2007)....................................................................4, 17, 18

*McCulloch v. Bd. of Trs. of SEIU Affiliates Officers and Emps.' Pension Plan*,
 No. 14-cv-9348, 2016 WL 9022578 (S.D.N.Y. Mar. 31, 2016), *aff'd*, 686 F.
 App'x 68 (2d Cir. 2017)................................................................................23, 24

*Meiners v. Wells Fargo & Co.*,
 898 F.3d 820 (8th Cir. 2018) ..............................................................................13

*Moses v. Revlon Inc.*,
 691 F. App'x 16 (2d Cir. 2017) ...........................................................................21

*Nechis v. Oxford Health Plans, Inc.*,
 421 F.3d 96 (2d Cir. 2005)..................................................................................11

*Novella v. Westchester Cty.*,
 661 F.3d 128 (2d Cir. 2011)..........................................................................21, 22

*Osberg v. Foot Locker, Inc.*,
 862 F.3d 198 (2d Cir 2017).................................................................................22

*Pegram v. Herdrich*,
 530 U.S. 211 (2000).............................................................................................19

*Pender v. Bank of Am. Corp.*,
 788 F.3d 354 (4th Cir. 2015) ..............................................................................14

*Quigley v. Citigroup Supplemental Plan for Shearson Transfers*,
No. 09-cv-8944, 2011 WL 1213218 (S.D.N.Y. Mar. 29, 2011), *aff'd*, 520 F.
App'x 15 (2d Cir. 2013)..................................................................................................23

*Reich v. Glasser*,
No. 95-cv-8288, 1996 WL 243243 (S.D.N.Y. May 10, 1996).......................................20

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*,
170 F. Supp. 3d 1239 (N.D. Cal. 2016) .......................................................................12

*Rosenblatt v. United Way of Greater Hous.*,
607 F.3d 413 (5th Cir. 2010) ........................................................................................12

*Soehnlen v. Fleet Owners Ins. Fund*,
844 F.3d 576 (6th Cir. 2016) ........................................................................................14

*Thompson v. Ret. Plan for Emps. of S.C. Johnson & Son, Inc.*,
651 F.3d 600 (7th Cir. 2011) ........................................................................................22

*Vinson & Elkins v. Comm'r*,
99 T.C. 9 (1992), *aff'd*, 7 F.3d 1235 (5th Cir. 1993) ...................................................18

*Wachtell, Lipton, Rosen & Katz v. Comm'r*,
26 F.3d 291 (2d Cir. 1994)............................................................................................12

*Wachtell, Lipton, Rosen & Katz v. Comm'r*,
64 T.C.M. (CCH) 128 (1992), *aff'd*, 26 F.3d 291 (2d Cir. 1994)................................18

## STATUTES & REGULATIONS

26 U.S.C. § 417(e), Code § 417(e) ....................................................................... *passim*

29 U.S.C. § 1053(a), ERISA § 203(a) ......................................................7, 14, 16, 18

29 U.S.C. § 1054(c)(3), ERISA § 204(c)(3) ....................................................................15

29 U.S.C. § 1055, ERISA § 205 .......................................................................................5

29 U.S.C. § 1059, ERISA § 209 .....................................................................................23

29 U.S.C. § 1104, ERISA § 404 .......................................................................................8

29 U.S.C. § 1113(1), ERISA § 413(1)............................................................................20

29 U.S.C. § 1132(a)(1)(B), ERISA 502(a)(1)(B) .....................................................7, 14

29 U.S.C. § 1132(a)(3), ERISA § 502(a)(3) ...........................................................7, 14, 15

29 U.S.C. § 1132(c)(5), ERISA § 502(c)(5) ..................................................................16

26 C.F.R. § 1.401(a)(4)-3 ..................................................................................................17

26 C.F.R. § 1.401(a)(4)-12 ................................................................................................17

26 C.F.R. § 1.401(a)-11 ....................................................................................................15

26 C.F.R. § 1.411(a)-4(a) ..................................................................................................15

26 C.F.R. § 1.411(a)(13)-1 ................................................................................................15

26 C.F.R. § 1.417(a)(3)-1 ............................................................................................15, 17

**OTHER AUTHORITIES**

68 Fed. Reg. 70,141-01 (Dec. 17, 2003) ..........................................................................17

Fed. R. Civ. P. Rule 12(b)(6) ...................................................................................1, 4, 25

Defendants MetLife Group, Inc. ("MetLife") and MetLife Group, Inc. Employee Benefits Committee (collectively, "Defendants")[1] respectfully submit this memorandum of law in support of their motion to dismiss the Corrected Amended Complaint ("Amended Complaint") (Dkt. 42) filed by Plaintiffs William Masten and Catherine McAlister ("Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Two retired MetLife employees commenced this lawsuit seeking additional benefits from the MetLife Retirement Plan (the "Plan") based on their contention that the alternative forms of benefits they elected to receive do not reflect the full value of the benefits they earned. Notwithstanding Plaintiffs' effort to amend their claims in response to Defendants' initial motion to dismiss, the claims remain legally deficient—indeed, even more so in light of amendments to the original Complaint that misstate the terms of the Plan.

Like many other plans, this Plan provides a retirement annuity that is calculated pursuant to a formula that takes into account years of service, income, and age at retirement, and allows participants to elect among various forms of individual or joint and survivor annuity options. The various alternative forms of payment are calculated by actuarially converting the starting benefit that is calculated pursuant to the Plan's formula—known under the Plan as the "accrued benefit" or "normal retirement benefit"—into the other benefit forms, with the use of actuarial assumptions. According to Plaintiffs, the use of one of these assumptions—a mortality assumption that is based on a 1971 mortality table—has caused the Plan to underpay the benefits that are due to them. Plaintiffs claim that, by using this mortality assumption, rather than a more current one, Defendants breached the Plan's promise to provide an actuarially equivalent benefit,

---

[1] Defendants are improperly named in the Complaint as Metropolitan Life Insurance Company and Metropolitan Life Insurance Company Employee Benefits Committee, respectively.

violated ERISA's prohibition against benefit forfeitures, and breached their fiduciary duties. Plaintiffs assert these claims on behalf of participants who elected an alternative form of benefit.

Defendants moved to dismiss the original Complaint because it failed to explain how, in Plaintiffs' view, their alternative forms of benefits should have been calculated. Although the Complaint alleged that the problem lies with the Plan's mortality assumption, it conceded that actuarial equivalence is determined using a "conversion factor" that takes into account *both* the Plan's mortality and interest rate assumptions. Yet, the Complaint nowhere alleged what conversion factor or what combination of underlying assumptions would be reasonable here.

