```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

WILLIAM MASTEN, et al.,

                Plaintiffs,

        v.                             18-cv-11229 (RA)

METROPOLITAN LIFE INSURANCE
COMPANY, et al.,

                Defendants.            Conference
------------------------------x
                                       New York, N.Y.
                                       (remote)

                                       May 26, 2021
                                       8:50 a.m.

Before:

                    HON. RONNIE ABRAMS

                                       District Judge

                        APPEARANCES

IZARD KINDALL & RAABE LLP
     Attorneys for Plaintiffs
BY:  MARK P. KINDALL

PROSKAUER ROSE LLP
     Attorneys for Defendants
BY:  MYRON D. RUMELD
     RUSSELL L. HIRSCHHORN
```

1                    (Remote)

2              THE COURT:  Good morning, everyone.  This is Judge

3     Abrams.  We're here on Masten v. Metropolitan Life Insurance

4     Company.

5              Would the parties please state their appearances.

6              MR. KINDALL:  Good morning, your Honor.  This is Mark

7     Kindall, from Izard Kindall & Raabe, for the plaintiffs.

8              THE COURT:  Good morning.

9              MR. RUMELD:  Good morning, your Honor.  This is Myron

10    Rumeld from the Proskauer firm.  I have also have joining me on

11    another line Russell Hirschhorn.

12             THE COURT:  OK.  And good morning to you.  I'm sorry

13    that we got started a little bit late today.  And thank you for

14    your flexibility with scheduling this argument in the first

15    place.  As I think as you may know, I'm on the trial right now,

16    so just been a little bit busy.

17             I just want to start by reminding everyone that this

18    is a public proceeding, so members of the public and press are

19    able to access the proceeding through the public call-in

20    number, but no recording or rebroadcasting is permitted.

21             So we're here to discuss defendant's motion to

22    dismiss.  So why don't we begin with defendant.

23             MR. RUMELD:  Thank you, your Honor.  This is one of a

24    number of lawsuits that plaintiff's counsel has filed over the

25    last couple of years, each of which asserts that a pension

1   plan's use of an older mortality assumption is illegal.  And as
2   we explained in our papers, all of these lawsuits are unfounded
3   because the applicable case law doesn't require that actuarial
4   assumptions be updated in order for them to be considered
5   reasonable.  For purposes of this case, however, the Court
6   doesn't need to wade through the case law on when assumptions
7   need to be considered reasonable, because here we have a more
8   fundamental flaw in the way the complaint was written.  Here,
9   the claims in this case proceed from the mistaken premises that
10  the various alternative forms of benefits are calculated by
11  actuarially converting the single life annuity benefit and that
12  the assumptions that we use to implement that conversion cause
13  the alternative forms of benefits to be too low.  Essentially,
14  they're saying that because we use an older mortality
15  assumption, meaning we assume people live less than they
16  actually do, we cause the alternative benefits to come out too
17  low when we perform this conversion from a single life annuity.
18  And that assumption, that the conversion works off of the
19  single life annuity, is littered throughout the allegations in
20  the complaint but, for example, if you look at Section 2 of the
21  complaint, beginning on page 16, you'll see that there's a
22  lengthy discussion of the plaintiff's theory of the case of
23  what happens when you convert from a single life annuity.
24           Now, the problem is, it's simply not true that the
25  alternative forms of benefits are calculated this way.  Just to

be clear, a single life annuity is a monthly benefit that's paid for the life of the participant and then when the participant passes away, the payments end.  That's a single life annuity.  That is not the benefit that a participant accrues under this plan.  Rather, the participant accrues a different kind of benefit that's known as a certain life annuity, which is like a single life annuity, but it contains in it a guarantee that a participant will receive a certain number of years of payment even if the participant dies sooner. And depending on what period of time is involved when the participant retires, it's either a five-year certain benefit or a 12-year certain benefit.  So in the case of a 12-year certain benefit, for example, if a participant should retire at age 65 and should pass away at age 70, five years later, the participant would still be locked into an entitlement to 12 years' worth of annuity payment.  It's a more generous benefit because it effectively works a little like a life insurance policy and not just as an annuity.  It's an added feature.

