Myron D. Rumeld
Russell L. Hirschhorn
Deidre A. Grossman
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
212.969.3000
mrumeld@proskauer.com
rhirschhorn@proskauer.com
dagrossman@proskauer.com
*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Catherine McAlister, Pauline Walker, Lee Kernan, Emily Ross, Scott Batey, Mary Trivett and Joan Brownell, on behalf of themselves and all others similarly situated,<br><br>           Plaintiffs,<br><br>   v.<br><br>Metropolitan Life Insurance Company, MetLife Group, Inc. and the Metropolitan Life Insurance Company Employee Benefits Committee,<br><br>           Defendants. | No. 18-cv-11229-RA-OTW |

**DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE WANG'S**
**REPORT AND RECOMMENDATION TO GRANT PLAINTIFFS'**
**<u>MOTION FOR CLASS CERTIFICATION</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND .................................................................................................3

    A.    The Plan ...............................................................................................3

    B.    The Class Claim ...................................................................................5

    C.    Plaintiffs' Methodology for Establishing a Common Claim for Relief................6

    D.    Defendants' Expert Report .....................................................................7

    E.    Releases Signed By Plaintiffs and Class Members.................................9

    F.    Defendants' Opposition to Plaintiffs' Motion for Class Certification..................10

    G.    Defendants' Request for Additional Briefing on the Release Issue ......................11

    H.    The Report and Recommendation .......................................................11

STANDARD OF REVIEW ...................................................................................13

OBJECTIONS...................................................................................................14

I.    MAGISTRATE JUDGE WANG ERRONEOUSLY CONCLUDED THAT SHE
COULD CERTIFY THE CLASS WITHOUT RESOLVING FLAWS IN THE
METHODOLOGY THAT PLAINTIFFS RELIED ON TO SATISFY RULE 23............14

    A.    Plaintiffs' Methodology Is Contrary to the Plan's Design and ERISA. ................16

    B.    Plaintiffs' Methodology Fails to Consider Other "Reasonable" Assumptions......18

II.    MAGISTRATE JUDGE WANG FAILED TO CONSIDER THAT THE CLASS
WAS IMPROPERLY GERRYMANDERED TO EXCLUDE HUNDREDS OF
AFFECTED PARTICIPANTS. ........................................................................20

III.    MAGISTRATE JUDGE WANG'S RECOMMENDATION TO CERTIFY A
SUBCLASS OF PERSONS WHO SIGNED RELEASES DOES NOT CURE
PLAINTIFFS' INABILITY TO SATISFY THE RULE 23 CRITERIA AS TO
THE ENTIRE CLASS. ...............................................................................22

CONCLUSION.................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<span style="font-size:smaller">ASES</span>

*Berube v. Rockwell Automation, Inc.*,
No. 20-cv-1783 (E.D. Wis. Apr. 3, 2023)..............................................................................2

*Bond v. Marriott Int'l, Inc.*,
296 F.R.D. 403 (D. Md. 2014)..............................................................................................23

*CIGNA Corp. v. Amara*,
563 U.S. 421 (2011)..............................................................................................................17

*Coan v. Kaufman*,
457 F.3d 250 (2d Cir. 2006)..................................................................................................21

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)...........................................................................................................1, 15

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
990 F.3d 173 (2d Cir. 2021)..................................................................................................21

*Decastro v. City of New York*,
No. 16-cv-3850, 2019 WL 4509027 (S.D.N.Y. Sept. 19, 2019) ............................................18

*Finnan v. L.F. Rothschild & Co.*,
726 F. Supp. 460 (S.D.N.Y. 1989)........................................................................................24

*Fish v. Greatbanc Trust Co.*,
667 F. Supp. 2d 949 (N.D. Ill. 2009) ....................................................................................21

*Hoeffner v. D'Amato*,
No. 09-cv-3160, 2019 WL 1428367 (E.D.N.Y. Mar. 29, 2019).............................................22

*In re Currency Conversion Fee Antitrust Litigation*,
264 F.R.D. 100 (S.D.N.Y 2010) ..........................................................................................24

*In re Initial Public Offerings Sec. Litig.*,
471 F.3d 24 (2d Cir. 2006)...................................................................................................15

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
No. 12-cv-2548, 2017 WL 1273963 (S.D.N.Y. Mar. 31, 2017).............................................23

*In re LIBOR-Based Financial Instruments Antitrust Litigation*,
299 F. Supp. 3d 430 (S.D.N.Y. 2018)...................................................................................15

*In re Polaroid ERISA Litig.*,
 240 F.R.D. 65 (S.D.N.Y. 2006) ........................................................24

*King v City of New York*,
 No. 12-cv-2344, 2014 WL 4954621 (E.D.N.Y. Sept. 30, 2014) ..............................13

*Laurent v. PricewaterhouseCoopers LLP*,
 945 F.3d 739 (2d Cir. 2019)...........................................................17

*Martin v. Caterpillar, Inc.*,
 No. 07-cv-1009, 2010 WL 3210448 (C.D. Ill. Aug. 12, 2010) .........................24

*Mogollan v. La Abundancia Bakery & Rest., Inc.*,
 No. 18-cv-3203, 2021 WL 1226923 (S.D.N.Y. Mar. 31, 2021)..........................13

*Spann v. AOL Time Warner, Inc.*,
 219 F.R.D. 307 (S.D.N.Y. 2003) ................................................3, 23, 25

*Tagliaferri v. United States*,
 No. 17-cv-3026-RA, 2019 WL 498361 (S.D.N.Y. Feb. 8, 2019)........................13

*Thorne v. U.S. Bancorp*,
 No. 18-cv-3405, 2021 WL 1977126 (D. Minn. May 18, 2021) .....................2, 13, 19

*Torres v. Am. Airlines, Inc.*,
 No. 18-cv-983, 2020 WL 3485580 (N.D. Tex. May 22, 2020).................... passim

*Torres v. Bellevue S. Assocs. L.P.*,
 No. 16-cv-2362-RA, 2020 WL 3377797 (S.D.N.Y. June 18, 2020) ....................13

*TransUnion LLC v. Ramirez*,
 141 S. Ct. 2190 (2021)..............................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011).........................................................1, 2, 14, 15

*Wenig v. Messerli & Kramer, P.A.*,
 No. 11-cv-3547, 2013 WL 1176062 (D. Minn. Mar. 21, 2013) ......................20

**STATUTES**

28 U.S.C. § 636(b)(1)(C) ...............................................................13

ERISA § 205(d), 29 U.S.C. § 1055(d)............................................. passim

ERISA § 205(d)(1)(B), 29 U.S.C. § 1055(d)(1)(B)......................................5

IRC § 417(e), 26 U.S.C. § 417(e) ......................................................8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ................................................................................................................ passim

Richard A. Booth, *Class Conflict in Securities Fraud Litigation,* U. Pa. J. Bus. L.
    701, 745 (2012) ................................................................................................................20

## PRELIMINARY STATEMENT

On March 17, 2023, Magistrate Judge Wang issued a Report and Recommendation (the "R&R") to grant Plaintiffs' Motion for Class Certification and certify two subclasses:  one comprised of 464 class members who signed a release of claims; and the other comprised of the remaining 1,360 class members who did not sign a release.  The class members are all participants in the "Traditional Formula" of the Metropolitan Life Retirement Plan for United States Employees (the "Plan") who elected to receive their retirement benefits in the form of a joint and survivor annuity ("JSA").  The three Named Plaintiffs representing these class members contend that, due to the assumptions that the Plan uses to calculate their retirement benefits, their JSA is worth less than the actuarial equivalent of the single life annuity benefit ("SLA") that was available to them as an option under the Plan, in violation of ERISA § 205(d), 29 U.S.C. § 1055(d).  A Section 205(d) claim is inherently individualized because it requires comparing the value of each participant's JSA to the value of that participant's SLA.  In moving for class certification, Plaintiffs contend that they have developed a methodology that allows the Court to resolve all class members' individualized Section 205(d) claims in one fell swoop.