The Amended Complaint suffers from the same fatal defect, in that it still fails to allege what conversion factor or range of assumptions would be considered reasonable for purposes of calculating the alternative forms of benefits. The closest it comes to doing so is in a comparison it makes between the benefits Plaintiffs are receiving to what their benefits would be if the Plan had used a different set of assumptions. But the Amended Complaint acknowledges that there is no requirement to use these other assumptions except for purposes of calculating lump sum benefits. Moreover, in making the comparison to the benefits calculated using the other assumptions, the Amended Complaint makes a fatal mistake: It assumes that the normal retirement benefit from which Plaintiffs' alternative forms of benefits are calculated is a single life annuity—a monthly benefit paid for the life of the participant—when in fact the Plan clearly provides for a different form of normal retirement benefit. As a result, there is no way to tell from the Amended Complaint whether the assumptions proposed by Plaintiffs would materially increase their benefits, let alone whether they provide a basis for concluding that the Plans' assumptions are unreasonable. Thus, the Amended Complaint still fails to plausibly allege a claim for relief.

Plaintiffs' three causes of action are each deficient for independent reasons stated in Defendants' initial motion to dismiss, none of which are addressed (let alone rectified) by the Amended Complaint.  *First*, the claim for benefits fails because the Plan by its terms specifies the actuarial assumptions used to determine Plaintiffs' benefits, and there is no dispute that these were the assumptions used.  *Second*, the claim for violation of ERISA fails because neither ERISA nor the Treasury Regulations cited by Plaintiffs require that any specific assumptions be used in calculating the alternative forms of benefits.  Nor do they provide any basis for preferring the mortality assumption proposed by Plaintiffs—which as noted, is required only for purposes of calculating lump sum benefits—to the Plan's mortality assumption.  The Plan's assumption, in fact, is specifically authorized by the Treasury Regulations for use in related contexts.  *Third*, there is no basis for a fiduciary breach claim because setting the assumptions is a plan design (settlor) decision that does not amount to fiduciary conduct in the first place.  *Finally*, Plaintiff William Masten's claims should be dismissed, in all events, because they are time-barred.

If not dismissed for any or all of these reasons, this action should be dismissed or stayed pending exhaustion of the Plan's administrative claims procedures.  Resort to these procedures is a required precondition to any ERISA claim (no matter how it is framed) that depends in whole or in part on plan interpretation.  The need for administrative exhaustion is obvious here in light of Plaintiffs' articulation of claims that are premised on a flawed reading of the Plan's terms. The claims process also will help to frame the issues if the case returns to court by putting Plaintiffs to the task of articulating their reasons for challenging the Plan's assumption and identifying what range of assumptions they consider to be reasonable, and allowing the Plan an opportunity to respond with its explanation for maintaining the existing assumptions.

## STATEMENT OF FACTS

Except where otherwise indicated, this Statement of Facts is based on the allegations in the Amended Complaint, which are presumed true solely for purposes of this Motion, and documents cited and referenced in the Amended Complaint, including the Plan document (which was produced to Plaintiffs prior to the filing of the Amended Complaint).[2]

A.    **The Plan**

The Plan is a defined benefit plan sponsored by MetLife that is governed by the Employee Retirement Income Security Act of 1974 ("ERISA").  (¶¶ 32, 35.)[3]  Eligible employees hired by MetLife on or before December 31, 2001 accrued an annual annuity benefit that was calculated based on covered compensation, credited service, and age at retirement (the "Normal Retirement Benefit" or "Traditional Formula").  (Ex. A at §§ 1.28 & 4.02-A(a)–(b); Ex. B at 17.)[4]  Contrary to the Amended Complaint's allegations, the Normal Retirement Benefit is *not* a single life annuity.  Rather, it is a single life annuity with a five-year term certain ("5YCLA") (Ex. A at § 1.01(d)), which differs from (and is necessarily more costly than) a single life annuity because the monthly benefit calculated using the Plan's formula is guaranteed for a minimum of five years, even if the participant dies before then (Ex. B at 11).  This same benefit also is referred to in the Plan as the "Accrued Benefit."  (Ex. A at § 1.01(c)–(d) (referring to Normal Retirement Benefit in Ex. A at § 4.02-A)).

---

[2] When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court may consider the facts alleged in the complaint, documents integral to the complaint even if not attached, and documents or information contained in a defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint.  *See, e.g.*, *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *GlaxoSmithKline LLC v. Beede*, No. 13-cv-00001, 2014 WL 896724, at *1 n.1 (N.D.N.Y. Mar. 6, 2014).

[3] All "¶" citations are to the Amended Complaint.  (Dkt. 42.)

[4] All "Ex." citations are to exhibits annexed to the accompanying Declaration of Russell L. Hirschhorn.

For employees hired on or after January 1, 2002, and anyone hired before then who elected not to continue accruing benefits under the Traditional Formula, the benefit formula was changed beginning January 1, 2003 to one that originated with a notional account to which monthly contributions are made each year based on a prescribed percentage of compensation, and to which interest is added each year (the "Current Formula").  (Ex. A at §§ 1.28, 3.01, 3.03–3.04; Ex. B at 7–8, 17, 30.)  The participant's Accrued Benefit under the Current Formula also is in the form of a 5YCLA, which is calculated by actuarially converting the account balance into this form of annuity.  (Ex. A at Amend. 3 §§ 1.01(a) & 1.02(c)(2).)

In 2008, the Plan was amended to change the Normal Retirement Benefit—and thus the Accrued Benefit—under the Traditional Formula to a Life Annuity with a Twelve-Year Term Certain ("12YCLA") for then active employees.  (Ex. A at § 1.01(d).)  This means that the participant is assured of receiving the monthly benefit calculated using the Plan's formula for a minimum of twelve years, even if the participant dies before then.  (Ex. B at 11.)