So when you plug in the plan's formula for calculating the benefit, years of service times final compensation times some other percentage, that number that you come up with, say $800 a month, that number corresponds not to a single life annuity but to this 12-year certain benefit, to this more generous benefit.  And it's from that benefit that you convert to get to the various other alternative benefits.

So now let me explain, if I may, why this distinction is so important, because the fact that the starting benefit is not a single life annuity and instead is one of these certain life annuities basically undermines the assumption on which the entire complaint was predicated, which is that plaintiffs and the other participants are being financially disadvantaged by the use of an older mortality assumption.

Because the certain life annuity guarantees a minimum number of years of payment, this benefit is more valuable than the ordinary annuity. And because it's more valuable, a participant electing an ordinary life annuity will get a dollar amount of a benefit that's somewhat larger to compensate for that discrepancy.

Let me try and take a somewhat simpler example. If you consider that a participant might normally be entitled to an annuity of $800 a month, if he instead elects a joint and survivor annuity with his spouse, he'd get a lower benefit, maybe $600 a month, in recognition of the fact that the survivor annuity for the spouse has a certain value depending on how long the participant and the spouse are expected to live, using actuarial assumptions. So there's this dollar differential between the more valuable annuity and the less valuable annuity.

So the same thing works here. Because the annuity we provide has this death benefit feature, has a feature that

guarantees a certain amount of benefit even if the participant dies early, that benefit is worth more than a simple life annuity, and a single life annuity with a dollar amount of that annuity would be proportionately higher.  How much higher depends on what assumptions you plug in.

And when the math works this way, if the mortality assumption is lower, if you use an older mortality assumption, that assumes participants don't live as long, the starting benefit, the one with the death benefit feature, becomes worth more.  Why?  Because if everybody is assumed to die soon, the death benefit feature is worth more, and conversely if you use a more current mortality assumption that assumes people live longer -- if everybody lived forever the death benefit feature wouldn't be worth anything.

So the way this plan works, the use of an older mortality assumption adds to the value, adds to the relative value of the starting benefit, the benefit with the death benefit feature.  And as a result, when you actuarially convert to the other forms of benefits, you actually bump up the dollar amount of those other benefits more than if you used a newer mortality assumption.

THE COURT:  Can I --

MR. RUMELD:  So, in other words --

THE COURT:  Can I just ask you something just to make sure I understand?  I guess my question is why that's material

1   when ERISA requires alternative benefits to be actuarially

2   equivalent to a single life annuity and not the plan's default

3   benefit.

4              MR. RUMELD:  Well, two responses to that.  And I do

5   want to make a continuing apology because I know all of this

6   stuff I'm saying is rather murky and mathematical and

7   confusing, so I'm trying the best I can.  But I admit that this

8   is a weird, confusing type of factual predicate.

9              So first of all, in order for the plaintiffs to

10  proceed, they have to show that they have been harmed.  And if

11  it turns out that the plaintiffs are actually getting more

12  money than they would get if we plugged in the assumptions

13  they're saying should have been used, they haven't been harmed.

14  And the result of the fact that you don't convert from the

15  single life annuity to the other form of benefit but, rather,

16  you convert from a certain life annuity to other form of

17  benefits, makes this math work in reverse and makes plaintiffs

18  like Masten come out ahead rather than behind.