Defendants object to the R&R on three principal grounds.  First, Magistrate Judge Wang incorrectly concluded that she need not resolve at the class certification stage Defendants' challenge to the viability of the methodology Plaintiffs used to establish their Section 205(d) claim because that dispute allegedly "goes to the heart of the merits of this case" and the damages phase of the case.  (ECF No. 161 at 15.)  Magistrate Judge Wang's conclusion cannot be reconciled with the Supreme Court's rulings in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) and *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), which require courts at the certification stage to scrutinize and resolve disputes over expert reports and methodologies that

form the basis for satisfying the class certification criteria. "Frequently, that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's claim." *Dukes*, 564 U.S. at 351. Consistent with these Supreme Court rulings, the only two district court decisions to address class certification of similar "actuarial assumption" claims denied certification motions because plaintiffs' proposed methodologies (1) ran afoul of the governing plan's design; and/or (2) gave rise to intra-class conflicts that defeated class treatment: *Thorne v. U.S. Bancorp*, No. 18-cv-3405, 2021 WL 1977126 (D. Minn. May 18, 2021); *Torres v. Am. Airlines, Inc.*, No. 18-cv-983, 2020 WL 3485580 (N.D. Tex. May 22, 2020).[1] Magistrate Judge Wang did not address these decisions in her R&R even though Defendants relied on them in opposing certification.

As in *Thorne* and *Torres*, Plaintiffs' ability to satisfy the class certification criteria is wholly dependent on the viability of their expert's methodology. Without it, the Court would be required to resolve hundreds of individualized Section 205(d) claims. The fact that the viability of Plaintiffs' methodology overlaps with the merits and damages phases of the case does not justify certifying a class without determining its sustainability. And had Magistrate Judge Wang considered the issue, she should have concluded, as in *Torres* and *Thorne*, that Plaintiffs' methodology is legally unsustainable because it is in direct conflict with the Plan's design and ERISA and gives rise to intra-class conflicts.

Second, Defendants object to the R&R because Magistrate Judge Wang failed to consider that the class improperly excludes Plan participants who have claims for relief under Plaintiffs' theory. Plaintiffs defined the class to exclude participants who fare *worse* under their methodology because their inclusion would undermine Plaintiffs' ability to satisfy the class criteria. But in engaging in their line-drawing exercises, Plaintiffs also excluded hundreds of

---

[1] Since the time of the R&R, a third district court has denied class certification in a substantially similar case. *Berube v. Rockwell Automation, Inc.*, No. 20-cv-1783 (E.D. Wis. Apr. 3, 2023), at ECF No. 63.

similarly situated participants who would fare *better* under Plaintiffs' methodology and would thus have a claim for relief under their theory of the case. Proceeding with this litigation as a class action, while excluding hundreds of Plan participants with a direct stake in the outcome, undercuts the purpose of Fed. R. Civ. P. 23 ("Rule 23"), as well as ERISA's conditions for obtaining plan-wide relief.

Finally, Defendants object to the R&R because, by creating a subclass of persons who signed a release, Magistrate Judge Wang overlooked Rule 23(c)(5)'s requirement that, in order for a class to be certified at all, each subclass must meet all of Rule 23's requirements. As Judge Cote explained in *Spann v. AOL Time Warner, Inc*., an analogous case cited by Defendants but not addressed in the R&R, the creation of a subclass of individuals who signed releases is improper where "a fact-specific inquiry is required to determine whether each individual's waiver of ERISA claims was knowing and voluntary." 219 F.R.D. 307, 320 (S.D.N.Y. 2003). That conclusion applies here because the 464 releases were signed by class members at different times and under unique circumstances, thus precluding the Court from deciding the releases' enforceability on a class-wide basis.

For these reasons, this Court should not adopt the R&R and, instead, should deny Plaintiffs' Motion for Class Certification.

## BACKGROUND

The facts pertinent to Plaintiffs' Motion for Class Certification are set out in Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification. (ECF No. 150.) Defendants summarize here only those facts essential to the evaluation of the R&R.

### A.   The Plan

The Plan is a defined benefit pension plan governed by ERISA. (ECF No. 124 (Second Amended Complaint) at ¶¶ 1, 38.) It consists of several distinct parts under which participants'

benefits are calculated according to different formulas.  (*Id.* at ¶¶ 40, 46, 51.)  As discussed below, the putative class members are all participants in what is referred to as the "Traditional Formula."

Under all Plan formulas, participants can elect to receive one of several optional forms of retirement benefits, including an SLA or JSA.  (*See, e.g.*, ECF No. 47-1 (Plan) at § 5.05-A.)  The optional forms are calculated by means of a "conversion" from the starting benefit (referred to in the Plan as the "Accrued Benefit").  (*Id.* at § 1.02.)  The conversion is designed to ensure that each alternative payment form has a present value that is equal to the present value of the Accrued Benefit, notwithstanding that each has a different expected payment stream.  (*Id.*)  The conversion is performed using "factors" that are based on the Plan's actuarial assumptions. (ECF No. 124 at ¶ 2.)  For the "Traditional Formula," the relevant assumptions are an interest rate of 6% per annum and mortality rates in accordance with the 1971 Group Annual Mortality Table for Males, set back one year for participants and five years for beneficiaries.  (ECF No. 47-1 at § 1.02(a).)[2]

Unlike other defined benefit plans, for most participants in the Traditional Formula the Accrued Benefit from which other benefits are calculated is in the form of a certain life annuity ("CLA"), rather than an SLA.  (ECF No. 151-1 (Expert Rebuttal Report of Jack Abraham) at ¶¶ 15, 17.)  A CLA is a single life annuity that guarantees a minimum number of years of annuity payments, even if the participant dies sooner.  (ECF No. 47-2 (Summary Plan Description) at 11.)  The use of a CLA as the starting benefit, rather than an SLA, distinguishes this Plan from other plans in two significant ways.  First, unlike other plans, this Plan does not calculate the

---

[2] A "set-back" is the process of treating participants or beneficiaries as younger than their actual ages, thereby assuming a longer life expectancy than would be assumed with the same mortality table without a set-back.  (ECF No. 151-1 at ¶ 5 n.3.)

SLA by a conversion of the SLA to the JSA.  Instead, both the SLA and JSA are independently

calculated by means of a conversion from the starting CLA benefit.  Second, the impact of using

a mortality assumption that assumes shorter life spans—which is the principal basis for

Plaintiffs' claims (*see* Section B, below)—can have different outcomes when converting to a

JSA from a CLA, rather than from an SLA.  In fact, many participants—including two of the

three Named Plaintiffs—receive a larger JSA with the use of the Plan's mortality assumption

than with an assumption that assumes longer life spans (as Plaintiffs' desire).  (ECF No. 151-1 at

¶¶ 51–53.)