At all relevant times, under both the Traditional Formula and the Current Formula, participants could elect to receive their benefit in one of various alternative annuity forms available under the Plan.  (Ex. A at §§ 5.05 & 5.05-A.)  The alternative forms of annuities include a single life annuity and other forms of life annuities, joint and survivor annuities (which pay an annuity to both the participant and a surviving spouse), and "first-to-die" annuities (which pay a survivor annuity to whichever spouse survives the other).  (*Id.*; Ex. B at 10–11.)[5]

The Plan's alternative forms of annuity benefits are calculated by converting the Accrued Benefit—*i.e.*, the 5YCLA or 12YCLA—into an actuarially equivalent benefit using the

---

[5] Consistent with ERISA's requirements, a married participant's Accrued Benefit is automatically paid in the form of a 50% QJSA (called a contingent survivor annuity under the Plan) unless the participant's spouse consents to another form of benefit.  *See* ERISA § 205, 29 U.S.C. § 1055; Ex. A at §§ 5.02 & 5.02-A; Ex. B at 10.

following assumptions that are specified in the Plan document:  a 6% interest rate; and the 1971

Group Annuity Mortality Table ("GAMT") for Males, set back one year for Participants or

Former Participants (meaning the assumed survival period is extended an additional year) and set

back five years for beneficiaries (meaning the assumed survival period is extended another five

years).  (Ex. A at §§ 1.02(a), 5.05, 5.05-A.)

The Plan also has special provisions that apply to participants who had accrued a benefit

under plans previously sponsored by GenAmerica Corporation and by New England Life

Insurance Company ("NELICO") that were merged into the Plan.  (Ex. A at Appendices B and

C, respectively.)  For example, for certain former participants of the NELICO part of the Plan,

the alternative forms of benefits are calculated using the 1983 GAMT for Males set back one

year and a 5% interest rate.  (¶ 55; Ex. A. at § 1.02-C.)

B.      **Plaintiffs**

Plaintiffs are two retired employees of MetLife who commenced service with MetLife

before 2002.  (¶¶ 13–14.)  William Masten retired in 2012.  (¶ 13.)  In November of that year, he

received paperwork showing him his various benefit options and the monthly benefit he would

receive under each option.  (Ex. C.)  The Amended Complaint alleges in one place that he

elected to receive a joint and survivor annuity, but elsewhere alleges that he elected a 30%

first-to-die annuity.  (*Compare* ¶ 13 *with* ¶ 96.)

Catherine McAlister alleges that she had two periods of employment with MetLife or its

affiliates, with the second period lasting through December 2014.  (¶¶ 14, 94–95.)  McAlister is

alleged to be receiving a benefit under the Traditional Formula, as well as a benefit under a

NELICO plan.  (¶¶ 14, 94–95.)[6]  According to the Amended Complaint, she elected to receive

---

[6] Although not relevant to this motion, it should be noted that some former NELICO employees, including allegedly McAlister, accrued benefits, not under this Plan, but instead under a separate NELICO plan that is no longer

6

these benefits in the form of a joint and survivor annuity.  (¶¶ 14, 94.)

### C.   **The Original Complaint and Amended Complaint**

On December 3, 2018, Plaintiffs filed a putative class action Complaint alleging that Defendants failed to pay their alternative forms of benefits in amounts that were actuarially equivalent to what the original Complaint referred to as the "Default Benefit," *i.e.*, the 5YCLA or 12YCLA.  (Dkt. 1.)  The Complaint alleged that the Plan's use of the 1971 GAMT (with setbacks) to convert the Default Benefit into alternative forms of benefit "is inherently unreasonable because of its outdated accelerated mortality rates."  (Dkt. 1, ¶ 12.)

In response to Defendants' initial motion to dismiss, Plaintiffs amended their Complaint. The claims remain the same, but the supporting allegations changed in two material ways:  First, Plaintiffs now include claims relating to other parts of the Plan, including the NELICO part of the Plan and its use of the 1983 GAMT.  (¶ 6.)  Second, the Amended Complaint removes reference to the "Default Benefit," and alleges instead that the alternative forms of benefits are not actuarially equivalent to the Normal Retirement Benefit, which, as noted, Plaintiffs erroneously assume is a single life annuity when in fact it is the 5YCLA or 12YCLA.  (¶¶ 1–2, 38, 109, 115.)

Like the original Complaint, the Amended Complaint asserts claims for:

(1)     benefits under a reformed Plan pursuant to ERISA §§ 502(a)(1)(B) and (a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3), (Count II, ¶¶ 113–18);

(2)     violation of ERISA's prohibition against forfeitures set forth in ERISA § 203(a), 29 U.S.C. § 1053(a), (Count I, ¶¶ 108–12); and

---

administered by MetLife.  Defendants accordingly reserve the right to seek dismissal of any claims relating to these benefits, if the Amended Complaint should survive this motion to dismiss.

(3)     breach of fiduciary duty by following Plan terms in violation of ERISA § 404, 29

U.S.C. § 1104, and ERISA § 502(a)(3), (Count III, ¶¶ 119–30).

These claims are asserted on behalf of a putative class consisting of "[a]ll participants in and beneficiaries of the Plan who elected to receive a benefit calculated using:  (1) the 1971 GAM table (with setbacks) and a 6% interest rate; or (2) the 1983 GAM table (with setbacks) and a 5% interest rate."  (¶ 100.)[7]  Because the Amended Complaint mistakenly assumes that the Normal Retirement Benefit—the benefit from which the challenged actuarial conversion is performed—is a single life annuity, rather than the 5YCLA or 12YCLA, the Amended Complaint purports to include as putative class members participants who elected to receive a 5YCLA or 12YCLA, and omits from the class participants who elected to receive a single life annuity.

Like the original Complaint, the Amended Complaint recognizes that actuarial equivalence is not determined based on the mortality assumption alone.  (¶¶ 3, 5, 64, 74–76.) Rather, actuarial equivalence is determined by applying both a mortality assumption and an interest rate assumption, which together generate a "conversion factor" that is used to convert the Accrued Benefit to an alternative form of benefit.  (¶¶ 6, 64, 75.)[8]  Yet, the Amended Complaint still fails to provide any guidance as to which conversion factors, or which combination of assumptions, falls within the range of actuarial equivalence and which do not.

The closest the Amended Complaint comes to addressing this issue is in a comparison that it makes between the amount of alternative benefits that Plaintiffs received to what the

---

[7] The Amended Complaint makes no reference to a putative class period.

[8] The conversion factor is used to adjust the amount of the monthly Accrued Benefit to an amount that will generate an alternative form of benefit that is actuarially equivalent.  (¶¶ 3–4, 75.)  It takes into account the anticipated relative length of payment streams of each form of benefit (based on the mortality assumption) and the time value of money (based on the interest rate assumption, also known as the discount rate).  (¶¶ 3–4, 75.)

benefits allegedly would have been if the Plan had used the assumptions set forth in Section 417(e) of the Internal Revenue Code ("Code"), 26 U.S.C. § 417(e), (¶¶ 92–96) for purposes of calculating lump sum benefits.  In making this comparison, the Amended Complaint again erroneously assumes that the Normal Retirement Benefit—the benefit earned under the Plan's formula—is the single life annuity, when in fact it is the 12YCLA (for Masten) and 5YCLA (for McAlister).  (¶¶ 94–96.)[9]  As a result, when calculating the differences between the benefits received and those that would have been calculated using the Section 417(e) assumptions, Plaintiffs convert from the wrong starting points.  There is no way to tell from the Amended Complaint what the differences in Plaintiffs' benefits would be if the conversions were made from the correct starting points.