19             The second response to your question is, with respect,

20  I don't want your Honor to buy into the argument that ERISA

21  requires that all alternative forms of benefit be actuarially

22  equivalent to the single life annuity.  That is not true.  And

23  if you make your way through the statute and if you read

24  carefully even what plaintiffs have argued, the only benefits

25  that the statute addresses from the standpoint of equivalence

1   are two specific types of benefits: the qualified joint and
2   survivor annuity and the qualified optional survivor annuity.
3   What ERISA basically says is that everybody is entitled to one
4   of those two alternative forms of benefits, because ERISA
5   doesn't want a married participant to suffer by virtue of the
6   election of a benefit that protects the participant.
7              So there's a specific rule, there's a specific
8   regulation with respect to qualified joint and survivor annuity
9   that says that that benefit cannot be actuarially worth less
10  than any other benefit, and that would include the single life
11  annuity.
12             Neither of these participants selected the qualified
13  joint and survivor annuity.  The qualified joint and survivor
14  annuity is a 50 percent survivor benefit.  It's a specific
15  designated benefit under the plan.  Neither of them selected
16  that annuity and neither of them selected the optional survivor
17  annuity, which would be a 75 percent annuity.  With respect to
18  that benefit, the regs simply require that it be equivalent to
19  *a* single life annuity but not necessarily the single life
20  annuity: so, here, if you're actually coming out better than
21  the starting annuity, I don't think there's any violation at
22  all with respect to the qualified optional survivor annuity.
23             But in any event, neither of these participants
24  selected the only two forms of annuity that receive some
25  actuarial protection.

1          To just to be clear, we don't mean to be suggesting

2   that there's anything unreasonable about the assumptions that

3   were used here.  And we do think if we had to litigate this

4   case, we would demonstrate that when all the considerations are

5   put into play, we would show that these assumptions are proper

6   measures of actuarial equivalence.  But we're also saying that

7   we don't have to get into that, because the optional forms of

8   benefits that these particular participants chose do not plug

9   into that protection of actuarial equivalence for the single

10  life annuity.  That's a mistaken construction of the statute.

11         And in any event, we don't think we can get anywhere

12  until the complaint properly straightens out what the starting

13  benefit is and what the conversion is, because only once you've

14  straightened that out do you actually know where you have a

15  class of participants for coming out ahead or coming out

16  behind.  Actually, we don't even know what the proper class of

17  participant is because the way the complaint is written, the

18  class of participants is anybody other than people who selected

19  a single life annuity, but in fact, because the starting

20  benefit is the five-year certain or the 12-year certain, the

21  people who selected a single life annuity are people who

22  selected an alternative form of benefit, and people who

23  selected a five-year or 12-year certain would not be in the

24  class, because their benefit is the starting benefit.

25         I would also suggest that the Court take another look

at this *Rockwell* decision that we cited in one of the numerous supplemental authorities that were submitted by the two parties over the last year or so, because in the *Rockwell* case, virtually the same thing happened. It eventually emerged that the plaintiffs had it wrong and that the starting benefit was not the single life annuity. And as a result of that, the judge ultimately dismissed the case, finding that the plaintiff had no basis to claim any harm, because the benefit that the plaintiff took, the ten-year certain, was the starting benefit. It was not a benefit that was actually converted. And if the plaintiff had taken the single life annuity, by virtue of this reverse effect of the conversion, the plaintiff would have ended up ahead, so the court concluded that the plaintiff had no standing with which to bring a claim and then the claim was eventually withdrawn instead of plaintiffs' trying to amend the complaint.

THE COURT: Let me just ask a question. In this case, is there a factual dispute that can't be resolved on a motion to dismiss with respect to harm?