> ## B.   The Class Claim

Plaintiffs are Plan participants who elected to receive their retirement benefits in the form

of a JSA of 50% or greater.[3]  (ECF No. 124 at ¶¶ 13–19.)  They contend that their JSAs were

improperly calculated because the Plan uses unreasonable assumptions—in particular, a

mortality table that assumes unreasonably short life expectancies[4]—to calculate them.  (*See, e.g.*,

*id.* at ¶¶ 4, 6.)  Based on this contention, Plaintiffs assert several statutory claims.  (*See, e.g.*, *id.*

at ¶¶ 108, 112.)  In their Motion for Class Certification (ECF No. 141), however, they rely

exclusively on their claim under ERISA § 205(d), which provides that certain joint and survivor

annuities must be actuarially equivalent to "a single annuity for the life of a participant."[5]  29

U.S.C. § 1055(d)(1)(B); *see* ECF No. 141 at 1.  For this alleged violation, Plaintiffs seek

declaratory and equitable relief and benefits under a reformed Plan that repairs the alleged

---

[3] The percentage refers to the percentage of the participant's annuity that will be received by the participant's beneficiary upon the death of the participant.  (ECF No. 47-2 at 11.)

[4] Although the Second Amended Complaint alleges that the Plan's interest rate assumption also was outdated, it concedes that the Plan's use of this rate tended to increase, rather than decrease, the amount of the JSA.  (ECF No. 124 at ¶¶ 4, 65.)

[5] Although the issue can be addressed at a later date, Defendants contest Plaintiffs' assertion that any JSA between 50% and 100% is protected by ERISA § 205(d).  (*See* ECF No. 150 at 8 n.7.)

Section 205(d) violation.  (*Id.* at 4.)

There are 3,996 Plan participants who elected a JSA of 50% or greater.  (ECF No. 151-1 at ¶ 67.)  In an apparent effort to avoid dissimilarities among class members, Plaintiffs have paired the class down to consist of only 1,824 of these participants who participated in the Plan's Traditional Formula.  (ECF No. 156-1 (Amended Expert Report of Ian Altman) at ¶¶ 1(c), 18.)  As a result, the class now excludes four of the seven Plaintiffs and hundreds of participants who have claims for relief under Plaintiffs' theory of the case.  (*Id.* at ¶ 18; ECF No. 151-1 at ¶ 71.)  As discussed below, the excluded participants are part of larger groups that include other participants who would not have claims under Plaintiffs' theory because, using Plaintiffs' methodology, their JSAs would be less than the JSA they are currently receiving.  In other words, Plaintiffs have purposefully defined their class so that it consists only of participants who would have a claim for relief under their theory of the case, but in doing so they have excluded many participants who share the same claim.

      **C.**    **Plaintiffs' Methodology for Establishing a Common Claim for Relief**

In support of their Motion for Class Certification, Plaintiffs submitted the report of their expert actuary, Ian Altman.  (ECF No. 156-1.)  Altman opined that the Plan's assumptions generate conversion rates that are "unreasonable" and that, as a result, the JSAs chosen by the class members are worth less than the SLAs they could have elected, in violation of ERISA § 205(d).  (*Id.* at ¶ 1.)  To demonstrate that the three Named Plaintiffs, as well as each of the 1,824 class members, share this claim, Altman performed separate calculations for each class member comparing the JSA calculated by the Plan to the value of the JSA arrived at by converting from the SLA to the JSA using a different set of "reasonable" assumptions.  (*Id.* at ¶¶ 15, 18.)  Altman then calculated the "damages" for each class member as the difference between the JSAs awarded to each of them by the Plan and the JSAs recalculated pursuant to his

methodology.  (*Id.* at ¶ 18.)[6]

As Altman acknowledged, his methodology for demonstrating a common class claim departs from the Plan design in two material respects.  First, whereas the Plan provides that both the JSA and SLA are calculated by a conversion from the starting Accrued Benefit, Altman performed a two-step conversion process, wherein he first converted the Accrued Benefit to the SLA and then converted the SLA to the JSA.  (ECF No. 151-2 (Deposition of Ian Altman) at 193:11–25.)  Second, whereas the Plan provides for a single set of assumptions to be used for all benefit calculations, Altman's two-step calculation used two different sets of assumptions: for purposes of step 1 (the calculation of the SLA), he used the Plan's assumptions—the same ones that Plaintiffs allege are "unreasonable"—but for purposes of step 2, Altman converted from the SLA to the JSA using his so-called "reasonable" assumptions.  (*Id.* at 194:4–13.)  As Altman conceded, if the same set of assumptions was used for both steps of his calculation, the JSA and SLA would be actuarially equivalent, and there would thus be no basis for asserting a Section 205(d) claim.  (ECF No. 151-2 at 176:17–177:1.)

## D.    **Defendants' Expert Report**

In opposition to Plaintiffs' Motion for Class Certification, Defendants submitted the report of their expert, Jack Abraham.  (ECF No. 151-1.)  Abraham demonstrated that Altman's methodology for determining who had a claim for relief, and the amount of such relief, was inconsistent with the Plan's design, for the reasons stated above.  (*Id.* at ¶¶ 61–62.)  Abraham also demonstrated that: (1) the putative class would not share a common claim if, in lieu of Altman's methodology, Plaintiffs' claim was properly evaluated in light of the Plan design and the full range of assumptions that Altman considered to be reasonable; and (2) the participants

---

[6] As it turned out, one of the class members did not share this claim because, even under Altman's methodology, his JSA was not worth less than the SLA that he could have elected instead.  (ECF No. 151-1 at ¶ 69.)

who elected a 50% or greater JSA but were excluded from the class consist of both those who *would* and *would not* have a claim for relief under Altman's methodology.

### Lack of Common Claim for Putative Class Members

Abraham demonstrated that, if the Plan's assumptions were simply replaced by Altman's and applied consistently with the Plan's design, 508 of the 1,824 class members would wind up with benefits that were *lower* than the benefits they are presently receiving using the Traditional Formula's assumptions.  (*Id.* at ¶ 45.)

Abraham also considered the impact of replacing the Plan's assumptions with other assumptions (*Id.* at ¶ 88) that Altman himself conceded were reasonable, including the interest rate and mortality assumptions authorized by Internal Revenue Code Section 417(e) for purposes of calculating lump sum benefits (ECF No. 151-2 at 150:19–152:23).  Altman, in fact, substituted one of the interest rates authorized by Section 417(e) for purposes of conducting his analysis.  (ECF No. 156-1 at ¶ 14.)  There are fifteen variations of interest rates and mortality assumptions approved under Section 417(e).  (ECF No. 151-1 at ¶¶ 91–92; ECF No. 151-2 at 170:11–16.)  Depending on which combination is used, some participants in the putative class would no longer have a claim under Altman's methodology, while others would have a claim for greater monetary relief.  (ECF No. 151-1 at ¶¶ 88–96.)  Thus, even assuming that the Plan's assumptions are "unreasonable," the class would have conflicting claims as to which assumptions to substitute.