## ARGUMENT

Although the Amended Complaint purports to state three distinct claims for relief, all three claims hinge on the same conclusory assertion that the Plan is using an unreasonable mortality assumption to calculate the alternative forms of benefits.  As so stated, the claims are legally deficient because there is no requirement that the Plan use any particular actuarial assumptions, much less the assumptions referenced in the Amended Complaint, to calculate alternative forms of benefits.  In any event, Plaintiffs' purported comparison of the benefits they are receiving under the Plan to the assumptions used for calculating lump sum benefits under Section 417(e) is fatally flawed because the Amended Complaint calculates the comparison in a manner that directly conflicts with the terms of the Plan.  *See* Point I.[10]

---

[9] For example, the Amended Complaint purports to recalculate Masten's benefit by applying the Section 417(e) assumptions to the single life annuity amount listed in his benefit worksheet, $2,310.48 (*compare* ¶ 96 *with* Ex. C at D000358) when in fact the starting point for the calculation should have been the amount of the 12YCLA, or $2,215.32 (Ex. C. at D000359).

[10] In the absence of an accurate conversion of Plaintiffs' benefits to the alternative form of benefits they elected using the Section 417(e) assumptions, it is not possible to determine whether Plaintiffs suffered any harm even

Independent of this overall pleading deficiency:  (i) the benefit claim fails because Plaintiffs received the benefits due in accordance with the Plan terms, *see* Point II.A; (ii) the statutory violation claim fails because neither ERISA nor the Treasury Regulations prohibit the assumptions used by the Plan, *see* Point II.B; and (iii) the fiduciary breach claim fails because the decision about what actuarial assumptions to use is not subject to ERISA's fiduciary rules, *see* Point II.C.  In addition, all of Plaintiff Masten's claims are time-barred.  *See* Point II.D.

If not dismissed for any or all of the foregoing reasons, this action should be dismissed or stayed pending administrative exhaustion of the claims under the Plan's claims procedures.  Both the parties and the Court would benefit from an administrative evaluation of the reasonableness of the Plan's interpretation and application of its promise to provide actuarially equivalent alternative forms of benefits, and the reasonableness and practical feasibility of adopting any alternative assumptions for which Plaintiffs are advocating.  The need for such exhaustion is underscored by the Amended Complaint's confusion as to the manner in which the Plan calculates the alternative forms of benefits.  Exhaustion is also needed to determine whether Plaintiffs' claims are barred by the Plan's contractual limitations period.  *See* Point III.

I.   **THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO PLAUSIBLY ALLEGE A VIABLE CLAIM FOR RELIEF.**

The Amended Complaint acknowledges that actuarial equivalence is determined, not by the Plan's mortality assumption alone, but by the conversion factor that is generated by a combination of the mortality assumption and the interest rate assumption.  (¶¶ 3, 5, 64, 74–76.) Yet, nowhere does the Amended Complaint state what conversion factor, or what combination of assumptions, is needed for actuarial equivalence.  The Amended Complaint intimates that the

---

under Plaintiffs' theory of the case.  Accordingly, Defendants reserve the right to seek dismissal of the Amended Complaint for lack of Article III standing after Plaintiffs have addressed these issues.  *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (Article III standing may be raised at any stage of the litigation).

Section 417(e) assumptions are reasonable (¶ 92), but fails to allege, let alone provide support for, concluding that these are the only reasonable assumptions.  Moreover, the Amended Complaint fails to plausibly allege any harm resulting from the Plan's use of the Section 417(e) assumptions because the manner in which it compares the benefits arrived at using the Plan's assumptions and the Section 417(e) assumptions contradicts the Plan terms.  The Amended Complaint thus fails to plausibly allege a violation of ERISA.

To survive a motion to dismiss, a complaint must allege sufficient factual matter to make its claim for relief plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint is evaluated under this standard based on two working principles:  First, a complaint must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Only allegations supported by facts are credited; labels and conclusions are disregarded.  *See id.*  Second, a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.*  This pleading standard requires a context-specific inquiry in which plaintiffs must allege "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

Consistent with these principles, the Second Circuit and other courts have dismissed ERISA claims seeking plan reformation where the complaint failed to provide sufficient context to entitle the plaintiff to any particular form of reformation relief.  *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 103 (2d Cir. 2005) (dismissing claim seeking reformation of plan's claims procedures due to an alleged delay or mishandling of her claims because plaintiff did not

allege how the plan's procedures should be reformed); *D'Iorio v. Winebow, Inc.*, 920 F. Supp. 2d 313, 323 (E.D.N.Y. 2013) (rejecting claim for reformation because the "proponent of reformation must show in no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties") (citation omitted).

In the context of claims challenging the use of actuarial assumptions, the Second Circuit has recognized that there is a "range of reasonable assumptions" from which to choose and that the law is not violated even when the assumption chosen is at the end of the range of reasonableness. *Wachtell, Lipton, Rosen & Katz v. Comm'r*, 26 F.3d 291, 296 (2d Cir. 1994) (approving actuarial assumptions used to determine required contributions where they fell within a reasonable range). The Fourth Circuit likewise has observed that "the law recognizes that '[r]easonableness is a zone.'" *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Just Born II, Inc.*, 888 F.3d 696, 706 (4th Cir. 2018) (rejecting affirmative defenses challenging the actuarial assumptions used to value a pension fund and explaining that differences between the assumptions used and those that another reasonable actuary would have chosen do not render the challenged assumptions unreasonable) (citing *Artistic Carton Co. v. Paper Indus. Union-Mgmt. Pension Fund*, 971 F.2d 1346, 1351 (7th Cir. 1992) and *Combs v. Classic Coal Corp.*, 931 F.2d 96, 99 (D.C. Cir. 1991)); *see Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 170 F. Supp. 3d 1239, 1246 (N.D. Cal. 2016) (holding that plaintiffs' allegation that the actuarial assumptions used to value a pension fund ultimately resulted in an undervaluation of the fund did not plausibly allege that the challenged assumptions were unreasonable); *see also Rosenblatt v. United Way of Greater Hous.*, 607 F.3d 413, 417–18 (5th Cir. 2010) (concluding that complaint failed to plead a violation of ERISA's anti-cutback rule

because plaintiff did not allege what the actuarial error was or how it impacted him).[11]

Here, the Amended Complaint alleges that the assumptions used by the Plan were unreasonable, but like the above-referenced cases, fails to specify what set of assumptions would be reasonable.  The closest it comes is its purported comparison of the benefits Plaintiffs received to what they would have received if the Section 417(e) assumptions had been utilized.  For the reasons stated, the comparison is fundamentally flawed, and thus provides no viable claim for relief, because it is based on a conversion from the single life annuity benefit that is contrary to the terms of the Plan.  But even if this were not the case, the Amended Complaint provides no basis for concluding that the Section 417(e) assumptions are the only "reasonable" assumptions that can be utilized and provides no guidance as to what would constitute a range of reasonable assumptions against which to compare the assumptions used by the Plan.