MR. RUMELD: Well, I think there's a dispute, there's a dispute that I'm not sure I would characterize as a factual dispute. There's a dispute about how the plan is properly interpreted. And that's why we've suggested that if the Court is not persuaded, by going through the plan document itself, that the plaintiff has it wrong, the right procedure under

1    ERISA is to require the plaintiffs to exhaust their claims
2    administratively.  And this is a perfect example of why that
3    makes a lot of sense, because there is a lot of confusion as
4    you read the two sets of papers as to what the starting benefit
5    is and what the impact is of converting from the starting
6    benefit.  If this claim had been administratively exhausted, by
7    the time it got to court, the Court would have a full
8    administrative record, including the plan's determination as to
9    what the plaintiffs are entitled to and why under the terms of
10   the plan, and the Court would be reviewing the plan committee's
11   interpretation of the plan, which is how it's normally supposed
12   to work.  The plaintiffs have made the argument that they have
13   statutory claims and that's why they proceed to the court
14   directly, but I think one of the things that's come out of the
15   briefing is that statutory claims are directly linked to issues
16   regarding the interpretation of the plan, and interpretation of
17   the plan in the first instance is something the plan is
18   supposed to do that we have not had an opportunity to do here.
19            So while I do believe that if the Court sort of tracks
20   what we wrote in our reply brief, where we have talked to walk
21   the court through various plan provisions to show why the
22   plaintiffs have it wrong about what the starting benefit is, if
23   there is any debate about that, it really should go back to the
24   plan.  This isn't really an issue that should go into
25   discovery, because it's not a factual dispute, you know, in the

1    normal sense; it's a question of interpreting the plan.

2            THE COURT: OK. Thanks very much.

3            Mr. Kindall, do you want to respond?

4            MR. KINDALL: Thank you, your Honor. A couple of

5    points. To follow up on your initial question, ERISA does

6    require that not only qualified joint and survive -- the

7    qualified joint and survivor annuity, but all optional joint

8    and survivor annuities be actuarially equivalent to the single

9    life annuity. So it doesn't matter what the plan's designated

10   default option for nonmarried participants is. What ERISA

11   requires is a comparison of the actuarial present value of

12   single life annuity to each of the qualified joint and survivor

13   annuities and qualified optional survivor annuities. So the

14   whole issue about whether the plan's default option is a single

15   life annuity or a five-year certain and life does not affect

16   the statutory analysis under Section 205 of ERISA, which is

17   what we've grounded our complaint in.

18           So the question then is, OK, if that's the comparison,

19   have we alleged facts in the complaint that are sufficient to

20   demonstrate that we have a claim? And we do. The complaint

21   specifically alleges with respect to both of the plaintiffs

22   that if you compare their single life annuity that they were

23   offered at the time they retired to the optional benefit that

24   they received and if you make that comparison using reasonable

25   actuarial assumptions, then you find that the option that they

selected is less valuable than the single life annuity. And that's exactly what Section 205(d) of ERISA is designed to prevent.

So we have made a showing sufficient to establish the entitlement to relief under ERISA, and it's a statutory claim. If you look at the numerous cases that have been decided in the last two years that relate to this issue, they really address most of the issues that the defendants raise in their brief, and you kind of go through with respect to the issues that are raised. The defendants have argued, for example, that there is no requirement that the benefits be calculated using the Treasury assumptions that are used to calculate lump-sum benefits. That's true. But on the other hand, as several courts have found, and specifically the *Duffy v. Anheuser-Busch* court was very specific about this, the Treasury assumption comparison that we use in the complaint is just by way of an example. It's just here to demonstrate that if you use a reasonable set of assumptions, the benefits are much higher. And that is a way of demonstrating that the assumptions that are in the plan are not just old; they are outdated. They don't generate reasonably actuarially equivalent benefits. When you have a significant change in mortality over a course of 40 years and you have more up-to-date mortality tables, they are going to affect the benefit calculations. And when you look at the comparison using the Treasury assumptions, it

1   confirms that intuition.