### Participants Excluded from the Class

Abraham also examined the 2,173 participants who elected a 50% or greater JSA yet were excluded from the class.  (ECF No. 151-1 at ¶¶ 70–71.)  As it turns out, hundreds of those excluded from the proposed class would have a claim under ERISA § 205(d) according to

Altman's methodology.  But other participants who received benefits under the same formula would *not* have a claim under Section 205(d) under Altman's methodology.  (*Id.*)

Abraham's analysis demonstrated that Plaintiffs have been able to maintain the appearance of a coherent class only by excluding groups of participants who do not uniformly share a Section 205(d) claim when using Altman's methodology.  (ECF No. 151-1 at ¶¶ 66–73.) Altman confirmed as much at his deposition when discussing two of the excluded Plaintiffs who are members of the so-called "as of June 2008 group"—*i.e.*, participants who, like the class members, are in the Traditional Formula, but who commenced benefits at some point between 1993 and June 30, 2008.  (ECF No. 151-2 at 114:1–6.)  The benefits for this particular group were calculated using the same assumptions that were used for the class members.  (ECF No. 47-1 at § 1.02(a).)  But because the Accrued Benefit for this group was a 5-year CLA ("5YCLA") rather than a 12-year CLA ("12YCLA"), Altman's methodology generated mixed results for this group.  Altman acknowledged that, while two of the Plaintiffs are entitled to damages under his calculations, there are other participants in this same "as of June 2008 group" who have no claim for relief under his methodology because the JSAs they received are larger than the benefits he calculated using his "reasonable" assumptions.  (ECF No. 151-2 at 124:1–23.)

E.     **Releases Signed By Plaintiffs and Class Members**

Of the 1,824 putative class members, 464 signed releases as a condition to receiving benefits under MetLife's (and its affiliates') severance plans when their employment was terminated.  (ECF No. 150 at 9.)  An unknown number of other participants may have signed releases for independent reasons.  (ECF No. 154 (Declaration of April Girolami) at ¶ 8.)  Those who signed releases include two of the three Named Plaintiffs—Brownell and Ross.  Brownell signed a Separation Agreement, Waiver and General Release ("General Release") on August 24, 2017, which includes an expansive release of MetLife, its employee benefit plans, and the

fiduciaries thereof:

> from any and all claims . . . of any and every kind or nature that you ever had, now have, or may have, whether known or unknown, against the Company arising out of any act, omission, transaction, or occurrence, up to and including the date you execute this Agreement, including, but not limited to: (i) any claim arising out of or related to your employment by and affiliation with the Company or the discontinuance thereof; (ii) any claim of . . . any alleged violation of . . . the Employee Retirement Income Security Act of 1974 ("ERISA")[.]"

(ECF No. 152-2 at 1.)  Although the release carves out any "rights or benefits that vested . . . prior to your execution of this Agreement under any employee benefit plans governed by ERISA," the carve out does not extend to "any claim for any enhancement or differential calculation over and above the benefit vested or otherwise payable to you under the standard terms of the . . . [Plan]."  (*Id.*)

Ross signed a General Release on December 14, 2015.  Her release extends to any claim against MetLife, its plans, and their fiduciaries, including any violation of any "benefits law." (ECF No. 154-1 at 1.)  Unlike Brownell, who received certain non-monetary, "bridging" enhancements (*i.e.*, a grant of additional age and service credits toward certain company benefits), Ross received a monetary payment in consideration for her release.  (*Id.* at 1.)  The specific language of the releases signed by other Plaintiffs and class members varies from agreement to agreement.[7]

**F.      Defendants' Opposition to Plaintiffs' Motion for Class Certification**

Plaintiffs moved for class certification on February 21, 2022.  (ECF No. 139.)  In their Opposition to that motion, Defendants argued that certification was improper for three distinct

---

[7] *Compare*, *e.g.*, ECF No. 152-2 at § 1 (Brownell) (releasing all "claims, actions, liability, damages . . . of any and every kind or nature that you ever had, now have, or may have, whether known or unknown") *with* ECF No. 154-3 at § 1 (Trivett) (releasing all "claims, charges, demands, actions, liability . . . of any and every kind or nature, *accrued or unaccrued*") (emphasis added).

reasons. *First*, the releases signed by two of the three class representatives, as well as 462 other class members, defeat typicality, commonality, and adequacy of representation, and preclude certification under Rule 23(b)(2) and (3). (ECF No. 150 at 18–21.) *Second*, Plaintiffs failed to satisfy any of the criteria for class certification because the methodology they relied on to satisfy these criteria (1) is contrary to the Plan's design and ERISA's equitable principles and, as such, legally unsustainable; and (2) generates intra-class conflicts. (*Id.* at 22–25, 27–28.) *Third*, class certification is unwarranted because the putative class excludes groups consisting of participants who share the same claim for relief as the class members but who were excluded from the class because other participants in their group do not share a common claim for relief. (*Id.* at 25–27.)

### G.  **Defendants' Request for Additional Briefing on the Release Issue**

Defendants sought leave to file a sur-reply to address arguments, first made by Plaintiffs in their reply, including that the releases were ineffective as to all class members because they were signed before their claims accrued. (ECF No. 157.) Among other things, Defendants offered to show that approximately 20% of those who signed the releases were sent documentation showing the amount of their optional forms of benefits *before* they signed their separation agreements, thus undermining any argument that their claims accrued after the release.[8] Magistrate Judge Wang denied Defendants' request, stating that she would invite further briefing if she deemed it necessary. (ECF No. 160.)

### H.  **The Report and Recommendation**

On March 17, 2023, Magistrate Judge Wang issued her R&R, recommending that the Court grant Plaintiffs' Motion for Class Certification and certify a class consisting of participants

---

[8] In any event, Defendants would have argued that many of the releases at issue here extend beyond "accrued" claims, and thus would have barred claims based on future calculations. (*See, e.g.*, ECF No. 154-3 at § 1 (extending to claims "accrued and unaccrued")).

who received a benefit:

1)    On or after January 1, 2013;
2)    In the form of a JSA with a survivorship percentage between 50% and 100%;
3)    [That] was calculated entirely using the Traditional Part's formula; and
4)    [That was n]ot calculated under Section 4.02-A or 5.02-A of the Plan as of June 30, 2008.

(ECF No. 161 at 17.)  The R&R also recommended that the Class be divided into two subclasses based on whether the participants signed a release upon their separation from MetLife.  (*Id.*)

Magistrate Judge Wang first concluded that the release issue need not prevent certification because any dissimilarity between the claims of those who did and did not sign releases could be remedied through the certification of two subclasses.  (*Id.* at 12.)  In making this recommendation, Magistrate Judge Wang declined to interpret the releases, but posited, contrary to the sample releases before her, that the enforceability of the releases signed by subclass members was a uniform issue because the releases "contain virtually identical language carving out 'any rights or benefits that vested . . . prior to your execution of this Agreement under any employee benefit plans governed by ERISA.'"  (*Id.* at 12.)