In short, without any comparison of the Plan's conversion factor to a relevant benchmark of reasonableness, the Amended Complaint provides no basis for finding liability and fails to plead a plausible claim for relief.

## II.  **EACH CLAIM INDEPENDENTLY FAILS TO STATE A CLAIM FOR RELIEF.**

Even if not dismissed for the reasons stated above, the Amended Complaint should be dismissed because there are fundamental flaws in each of the individual claims asserted.

---

[11] Relatedly, courts in this District and elsewhere have dismissed ERISA claims that failed to identify a plausible comparator against which the alleged violation can be measured.  For example, in *Bekker v. Neuberger Berman Grp., LLC*, No. 16-cv-6123, 2018 WL 4636841 (S.D.N.Y. Sept. 27, 2018), the plaintiff alleged that defendants breached their fiduciary duties by offering a 401(k) plan investment option that had excessively high fees when compared to an investment option not offered in the plan.  The court dismissed the claim finding that the allegedly comparable fund used different investment strategies than the challenged fund, and thus the complaint failed to allege "any [] facts to make the comparison of the funds' fees meaningful and plausibly suggestive of a fiduciary breach."  *Id.* at *7; *see also Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 824 (8th Cir. 2018) (affirming dismissal of complaint challenging the prudence of an investment for failure to identify comparable investment).

A.      **Plaintiffs' Claim for Benefits Fails Because Their Benefits Were Calculated**
        **Using the Assumptions Mandated by the Plan.**

In Count II, the Amended Complaint seeks to recover additional benefits pursuant to

ERISA § 502(a)(1)(B) on the ground that the Plan breached its promise to provide alternative

forms of benefits that are "actuarially equivalent" to the benefits Plaintiffs accrued under the

Plan.  (¶ 118.)  But in so alleging, the Amended Complaint turns a blind eye to the Plan

provisions that explicitly mandate the use of the 1971 GAMT (with setbacks), together with the

6% interest rate, (or, in some cases, the 1983 GAMT (with setback) with a 5% interest rate) to

calculate alternative forms of benefits.  (Ex. A at § 1.02(a) & § 1.02-C.)  Because Plaintiffs are

receiving a benefit that has been calculated exactly as prescribed by the Plan, they have no basis

for asserting a benefit claim.  *See CIGNA Corp. v. Amara*, 563 U.S. 421, 435–36 (2011) (holding

that ERISA § 502(a)(1)(B) provides a vehicle to enforce a plan's terms and thus does not provide

relief where benefits were paid consistently with terms of the plan); *Soehnlen v. Fleet Owners*

*Ins. Fund*, 844 F.3d 576, 583 n.2 (6th Cir. 2016) (same); *Pender v. Bank of Am. Corp.*, 788 F.3d

354, 361–62 (4th Cir. 2015) (same).

B.      **Plaintiffs Fail to State a Claim for Violation of ERISA § 203(a).**

Having failed to provide any basis for establishing that the manner in which their benefits

were calculated was inconsistent with the Plan terms, Plaintiffs argue alternatively that the Plan

terms are illegal, and thus are actionable under ERISA § 502(a)(3).  Specifically, Plaintiffs allege

that the Plan's use of the 1971 GAMT and 1983 GAMT to calculate alternative forms of benefits

violates ERISA § 203(a)'s requirement that a participant's accrued benefit be "nonforfeitable,"

because it results in a benefit that is not actuarially equivalent to the benefit earned under the

Plan formula.  (¶ 111.)

In support of that claim, Plaintiffs do not identify any statutory (or other) requirement to use specific actuarial assumptions.  Instead, Plaintiffs rely on ERISA § 204(c)(3), but that section provides no support at all.  ERISA § 204(c)(3) provides a measure for determining actuarial equivalence where an accrued benefit is in an amount other than an annual benefit commencing at normal retirement age (*e.g.*, the balance in a notional account under a cash balance formula).[12] 29 U.S.C. § 1054(c)(3).  It states nothing about the calculation of alternative forms of annuity benefits where the accrued benefit is in the form of an annuity benefit, as is the case here.

Plaintiffs also rely on a regulation stating that certain adjustments to plan benefits such as "adjustments in excess of reasonable actuarial reductions, can result in rights being forfeitable." (¶ 29, quoting 26 C.F.R. § 1.411(a)-4(a).)[13]  To begin with, reliance on the regulation is misplaced because a breach of a Treasury Regulation would not support a viable claim for relief. Section 502(a)(3) authorizes a participant or beneficiary to commence a cause of action "to enjoin any act or practice which violates any provision of *this subchapter* or the terms of the plan, or . . . to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of *this subchapter* or the terms of the plan."  (emphasis added).  The phrase "this subchapter" refers only to the statutory provisions of Subchapter I of ERISA; it does not refer to regulations under ERISA or the Code.  *See, e.g.*, *Kollman v. Hewitt Assocs., LLC*, 487 F.3d 139, 147 (3d Cir. 2007) (explaining that "this subchapter" refers only to violations of statutorily imposed obligations, and does not embrace violations of regulations); *Chendes v.*

---

[12] ERISA § 204(c)(3) also instructs how to calculate accrued benefits from employee contributions, which is not pertinent here.

[13] Plaintiffs also refer to three other regulations applicable in other circumstances (¶ 31(a)–(c)), but they too only require the use of "reasonable" actuarial assumptions, without specifying what assumptions are reasonable.  *See* 26 C.F.R. § 1.401(a)-11(b)(2) (requiring the use of "consistently applied reasonable actuarial factors" when determining the value of a qualified joint and survivor annuity); 26 C.F.R. § 1.417(a)(3)-1(c)(2)(iv)(B) (requiring the use of reasonable actuarial assumptions when providing values of optional forms of benefits in notices to participants); 26 C.F.R. § 1.411(a)(13)-1(b)(3) (requiring the use of reasonable actuarial assumptions when calculating lump sum benefits).