2   The other thing that's notable with respect to the
3   Treasury assumptions, the defendants in their brief cite to the
4   relative value disclosures regulations, and they cite them in a
5   way that doesn't actually make a lot of sense.  The way that
6   the relative value disclosure regs work is that they're
7   designed to provide sort of summary information for plan
8   participants at the time that they are selecting benefits.  And
9   they try to make it simple so that there are ways of
10  aggregating benefits that are close in value.  And the
11  regulations provide a mechanism for doing that.  But that
12  doesn't change the actual value of the amounts that are being
13  calculated.  And in the first instance, the relative value
14  regulations say the plan has to calculate what the actuarial
15  present value is of each of the options that are being offered,
16  using reasonable actuarial assumptions, and then make your
17  comparison based on that.  And among the reasonable actuarial
18  assumptions that can be used, the regulations specifically call
19  out the Treasury assumptions that are used to calculate lump
20  sums.  And they say, if you base your relative value
21  calculations on the Treasury assumptions, that is presumed to
22  be reasonable.

23  So it's very sensible that, in the complaint, we make
24  our comparison based on the Treasury assumptions and we say, if
25  you compare the value of the SLA that the plaintiffs could have

1    taken to the benefit that they did receive, using the Treasury
2    assumptions, you don't end up with an actuarially equivalent
3    benefit; that's a violation of ERISA.
4             THE COURT:  Sorry.  If you want to finish that
5    thought, I didn't mean to cut you off.
6             MR. KINDALL:  No.  I am done with that thought.
7             THE COURT:  OK.  Good.
8             I wanted to ask you to respond to defendants'
9    contention that they didn't select the type of plans protected
10   by 29 U.S.C. 1055(b).
11            MR. KINDALL:  I don't agree with that.  It is true
12   that neither of the plaintiffs elected the qualified joint and
13   survivor annuity, but the regulation -- or the statute, rather,
14   with respect to the qualified optional survivor annuity
15   indicates that it doesn't have to be one designated qualified
16   optional survivor annuity.  Anything that's not the qualified
17   joint and survivor annuity -- it's a joint and survivor
18   annuity, and anything that -- let me see what the exact
19   statutory language is.  "Such terms also include any annuity in
20   a form having the effect of an annuity described in the
21   preceding sentence."
22            So the qualified optional survivor annuity is any
23   annuity for the life of a participant, for the survivor annuity
24   for the life of the spouse, which is equal to the applicable
25   percentage of the amount of the annuity which is payable during

1   their joint lives.

2              So, for example, plaintiff McAlister took a 100

3   percent joint and survivor annuity. It's not the qualified

4   joint and survivor annuity. But it clearly falls within the

5   definition of an optional survivor annuity under that section.

6   So it is certainly a benefit that has the same effect.

7              THE COURT: All right. Anything else you want to add

8   before we adjourn?

9              MR. KINDALL: You know, I think that the rest of the

10  arguments that we would make are laid out not only in our brief

11  but also very specifically in the *Torres v. American Airlines*,

12  the *Smith v. Rockwell*, *Herndon v. Huntington Ingalls*,

13  *Anheuser-Busch* decision, that we've provided by way of

14  supplemental authority.

15             The one element that I would want to -- actually, I'm

16  sorry, there are two things that I want to address in addition.