Next, Magistrate Judge Wang characterized Defendants' challenge to Plaintiffs' methodology as being premised on a competing view on the "comparators" that should be used to calculate the JSA, which she concluded was "a matter of damages calculation and resolution of the common factual and legal questions, and not class certification."  (*Id.* at 11–12 n.6, 14–15.)  Explaining her views further, Magistrate Judge Wang stated:

> This dispute . . . goes to the heart of the merits of this case.  It is neither necessary nor appropriate at this point for Plaintiffs to prove that each and every class member suffered damage under Defendants' methodology in order to meet the requirements for standing and class certification.  Plaintiffs have carried their burden because they have shown that under <u>Plaintiffs'</u> methodology, the named plaintiffs have shown some injury in fact . . . .

(*Id.* at 15 (emphasis in original).)

Magistrate Judge Wang made no mention of the two decisions cited by Defendants that denied certification of similar claims, or their rationale that a class could not be certified on the basis of a theory of relief that (1) contradicted the Plan's design and ERISA's requirements; and (2) gave rise to intra-class conflicts. *Thorne*, 2021 WL 1977126; *Torres*, 2020 WL 3485580. Nor did Magistrate Judge Wang address Defendants' arguments that the proposed class improperly excluded a large group of similarly situated participants who belong to groups that also included many participants who shared a claim for relief under Plaintiffs' methodology.

## STANDARD OF REVIEW

When a magistrate judge issues a report and recommendation, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made [therein]." 28 U.S.C. § 636(b)(1)(C). "When a timely and specific objection to a report and recommendation is made, the Court reviews *de novo* the portion of the report and recommendation to which the party objects." *Tagliaferri v. United States*, No. 17-cv-3026-RA, 2019 WL 498361, at *1 (S.D.N.Y. Feb. 8, 2019) (quotation omitted). Where, as here, a report and recommendation fails to consider arguments material to the disposition of the motion in question, courts in this Circuit have applied a *de novo* review and declined to adopt recommendations. *See, e.g.*, *King v City of New York*, No. 12-cv-2344, 2014 WL 4954621, at *7–8 (E.D.N.Y. Sept. 30, 2014) (applying *de novo* review to objection that was advanced in defendant's opposition brief but not considered in report and recommendation); *Torres v. Bellevue S. Assocs. L.P.*, No. 16-cv-2362-RA, 2020 WL 3377797, at *4 (S.D.N.Y. June 18, 2020) (declining to adopt part of report and recommendation that failed to consider defendant's summary judgment motion on procedural grounds); *Mogollan v. La Abundancia Bakery & Rest.*,

*Inc.*, No. 18-cv-3203, 2021 WL 1226923, at *5–6 (S.D.N.Y. Mar. 31, 2021) (declining to adopt report and recommendation that plaintiff's motion for summary judgment be granted where recommendation failed to consider affirmative defenses).

## OBJECTIONS

I.  **MAGISTRATE JUDGE WANG ERRONEOUSLY CONCLUDED THAT SHE COULD CERTIFY THE CLASS WITHOUT RESOLVING FLAWS IN THE METHODOLOGY THAT PLAINTIFFS RELIED ON TO SATISFY RULE 23.**

Magistrate Judge Wang found that if the Court employs "Plaintiffs' methodology," each of Rule 23's criteria will be satisfied.  (ECF No. 161 at 15–16.)  Yet even though Plaintiffs' methodology was critical to the Rule 23 analysis, Magistrate Judge Wang declined to resolve any of Defendants' critiques of that methodology.  Instead, Magistrate Judge Wang deemed questions surrounding Plaintiffs' methodology to concern the merits or damages, not class certification.  (*Id.* at 15.)  Magistrate Judge Wang's refusal to determine Defendants' challenges to Plaintiffs' methodology runs directly counter to the Supreme Court's rulings in *Dukes* and *Comcast*, which emphasized the importance of critically evaluating expert testimony at the class certification stage, even if doing so overlaps with the merits of the plaintiffs' case.  In *Dukes*, while acknowledging that the plaintiffs' expert reports went to the merits of whether plaintiffs could prove a pattern or practice of gender discrimination, the Court rejected them as proof of a common company-wide policy under Rule 23 because they evaluated gender disparities at the regional and national level but did not account for disparities and subjective decision-making at individual stores.  564 U.S. at 352, 356–58.  Subsequently, in *Comcast*, the Supreme Court reversed certification of an antitrust class on the ground that the damages model plaintiffs and their expert offered did not satisfy Rule 23's criteria.  In so ruling, the Court found that the court of appeals erred in refusing "to entertain arguments against respondents' damages model that bore on the propriety of class certification, simply because those arguments would also be

pertinent to the merits determination."  569 U.S. at 34.  *See also In re Initial Public Offerings Sec. Litig.*, 471 F.3d 24, 41–42 (2d Cir. 2006) (disavowing earlier decisions holding that expert opinion could establish Rule 23 requirements if "not fatally flawed" and requiring courts to resolve challenges to expert reports offered to establish, *e.g.*, commonality).[9]

Magistrate Judge Wang's refusal to resolve Defendants' challenges to Plaintiffs' methodology was legal error that infected the entire R&R.  Defendants cited two major flaws in Plaintiffs' methodology, both of which defeat class certification: (1) it is contrary to the Plan's lawful design of having a single set of assumptions and a one-step conversion process to calculate the JSA; and (2) it fails to account for other assumptions that Plaintiffs' expert concedes are reasonable and that would generate different outcomes for different class members.  The R&R incorrectly treats the first challenge as reflecting a competing view on "comparators"—*i.e.*, to which benefit the JSA should be compared—which it alternatively labels as a "merits" or "damages" issue that can be addressed at a later date.  And the R&R does not address the second challenge at all.  Magistrate Judge Wang should not have deferred addressing these challenges to Plaintiffs' methodology because they go directly to the question of whether Plaintiffs can satisfy the criteria for class certification—in particular, the requirements that the Section 205(d) claim be capable of a common resolution for all class members.  *Dukes*, 564 U.S. at 349 (discussing Rule 23 criteria).[10]

---

[9] While Magistrate Judge Wang claimed in a footnote (ECF No. 161 at 3 n.4) to have "considered the expert reports in this case in accordance with *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 299 F. Supp. 3d 430, 471 (S.D.N.Y. 2018)," *In re LIBOR* requires much more than "consideration"; it mandates that "disputes between experts . . . be resolved if necessary to the Rule 23 analysis."  *Id.* at 471 (citing *In re IPO*, 471 F.3d 24, 41–42 (2d Cir. 2006)).

[10] For this same reason, the cases Plaintiffs cited in their reply for the proposition that Defendants' challenges merely raise "damages" issues that can be handled at a later date are misplaced.  (ECF No. 155 at 12.)  In those cases, class members were unified in raising a common claim (*e.g.*, an ERISA or securities violation) and what separated them was the amount of damages they would receive from the wrongdoing.  But here, Plaintiffs' proposed common claim is *grounded* on all class members having financial harm, *i.e.*, a JSA that is less than an SLA.  And all class members have financial harm only if Plaintiffs' methodology, and their chosen set of assumptions, are

Had Magistrate Judge Wang properly scrutinized the methodology deployed by Plaintiffs' expert, the only conclusion she could have reached is that it is unsustainable, and thus that Plaintiffs' Motion for Class Certification must be denied.