*Xerox HR Sols., LLC*, No. 16-cv-13980, 2017 WL 4698970, at *11–12 (E.D. Mich. Oct. 19,

2017) (same).  And, Congress knew how to include regulations within ERISA's enforcement

provisions when it wanted to do so.  *See* 29 U.S.C. § 1132(c)(5), ERISA § 502(c)(5) (authorizing

claims for violating "regulations prescribed pursuant to section 1021(g) of this title").

Even if a cause of action for breach of a regulation were available, the result would be the

same here.  Nowhere does ERISA § 203(a) or the Treasury Regulations cited by Plaintiffs

require a plan to use specific actuarial assumptions, much less a specific mortality table, to

comply with any requirement of actuarial equivalence for alternative forms of benefits.  The lack

of a statutory or regulatory mandate to use any particular assumptions is telling because the Code

specifically mandates assumptions for other types of actuarial conversions.  *See*, *e.g.*, *Bates v.

United States*, 522 U.S. 23, 29–30 (1997) ("'[W]here Congress includes particular language in

one section of a statute but omits it in another section of the same Act, it is generally presumed

that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citation

omitted); *Jaen v. Sessions*, 899 F.3d 182, 189 (2d Cir. 2018) (same); *see also In re Citigroup

ERISA Litig.*, No. 07-cv-9790, 2009 WL 2762708, at *21 (S.D.N.Y. Aug. 31, 2009) (dismissing

fiduciary breach claim because it is "inappropriate to infer an unlimited disclosure obligation on

the basis of general provisions that say nothing about disclosure") (citing *Bd. of Trs. of the

CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139 (2d Cir. 1997)), *aff'd*, 662 F.3d

128 (2d Cir. 2011).

For example, Code § 417(e) and its accompanying regulations prescribe the actuarial

assumptions to be used when converting a retirement annuity into a lump sum benefit.  The

Amended Complaint suggests that the Section 417(e) assumptions should serve as some sort of

guidepost (¶ 92), but surely if it was intended that these assumptions be universally applied then

the statute or regulations would have so provided.  *See McCarthy*, 482 F.3d at 207 (recognizing "significant differences between lump sum distributions and deferred vested retirement benefits" and ruling that there was no requirement to use a particular interest rate to determine actuarial equivalence of a deferred vested retirement benefit).

In other contexts, the regulations endorse the use of other assumptions, including the 1971 GAMT and 1983 GAMT.  For example, Treasury has identified the 1971 GAMT and 1983 GAMT and other mortality tables as "standard mortality tables," which are deemed "reasonable" for purposes of determining actuarial equivalence when applying ERISA's nondiscrimination rules.  26 C.F.R. § 1.401(a)(4)-12; 26 C.F.R. § 1.401(a)(4)-3(f)(7).

Other regulations do not prescribe specific assumptions but instead provide plans with broad latitude in calculating alternative annuity benefits.  For example, for purposes of required reporting to plan participants of the relative value of alternative forms of benefits, the regulations provide that the relative value of all alternative forms of benefits may be reported as "approximately equal in value" to the qualified joint and survivor annuity benefit ("QJSA") if they have an actuarial present value that is at least 95% and not greater than 105%, of the actuarial present value of the QJSA benefit.  26 C.F.R. § 1.417(a)(3)-1(c)(2)(iii)(C).  In addition, two or more optional forms of benefit may be reported as having approximately the same value if none of those optional forms of benefits vary by more than 5% from the value of the QJSA.  26 C.F.R. § 1.417(a)(3)-1(c)(2)(iii)(A); *see also* Disclosure of Relative Values of Optional Forms of Benefit, 68 Fed. Reg. 70,141-01, at 70,142-43 (Dec. 17, 2003) (noting the need for a range of equivalence due to the "inexact nature of actuarial assumptions").

Stripped of any specific statutory or regulatory authority for requiring the use of particular actuarial assumptions, Plaintiffs can at best fall back on an argument that there must be

something inherently wrong with using the 1971 GAMT or 1983 GAMT, because the assumptions are outdated.  The Second and Fifth Circuits have effectively rejected such a claim. These circuits have concluded that, "to make a reasonable mortality assumption, one need not use the most recent table available."  *Wachtell, Lipton, Rosen & Katz v. Comm'r*, 64 T.C.M. (CCH) 128 (1992) (endorsing the use of a thirty-year-old mortality table to estimate liability for preretirement benefits where a newer version of the same table had been issued), *aff'd,* 26 F.3d 291 (2d Cir. 1994); *Vinson & Elkins v. Comm'r*, 99 T.C. 9, 52 (1992) (same), *aff'd*, 7 F.3d 1235 (5th Cir. 1993).  The Second Circuit also has held that there is no requirement to update interest rate assumptions used to calculate early retirement benefits.  *See McCarthy*, 482 F.3d at 203–06.

In short, in the absence of any authority requiring the use of a particular set of assumptions, there is no basis for finding a violation of ERISA § 203(a).

C.      **Plaintiffs Have No Viable Claim for Breach of Fiduciary Duty.**

Having failed to establish that the Defendants' use of the 1971 and 1983 GAMT for purposes of converting accrued benefits to alternative forms of benefits violates any statutory or regulatory requirements under ERISA, Plaintiffs cannot salvage a claim by relabeling the same claim as one for breach of fiduciary duty (¶¶ 119–30).  *See, e.g.*, *Bd. of Trs. of the CWA/ITU Negotiated Pension Plan*, 107 F.3d at 146 (holding that plan administrators did not breach their fiduciary duty by failing to disclose actuarial valuation reports because ERISA does not require disclosure of such reports).

Independently, this claim fails because the determination of what mortality assumption to use is not a fiduciary decision and thus cannot result in a fiduciary breach.  In every case alleging a breach of fiduciary duty, "the threshold question is . . . whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to

complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).  It is well-established that ERISA's fiduciary duty rules are not implicated where, as here, the plan sponsor makes a decision regarding the form or structure of a plan, such as how plan benefits are calculated.  *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443–46 (1999) (holding that respondents' fiduciary duty claims failed because ERISA's fiduciary provisions are inapplicable to plan amendments altering plan contribution levels); *Janese v. Fay*, 692 F.3d 221, 227 (2d Cir. 2012) (holding that amendments to plan's benefit formula and rates of benefits were not fiduciary acts); *Hartline v. Sheet Metal Workers' Nat'l Pension Fund*, 134 F. Supp. 2d 1, 16 (D.D.C. 2000) (holding that setting the rate by which participants' benefits are calculated is a plan design function), *aff'd*, 286 F.3d 598, 599 (D.C. Cir. 2002).  Prescribing the interest rates used to calculate alternative forms of benefits is one such design decision that is not implicated by ERISA's fiduciary rules. *See Laurent v. PricewaterhouseCoopers LLP*, No. 06-cv-2280, 2017 WL 3142067, at *8 (S.D.N.Y. July 24, 2017) (holding that setting the interest rate assumptions used for converting a cash balance account balance into a lump sum was a matter of plan design), *appeal filed*, No. 18-487 (2d Cir. Feb. 21, 2018).  Accordingly, Plaintiffs' fiduciary breach claim should be dismissed.