17  The first is an update. In the briefing, the defendants had

18  argued that it is not permissible to bring a claim for benefits

19  under (a)(1)(B), and they had cited the *CIGNA v. Amara*

20  litigation with respect to that. In our briefing we had talked

21  a little bit about the *Laurent v. PricewaterhouseCoopers*

22  litigation, which at that time was in the Southern District and

23  was on appeal to the Second Circuit. The Second Circuit issued

24  an opinion in that case in 2019, and in their decision, the

25  judges held that it was perfectly appropriate to bring a claim

1    for reformation of a plan under ERISA Section 501(a)(3) and
2    then layer onto that a claim for benefits, an (a)(1)(B) claim
3    for benefits under the reformed plan, so essentially a two-step
4    process.  So that decision has come out.  It is binding
5    precedent here.  The defendants in that action did request that
6    the Supreme Court review it.  The cert petition is still under
7    review.  The justices of the Supreme Court requested that the
8    solicitor general weigh in.  The acting solicitor general did
9    so yesterday.  And in the brief that she filed with the Court
10   yesterday, she indicated that the position of the United States
11   is that the Second Circuit got it right on that issue and,
12   moreover, that there is no circuit split that would warrant the
13   Supreme Court taking up the decision.
14            THE COURT:  OK.  All right.
15            Yes.
16            MR. RUMELD:  Your Honor, could I just respond very
17   briefly to one point?
18            THE COURT:  Sure.
19            MR. RUMELD:  I just, you know, particularly since my
20   adversary has made it clear that he's relying on Section 205 of
21   ERISA, Section 205(d), which is entitled "Joint and Qualified
22   Joint and Survivor Annuity," I want to just emphasize the point
23   that, respectfully, it is not correct, under the statute, that
24   qualified optional survivor annuity means any optional annuity.
25   If you make your way through the statute, it makes it clear in

1    the definitional section that the qualified optional survivor
2    annuity is triggered to what the percentage is for the
3    qualified joint and survivor annuity.  And what it basically
4    says is, if, as in the case of this plan, the qualified joint
5    and survivor annuity is a 50 percent joint and survivor
6    annuity, *the* qualified optional survivor annuity is 75 percent.
7    OK.  So you can see that in (B)(i)(I), where it says if it's
8    less than 75 percent the applicable percentage is 75 percent.
9    It is not correct that there is a whole menu of optional
10   survivor annuities that are protected by this provision of the
11   statute.  The idea of the statute was to allow a participant to
12   have one.  There is no requirement to provide the whole menu of
13   optional annuities we have here.  So he's relying on a
14   provision that does not protect the types of options that these
15   participants chose.

16           Furthermore, to the extent that he cites the statute
17   as saying that the qualified optional survivor annuity, even if
18   his client has selected one, entitled him to the actuarial
19   equivalent of a single life annuity, that's not correct either.
20   The language is "the actuarial equivalent of a single annuity
21   for the life of the participant."  In this case, the single
22   annuity for the life of the participant is that starting
23   annuity, the five-year certain annuity.  The statute knows how
24   to use the term "single life annuity" when it wants to.  There
25   is no connection directly to the single life annuity.  The

1  intention of this statute is to make sure that if the accrued
2  benefit is a certain type of single life annuity, that the
3  optional form that's required for spouses be actuarially
4  equivalent to that form of annuity.  In this case, the whole
5  point I'm making is that, if anything, people who select a
6  single life annuity are coming out ahead of the starting
7  annuity.  And there is no cause for having some comparison to
8  the single life annuity when that's not the starting annuity.
9       MR. KINDALL:  Your Honor, may I respond to that last
10 point very briefly?
11      THE COURT:  Sure.
12      MR. KINDALL:  The language in the statute, in Section
13 205, is single annuity for the life of the participant.  A
14 five-year certain or a 12-year certain and life annuity is not
15 a single annuity for the life of a participant.  It has a
16 single annuity for the life of a participant, but it layers
17 onto that a term annuity for the life -- for a beneficiary,
18 typically the spouse but it doesn't have to be.  So if the
19 participant dies within the guarantee period, five years or 12
20 years, the contingent beneficiary continues to receive a
21 separate annuity, the contingent survivor annuity, for that
22 period of years.  So even if you can argue, as the Court seems
23 skeptical in the *Rockwell* decision that the defendants just
24 cited, even if you could argue that the five-year certain life
25 annuity is a life annuity, it is not a single annuity for the

L5QAMASOps

1   life of a participant.  So the proper comparison, as we have
2   argued in our briefs, is to the single life annuity.
3           THE COURT:  All right.  Thank you all for your
4   argument today and, again, your flexibility with scheduling.
5   I'll consider your arguments, and I will issue a written
6   opinion shortly.
7           Take care, everyone.  Stay safe.
8           (Adjourned)