### A.      Plaintiffs' Methodology Is Contrary to the Plan's Design and ERISA.

Plaintiffs' methodology is unsustainable primarily because it contravenes the Plan's design and ERISA.  Contrary to Magistrate Judge Wang's characterization of the issue, the dispute between the parties is *not* over "comparators" (ECF No. 161 at 14).  Defendants agree that, for purposes of the ERISA § 205(d) claim, the value of the JSA must be compared to the value of the SLA.  But they challenge the method employed by Plaintiffs' expert to make that comparison—through a two-step process that is not contemplated by the Plan and the use of two different sets of assumptions, one of which is, according to Plaintiffs' own theory, "unreasonable."[11]  For the reasons stated in *Torres*, this methodology cannot serve as a basis for sustaining a class claim for relief.

In *Torres*, 2020 WL 3485580, defendants demonstrated that the substitution of plaintiffs' proposed mortality assumption would leave a group of late retirees with lower benefits than they were enjoying under the plan.  This was because the longer mortality assumption, while beneficial to the calculation of the JSA benefit, was detrimental to the calculation of the adjustment for the period past age 70-1/2.  On the strength of this evidence, the court denied

---

validated.  Otherwise, they have no common claim.

[11] Contrary to the R&R (ECF No. 161 at 14), this issue was *not* already addressed by the Court in its ruling denying the motion to dismiss.  In that ruling, the Court addressed what at the time was a factual dispute as to whether the Plan calculated the JSA by converting from the SLA, as the complaint originally contended, or from the more valuable CLA, which results in many participants receiving a larger JSA using the Plan's assumptions than using Plaintiffs' preferred assumptions.  (ECF No. 112 at 9.)  The Court found that the issue was not material to the question of whether Plaintiffs had a viable claim under Section 205(d), since that claim required a comparison of the JSA to the SLA, regardless of what the starting benefit was.  (ECF No. 112 at 9–10.)  But in so ruling, the Court did not opine on how that comparison should be made—nor could it since Plaintiffs had not at the time disclosed the methodology they now rely on for class certification.

class certification on adequacy grounds under Rule 23(a)(4) and under Rule 23(b) because there were intra-class conflicts, *i.e.*, the relief sought did not benefit the class as a whole.  In so ruling, the court rejected plaintiffs' argument that it could reform the plan to maintain two separate definitions of actuarial equivalence—a new one for calculating optional forms of benefits and the existing one for calculating the adjustment for late retirement—because the plan was specifically designed to use one definition and, thus, the form of reformation plaintiffs advocated would be contrary to ERISA's protection of contractually-entitled benefits.  *Id*. at *12 (citing *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013)).  The court also agreed with defendants that plaintiffs could not have their proverbial "cake and eat it too" by retaining the plan's allegedly "unlawful" assumption for the late retiree calculations, as this would run afoul of "ERISA and traditional equity principles[.]" *Id*. (quoting *CIGNA Corp. v. Amara*, 563 U.S. 421, 443 (2011)).  Both conclusions align with Second Circuit recognizing that (1) reformation is a limited remedy to cure plan terms that "indisputably violate ERISA"; and, relatedly, (2) non-compliant provisions must be replaced with terms that are legal—not terms that are illegal.  *Laurent v. PricewaterhouseCoopers LLP*, 945 F.3d 739, 747 (2d Cir. 2019).[12]

The conclusions reached by the *Torres* court apply here, but in a more pronounced way.  As in *Torres*, the class here includes participants who continued to work past age 70-1/2, and who come out ahead with the use of the Plan's assumptions, as opposed to Altman's.  (ECF No. 151-1 at ¶ 65.)  But in addition, there are hundreds of other class members, including Named

---

[12] In their reply brief, Plaintiffs tried to minimize the force of this argument by noting that they are only seeking reformation for one of their claims, and that *Laurent* permits other forms of equitable relief that would allow their JSAs to be enhanced.  (ECF No. 155 at 15–17.)  *Laurent* makes clear, however, that any enhanced benefit payment must be preceded by an equitable reformation to cure the violation or non-compliant terms.  945 F.3d at 747, 749 (describing reformation as a "'preparatory step' that 'establishes the real contract'") (quoting *Amara*, 563 U.S. at 435–41).  *See also Amara*, 563 U.S. at 441 (holding that misrepresented benefits could not be paid under existing plan terms, but suggesting that reformation to reflect misrepresentation was a potential equitable remedy available under ERISA).  Thus, there is no avoiding the fact that, to obtain the monetary relief Plaintiffs are seeking, they must first reform the Plan to replace the allegedly unreasonable assumptions.

Plaintiffs Ross and Brownell, whose benefit would be higher using the Plan's assumptions, instead of Altman's. The *only* way Plaintiffs' claim under ERISA § 205(d) is certifiable as a class claim is if, instead of reforming the Plan to uniformly replace the "unreasonable" assumptions, the Court endorses Plaintiffs' two-step methodology involving the interchanging use of "reasonable" and "unreasonable" assumptions. (*See* p.7, *supra*.) But, as *Torres* teaches, that methodology is not valid because it would reform the Plan in a manner that is inconsistent with its design. It also would require the Plan to calculate benefits in a manner that Plaintiffs themselves contend is illegal. (*See, e.g.*, ECF No. 124 at ¶¶ 1, 4, 8.) The only viable methodology, therefore, is one that replaces the allegedly unreasonable assumptions with reasonable ones, and then applies them consistently, and in accordance with the Plan design. And that methodology leaves Plaintiffs without a class claim since hundreds of participants would not be entitled to a larger JSA if the Plan's assumptions were replaced in this manner.[13]

**B.    Plaintiffs' Methodology Fails to Consider Other "Reasonable" Assumptions.**

Plaintiffs' methodology is flawed for the additional reason that it manufactures a class-wide claim for relief by focusing only on a single set of "reasonable" assumptions to the exclusion of other assumptions that Plaintiffs concede are reasonable. (ECF No. 150 at 15 n.9.) In *Torres*, the court found plaintiffs to be inadequate representatives on the alternative ground that plaintiffs' expert acknowledged that there was a range of reasonable discount rate assumptions that could be paired with his proposed "reasonable" mortality assumption, some of

---

[13] As explained more fully in Defendants' Opposition Brief, the intra-class conflicts that arise if Plaintiffs' circuitous methodology is rejected defeat adequacy, typicality and commonality, as well as certification under any provision of Rule 23(b). (ECF No. 150 at 22–23, 27–29.) In addition, the claim would fail to satisfy the requirement that the class be "defined in such a way that anyone within it would have [] standing." *Decastro v. City of New York*, No. 16-cv-3850, 2019 WL 4509027, at *4 (S.D.N.Y. Sept. 19, 2019) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)). Although Magistrate Judge Wang noted that the Supreme Court in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) declined to address whether each class member's Article III standing be proven at the class certification stage, class certification should not be granted where, as here, Plaintiffs clearly lack a theory of the case that would establish class standing, even if proven.

which disadvantaged some class members, while advantaging others, and thus creating intra-class conflicts.  2020 WL 3485580, at *12–13.