D.    **Plaintiff Masten's Claims Are Time-Barred and Should Be Dismissed.**

If the Amended Complaint is not dismissed in its entirety on the grounds stated above, Plaintiff Masten's claims should still be dismissed because they are barred by the six-year statute of repose applicable to ERISA breach of fiduciary duty claims, and the six-year statute of limitations applicable to claims for benefits and alleged violations of ERISA.[14]

---

[14] Defendants reserve the right to contend that all of claims asserted by both Plaintiffs are time-barred pursuant to the Plan's contractual limitations provisions and/or ERISA's three-year statute of limitations.  *See* Point III, *infra.*

1.   **Plaintiff Masten's Fiduciary Breach Claim is Time-Barred.**

ERISA § 413(1) provides, in relevant part, that no action may be commenced with respect to a fiduciary's breach of any responsibility, duty, or obligation more than six years after the date of the last action that constituted a part of the breach or violation.  29 U.S.C. § 1113(1). Construing this provision, courts hold that only fiduciary breaches alleged to have occurred in the six years leading up to the filing of a complaint are actionable.  *See Larson v. Northrop Corp.*, 21 F.3d 1164, 1169–72 (D.C. Cir. 1994) (holding time-barred claim arising out of entering into a contract more than six years before suit was commenced); *Bona v. Barasch*, No. 01-cv-2289, 2003 WL 1395932, at *19 (S.D.N.Y. Mar. 20, 2003) (same) (citing *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078 (7th Cir. 1992); *Reich v. Glasser*, No. 95-cv-8288, 1996 WL 243243, at *3 (S.D.N.Y. May 10, 1996) (holding time-barred claims based on improper loans if made more than six-years before suit was commenced); *Gruby v. Brady*, 838 F. Supp. 820, 831 (S.D.N.Y. 1993) (dismissing claims based on alleged benefit increases that took place more than six years before complaint filed).  In this case, the alleged fiduciary breach would have occurred, at the latest, in November 2012—more than six years before this suit was commenced—when Masten's benefits were calculated and he received his retirement paperwork showing the amount of his benefit to commence December 1, 2012.

2.   **Plaintiff Masten's Benefit and Statutory Claims are Time-Barred.**

Masten's benefit and statutory claims are subject to a six-year limitations period. Because ERISA does not provide a statute of limitations for these claims, courts apply the forum state's limitations period for the most analogous state law claim.  *See, e.g.*, *Burke v. PriceWaterhouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009).  Here, New York's six-year limitations period for breach of contract claims governs Plaintiffs' claims for benefits and statutory violations under ERISA.  *See id.* (benefit claim); *Abdul-Aziz v. Nat'l*

*Basketball Ass'n Players' Pension Plan*, No. 17-cv-8901, 2019 WL 1284591, at *3 (S.D.N.Y.

Mar. 20, 2019) (benefit claim and ERISA §§ 204(c)(3) and (g) claim) *appeal filed*, No. 19-782

(2d Cir. Mar. 27, 2019); *Hirt v. Equitable Ret. Plan for Emps.*, 450 F. Supp. 2d 331, 333

(S.D.N.Y. 2006) (ERISA § 204(h) claim), *aff'd*, 285 F. App'x 802 (2d Cir. 2008).

      The Second Circuit has held that a claim for benefits "accrues upon a clear repudiation by

the plan that is known, or should be known" by the participant, "regardless of whether [he] has

filed a formal application for benefits."  *Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension

Plan*, 201 F.3d 44, 48–49 (2d Cir. 1999).  In *Novella v. Westchester County*, 661 F.3d 128, 147

(2d Cir. 2011), the Second Circuit held that, where a claim is predicated on an alleged

miscalculation of benefits, the repudiation occurs "when there is enough information available to

the pensioner to assure that he knows or reasonably should know of the miscalculation."  In so

holding, the Court explicitly rejected an approach whereby a "pensioner could collect benefit

checks for twenty or thirty years without any obligation to inquire as to the correctness of the

calculations underlying the benefit payments and could still thereafter assert a timely claim for

miscalculation."  *Id.* at 146–47.  According to the Court, the appropriate inquiry is when the

alleged miscalculation was reasonably "discoverable" by the plaintiff.  *Id.* at 147 & n.22; *see

Moses v. Revlon Inc.*, 691 F. App'x 16 (2d Cir. 2017) (holding that beneficiary who knew as of

1989 that her husband had elected a higher monthly pension benefit commencing when he would

have turned 65 was on notice of her claim for underpayment of her pension benefits in 2004

when she received a lower monthly benefit); *Abdul-Aziz*, 2019 WL 1284591 at *4 (holding that

plaintiff's claims for benefits and violations of ERISA expired six years after he stopped

receiving benefits where plaintiff was on notice that his benefits would cease since the time that

he received his retirement application); *DePasquale v. DePasquale*, No. 12-cv-2564, 2013 WL

789209, at *13 (E.D.N.Y. Mar. 1, 2013) (concluding that plaintiff's miscalculation of benefits claim was time-barred because, with due diligence, he should have discovered the basis of his claim more than six years prior to filing suit), *aff'd*, 568 F. App'x 55 (2d Cir. 2014).