This same conclusion was reached in *Thorne*, 2021 WL 1977126, which the R&R also did not consider.  In that case, plaintiffs sought certification of a class that claimed that their early retirement benefits were not the actuarial equivalent of their age-65 benefit because of faulty assumptions used to reflect the early commencement of the benefit.  *Id*. at *1.  In support of their claim, plaintiffs' expert offered up a series of models that he claimed were based on reasonable assumptions, although no one model resulted in higher benefits for all class members and, for some class members, some of the models resulted in lower benefits.  *Id*. at *2.  The court denied the motion for class certification, ruling that the class failed to meet each of Rule 23(a)'s requirements, as well as those of Rule 23(b)(1) and (2), because plaintiffs' proposed methodology and concomitant relief were "unworkable," in that no model resulted in higher benefits for all class members and "would harm some class members."  *Id*.  Notably, the court found these intra-class conflicts impeded certification notwithstanding the fact that, according to plaintiffs, "ERISA's anti-cutback rule would prevent any class member's benefits from being reduced as a result of applying one of [plaintiffs'] models[.]"  *Id*. at *2.

Similarly, here, there is no dispute that there are several "reasonable" assumptions that could substitute for the Plan's allegedly unreasonable assumptions and that different assumptions would help or hurt different class members—with some assumptions leaving some members without a claim at all.  (ECF No. 151-2 at 150:19–152:23, 171:20–172:6; ECF No. 156-1 at ¶ 14; ECF No. 151-1 at ¶¶ 95, 100, 119.)  Upon a finding of liability, therefore, the Court would be required to resolve competing arguments among class members as to which "reasonable" assumptions to choose.  Thus, as in *Torres* and *Thorne*, Plaintiffs' methodology gives rise to an

inherent conflict among the class members that defeats certification.

## II.   MAGISTRATE JUDGE WANG FAILED TO CONSIDER THAT THE CLASS WAS IMPROPERLY GERRYMANDERED TO EXCLUDE HUNDREDS OF <u>AFFECTED PARTICIPANTS.</u>

Defendants further object to the R&R on the grounds that it failed to address Defendants'
challenge to certification due to the proposed class's exclusion of participants whose JSA was
calculated using assumptions that Plaintiffs allege are unreasonable and who also have a claim
under Plaintiffs' theory of relief.  (ECF No. 150 at 25–26 (discussing, *inter alia*, *Wenig v.
Messerli & Kramer, P.A.*, No. 11-cv-3547, 2013 WL 1176062 (D. Minn. Mar. 21, 2013)).)  The
fact that previously named plaintiffs Batey and McAlister, who are members of the "as of June
2008" group, were removed as class representatives and are now pursuing their claims in an
individual capacity proves this point.[14]  The only conceivable reason why Plaintiffs excluded the
"as of June 2008" group is because it also comprises participants who would *not* be entitled to
relief under their methodology.  But, as Defendants explained in their Opposition Brief, leaving
these participants to pursue their rights individually undercuts Rule 23's goal of preventing
seriatim lawsuits and the possibility of inconsistent rulings.  (ECF No. 150 at 25–27) (citing
*Fariasantos v. Rosenberg & Assocs., LLC*, 303 F.R.D. 272, 277–78 (E.D. Va. 2014); *Burke v.
Loc. 710 Pension Fund*, No. 98-cv-3723, 2000 WL 336518, at *6 (N.D. Ill. Mar. 28, 2000)).  *See
also* Richard A. Booth, *Class Conflict in Securities Fraud Litigation*, 14 U. Pa. J. Bus. L. 701,
745 (2012) ("At some point, efforts to gerrymander the definition of the class must run into due
process limits . . . .  It would seem to follow that the named plaintiff may not ignore the interests
of potential class members by the simple expedient of excluding them from the class.").

---

[14] For this reason, Plaintiffs' contention that the "as of June 2008" benefit was subsidized for married participants (ECF No. 155 at 14) is beside the point.  Notwithstanding the subsidization, it remains the case that many participants from this group who elected a JSA of 50% or greater have a claim for relief under Plaintiffs' methodology.  (*See* p.9, *supra*.)

The Second Circuit has made clear that participants, like the Named Plaintiffs here, who purport to seek plan-wide relief must establish that they represent the interests of *all* participants. *See Coan v. Kaufman*, 457 F.3d 250, 259–61 (2d Cir. 2006) (dismissing lawsuit seeking plan-wide relief where individual plaintiff failed to put in place "procedural safeguards" to ensure she represented the interests of all impacted participants and that litigation fully resolved the dispute in question); *see also Cooper v. Ruane Cunniff & Goldfarb Inc*., 990 F.3d 173, 188 (2d Cir. 2021) (reiterating its holding in *Coan* and its requirement of procedural safeguards); *Fish v. Greatbanc Trust Co.*, 667 F. Supp. 2d 949, 952 (N.D. Ill. 2009) (relying on *Coan* and denying motion to proceed with ERISA representative action, reasoning that the action "*must* be structured in a manner that will bind *all* Plan participants to the holdings ultimately reached by this Court") (emphasis in original). As Defendants argued—but the R&R does not address—Plaintiffs here brought a complaint seeking plan-wide relief, but the class they purport to represent omits, and thus does not protect the interests of, thousands of participants who would be affected by the outcome of the lawsuit, many of whom would in fact have a claim for relief if Altman's methodology were endorsed. (ECF No. 150 at 25–27.)

Although the R&R provided no indication for why these arguments were rejected—if even considered—Magistrate Judge Wang may have been persuaded by Plaintiffs' reply brief, which contended that their gerrymandering of the class was warranted because: (1) different parts of the Plan use different formulas for calculating the JSA, not all of which violate ERISA; and, in any event, (2) it is not uncommon for courts to certify classes consisting of only those plan participants who have suffered a loss from an alleged ERISA violation. (ECF No. 155 at 19.) The first argument is factually incorrect, at least as to members of the "as of June 2008" group, because their benefits are calculated using the same assumptions Plaintiffs have

21

contended are unreasonable.  Plaintiffs' second argument ignores the fact that, since many of the excluded participants have a claim for relief under Plaintiffs' theory of their case and methodology, a ruling on the class's claim will necessarily affect their right to relief.  If, on the other hand, the Court were to issue a ruling that was not binding as to them because they were excluded from the class, then Defendants would be at risk of relitigating the same issue with potentially inconsistent outcomes—thus undermining the purpose of class certification and principles of ERISA that require plans to be administered pursuant to a single set of plan rules.

In short, by gerrymandering a class that consists of some—but not all—participants with a stake in the outcome of this litigation, Plaintiffs present the Court with the untenable prospect of adjudicating a claim for Plan-wide relief without accounting for the interests of all Plan participants.  Such a result contravenes the principles underlying both Rule 23 and ERISA.

## III.   MAGISTRATE JUDGE WANG'S RECOMMENDATION TO CERTIFY A SUBCLASS OF PERSONS WHO SIGNED RELEASES DOES NOT CURE PLAINTIFFS' INABILITY TO SATISFY THE RULE 23 CRITERIA AS TO THE ENTIRE CLASS.

Even if the Court were to agree with the R&R and allow Plaintiffs to proceed with their legally flawed methodology (which it should not), the R&R is still objectionable—and certification should be denied—because the releases signed by Named Plaintiffs Ross and Brownell and 462 other class members defeat adequacy, typicality, and commonality and also preclude certification under any of Rule 23(b)'s provisions.  Magistrate Judge Wang's recommendation of a subclass of persons who signed releases does not cure these deficiencies because subclasses must separately meet Rule 23's requirements.