Courts outside the Second Circuit have similarly concluded that claims for benefits, as well as statutory claims for additional benefits, accrue when the participant reasonably can be expected to be aware of the claim.  For example, in *Thompson v. Retirement Plan for Employees of S.C. Johnson & Son, Inc*., 651 F.3d 600 (7th Cir. 2011), the Seventh Circuit held that payment of lump sums triggered accrual of the applicable statute of limitations on statutory claims where the plan had previously informed participants that no additional payments would be made.  In so holding, the Seventh Circuit rejected plaintiffs' argument that they were not on notice of the statutory violation because they had not been told how their lump sums were calculated.  According to the Court, it was each participant's responsibility to determine whether his or her award was lawful and correct.  Otherwise, there would be "no accrual date" for their claims, which the Court determined would be an unacceptable outcome.  *Id*. at 606–07.[15]

Under *Novella*'s "knew or should have known" standard, Plaintiff Masten's claims accrued, at the latest, in November 2012 when he received his retirement paperwork showing the amount of his benefit to commence December 1, 2012—more than six years before the Complaint was filed.  (¶ 13; Ex. C.)  The Plan document in effect at the time clearly stated that alternative benefits were calculated using an actuarial assumption based on the 1971 GAMT. (Ex. A at §§ 1.02(a), 5.05-A; *see also* Ex. B at 10.)  Masten was thus on notice of any claim based on the use of that assumption at the time he received his retirement paperwork.  At a

---

[15]  The Second Circuit's decision in *Osberg v. Foot Locker, Inc.*, 862 F.3d 198, 208 (2d Cir 2017) is not to the contrary.  The Second Circuit distinguished *Thompson* because it found that defendants had purposefully concealed the facts giving rise to plaintiff's claim, and expressly left open the open possibility of reaching a conclusion similar to *Thompson* where there are no allegations of fraud or concealment.

minimum, he had a duty to inquire further if he had any concern about the impact of the assumptions used to calculate his benefit.  Having failed to timely do so, his benefit and statutory claims are time-barred.

III.    **IF NOT DISMISSED ON THE MERITS, THE COURT SHOULD DISMISS OR STAY THIS ACTION BECAUSE PLAINTIFFS HAVE NOT EXHAUSTED THE <u>PLAN'S CLAIMS PROCEDURES.</u>**

If the Court does not agree that Plaintiffs' claims should be dismissed outright, it should instead require Plaintiffs to exhaust their claims administratively before allowing this litigation to move forward.  The Second Circuit has recognized the "firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases" because it "provide[s] a sufficiently clear record of administrative action if litigation should ensue."  *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993) (citations omitted).

Courts thus routinely grant motions to dismiss claims for benefits where a plaintiff has failed to exhaust the plan's claims procedures.  *See*, *e.g.*, *Quigley v. Citigroup Supplemental Plan for Shearson Transfers*, No. 09-cv-8944, 2011 WL 1213218, at *7–8 (S.D.N.Y. Mar. 29, 2011), *aff'd*, 520 F. App'x 15 (2d Cir. 2013).  Courts likewise require exhaustion of statutory or fiduciary breach claims that turn in whole or in part on an interpretation of plan provisions.  *See DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497 (E.D.N.Y. 2011) (requiring exhaustion of a claim seeking additional credit for time worked based on the allegation that defendants failed to keep accurate records of "all time worked" in breach of ERISA § 209 in order to allow for a determination of what constitutes "sufficient" records to calculate the benefits due); *D'Amico v. CBS Corp.*, 297 F.3d 287, 291–92 (3d Cir. 2002) (requiring exhaustion of fiduciary breach claim); *McCulloch v. Bd. of Trs. of SEIU Affiliates Officers & Emps.' Pension Plan*, No. 14-cv-9348, 2016 WL 9022578, at *4, 7 (S.D.N.Y. Mar. 31, 2016) (requiring exhaustion of statutory violation claim), *aff'd*, 686 F. App'x 68 (2d Cir.

2017); *Diamond v. Loc. 807 Lab.-Mgmt. Pension Fund*, No. 12-cv-5555, 2014 WL 527898, at
*5–8 (E.D.N.Y. Feb. 7, 2014) (requiring exhaustion of fiduciary breach claim), *aff'd*, 595 F.
App'x 22 (2d Cir. 2014).

 Here, Plaintiffs' claims hinge on their challenge to the reasonableness of the actuarial
assumptions used to calculate the alternative forms of benefits they selected.  In the absence of
any specific statutory requirement as to what constitutes reasonableness, the Court will need to
evaluate the reasonableness of the Plan's methodology from the perspective of the assurance of
actuarial equivalence contained in the Plan.  Accordingly, the claims ultimately turn on the
reasonableness of the Plan administrator's interpretation of the Plan—an issue that requires
administrative exhaustion.

 Administrative exhaustion also would fill some (or all) of the gaps in Plaintiffs' claims as
currently pled by allowing the parties to address the following issues, among others:  the proper
construction of the applicable Plan provisions, including the starting point for converting to
alternative benefit forms; what conversion factor Plaintiffs are claiming the Plan should be using;
what the impact is—relative to the existing conversion factor—of using that conversion factor in
calculating the various alternative forms of benefits; and what administrative challenges are
posed by requiring the Plan to update its mortality assumption.  *See Makar v. Health Care Corp.
of Mid–Atl.*, 872 F.2d 80, 83 (4th Cir. 1989) (requiring exhaustion where there was "virtually no
factual record" and the "fiduciaries had not had the opportunity to define the relevant issues or to
apply the relevant plan provisions" to the plaintiffs' claims).  The need for exhaustion of these
issues is underscored by Plaintiffs' failure to properly apply the Plan's terms when purporting to
compare the alternative benefits provided to Plaintiffs by the Plan to the benefits they would
have received using the Section 417(e) assumptions.  Surely if Plaintiffs do not even know which

benefit to apply the actuarial conversion factors to, they should be directed to first bring their claims to the Plan administrator for a response.

Requiring Plaintiffs to exhaust their administrative remedies also will help the parties evaluate whether Plaintiffs' claims are barred by the Plan's contractual limitations period. The Plan provides that a claim will not "be valid if submitted more than six months following the close of the Plan Year in which it arose." (Ex. A at § 10.09(b); Ex. B at 15.) In light of the fact that Plaintiff Masten commenced receiving his retirement benefit in 2012 (¶ 13; Ex. C), and Plaintiff McAlister commenced receiving her benefit in 2014 (¶ 14), the Plan will need to determine, in the first instance, whether these claims are barred by the Plan's limitations rules. *See Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105–06 (2013) (concluding that a plan may establish an absolute bar to all claims arising after a date certain).

In short, if not dismissed for failure to state a claim, Plaintiffs' claims should be dismissed for failure to administratively exhaust these claims.

## CONCLUSION

For the reasons stated herein, the Complaint should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

PROSKAUER ROSE LLP

By: */s/ Russell L. Hirschhorn*
       Russell L. Hirschhorn
Myron D. Rumeld
Eleven Times Square
New York, New York 10036
Tel.: 212.969.3000
mrumeld@proskauer.com
rhirschhorn@proskauer.com

*Counsel for the Defendants*