Rule 23(c)(5) permits courts to divide a class into subclasses, but, if so, then each subclass must independently meet the requirements of Rules 23(a) and (b), as well as Article III standing.  *Hoeffner v. D'Amato*, No. 09-cv-3160, 2019 WL 1428367, at *5, 10–11 (E.D.N.Y.

Mar. 29, 2019) (declining to certify subclass of welfare plan participants proposed by plaintiffs that included participants who had no standing to advance ERISA cause of action).  Here, the subclass recommended by Magistrate Judge Wang should not be certified because Named Plaintiffs Brownell and Ross's claims are not typical of the subclass, and because the subclass does not share common claims and defenses.[15]  As Defendants argued in challenging the larger class, the determination of whether a release signed by a named plaintiff is enforceable entails a fact-specific, individualized investigation into whether the release was "knowing and voluntary," which threatens to become the focus of the litigation to the detriment of the subclass members and the pursuit of their claims.  (ECF No. 150 at 18–19) (citing cases).  The fact that the 462 other subclass members also signed individual releases creates further obstacles to class certification since the "fact-specific inquiry into the circumstances of the execution of each individual's release . . . presents an insurmountable barrier to class-wide adjudication of these claims."  *Spann*, 219 F.R.D. at 319.  *See also Bond v. Marriott Int'l, Inc.*, 296 F.R.D. 403, 408 (D. Md. 2014) (concluding that individual releases could require court "to conduct an individualized analysis of the viability of claims for each class member, which defeats commonality for this class").

The R&R cites no authority supporting the creation of a subclass under the circumstances of this case.  The one case cited by Plaintiff in which a court created a subclass of participants who signed an ERISA release, rather than denying certification outright, is plainly distinguishable.  (ECF No. 155 at 20.)  In *In re J.P. Morgan Stable Value Fund ERISA Litig.*, No.

---

[15] Ross and Brownell also would lack Article III standing to serve as representatives of the subclass if, for the reasons previously stated, the Court concludes that Altman's methodology is legally unsustainable, since as the R&R acknowledges (ECF No. 161 at 11 n.6, 15), they have no claim for relief without it.  (*See* ECF No. 150 at 21 (citing *Smith v. Rockwell Automation, Inc.*, No. 19-cv-505, 2020 WL 7714663, at *4 (E.D. Wis. Dec. 29, 2020) (explaining that plaintiff would lack standing to pursue Section 205(d) claim because he would receive a lower benefit under his proposed assumptions)).

12-cv-2548, 2017 WL 1273963, at *10–11 (S.D.N.Y. Mar. 31, 2017), all members of the

subclass had entered into one ERISA release at the same time, *i.e.*, when they agreed to settle a

prior ERISA class action complaining of excessive fees associated with their plan investments.

*See In re J.P. Morgan Stable Value Fund ERISA Litig.*, 12-cv-2548 (S.D.N.Y. May 27, 2015), at

ECF No. 240-6.  Additionally, there was no issue surrounding the knowingness or voluntariness

of that release because it was approved by a prior court following a class action fairness hearing.

*See Martin v. Caterpillar, Inc*., No. 07-cv-1009, 2010 WL 3210448, at *1 (C.D. Ill. Aug. 12,

2010).[16]  Here, there is no single release that binds all subclass members and there are

individualized issues surrounding the enforceability of the 464 ERISA releases that bar

certification under both Rule 23(a) and (b).

      Magistrate Judge Wang's impression that the release issue could be uniformly decided

for all members of the subclass based on arguments made about the releases' scope—as opposed

to their enforceability under the "knowing and voluntary" standard—was mistaken because even

a determination of the scope of the releases involves individual inquiries.  For example,

Magistrate Judge Wang's premise that the releases contain "virtually identical" carveouts for

vested Plan benefits cannot be reconciled with the fact that some releases (like Brownell's)

expressly narrow the carveout by specifying that it does not reach claims for benefits

enhancements or recalculation of benefits.  (*See* pp. 9–10, *supra.*)[17]  Additionally, contrary to

---

[16] That also was the case in *In re Currency Conversion Fee Antitrust Litigation*, 264 F.R.D. 100, 116 (S.D.N.Y 2010), which Plaintiffs cite in their reply (ECF No. 155 at 2), where some class members were bound by a release in a prior class action settlement.  The other cases Plaintiffs cite where courts certified a class notwithstanding releases signed by class members are inapposite for reasons Defendants discussed in their Opposition Brief, which the R&R failed to address.  For example, *Finnan v. L.F. Rothschild & Co*., 726 F. Supp. 460 (S.D.N.Y. 1989) challenged a plant closing under the WARN act and similarly involved releases entered into at the same time and upon a common triggering event.  (ECF No. 155 at 9.)  *In re Polaroid ERISA Litig*., 240 F.R.D. 65 (S.D.N.Y. 2006) involved claims brought on behalf of the plan to recover plan losses under ERISA § 502(a)(2), which some courts have concluded is a claim that cannot be released by an individual participant.  (ECF No. 155 at 2.)

[17] The only way that a court could reach a uniform ruling with respect to the scope of the releases would be if it were to embrace Defendants' argument that *none* of the carveouts apply to claims seeking additional benefits under a

what Magistrate Judge Wang surmised (ECF No. 161 at 13 n.8), the releases were not all executed before class members' claims "accrued."  Had Defendants been permitted to file their sur-reply, they would have demonstrated that many of the releasors already had been advised of their benefit options at the time they executed their releases.  The R&R overlooks these points.

In short, the subclass recommended by Magistrate Judge Wang does not meet Rule 23's criteria and, thus, Plaintiffs' Motion for Class Certification should have been denied in its entirety.[18] *See Spann*, 219 F.R.D. at 319-20 (concluding that proposed subclasses of releasors would not cure lack of typicality or obviate individual inquiries and denying certification of class outright).

## CONCLUSION

For the reasons stated herein, this Court should not adopt the R&R and should, instead, deny Plaintiffs' Motion for Class Certification.

Respectfully submitted,

PROSKAUER ROSE LLP

By: */s/ Russell L. Hirschhorn*
Russell L. Hirschhorn
Myron D. Rumeld
Deidre A. Grossman
Eleven Times Square
New York, New York 10036
212.969.3000
mrumeld@proskauer.com
rhirschhorn@proskauer.com
dagrossman@proskauer.com
*Counsel for Defendants*

---

reformed Plan.  (ECF No. 150 at 19) (citing *Stanley v. George Wash. Univ.*, 394 F. Supp. 3d 97, 105, 107–110 (D.D.C. 2019) (holding that carve-out in release for "vested benefits under employee benefit plans" did not include claim for "lost benefits resulting from breach"), *aff'd per curiam*, 801 F. App'x. 792 (D.C. Cir. 2020)).  But then there would remain individualized issues as to whether the releases were knowing and voluntary.

[18] The Court could not certify a class consisting of only those participants who did not sign a release because this would give rise to the same issues identified in Section II (above):  the class would be proceeding with a claim for Plan-wide relief without the involvement of numerous participants who have a stake in the outcome.