**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CATHERINE MCALISTER, PAULINE WALKER, LEE KERNAN, EMILY ROSS, SCOTT BATEY, MARY TRIVETT, and JOAN BROWNELL, on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>   vs.<br><br>METROPOLITAN LIFE INSURANCE COMPANY, METLIFE GROUP, INC., and THE METROPOLITAN LIFE INSURANCE COMPANY EMPLOYEE BENEFITS COMMITTEE,<br><br>              Defendants. | Civil Action No. 18-cv-11229 |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'**
**OBJECTION TO REPORT AND RECOMMENDATION**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARD ....................................................................................................... 2

ARGUMENT .................................................................................................................... 2

    I.     MetLife's Challenges to Plaintiffs' Loss Methodology Are Meritless.................... 2

        A.    Plaintiffs Methodology Is Correct Under ERISA and the Plan ................. 2

        B.    The Court Does Not Have to Resolve the Parties' Methodological
             Disputes to Certify the Class.......................................................................... 4

        C.    Defendants' Reformation Argument Fails.................................................... 6

        D.    MetLife's Attempt to Create an Inter-Class Conflict Fails........................ 10

    II.    THE CLASS THAT MAGISTRATE JUDGE WANG CERTIFIED
         WAS PROPER........................................................................................................ 11

    III.   THE RELEASES DO NOT BAR CERTIFICATION OF THE CLASS
         AS A WHOLE OR THE SUBCLASSES ............................................................ 15

        A.    The Scope of the Releases is Common to the Subclass............................ 19

             i.    The Subclass-Wide Claims Were Carved Out of the Releases..... 19

             ii.   The Releases Were Signed Before Class Member Claims
                 Accrued. ........................................................................................... 21

             iii.  Whether the Release was Voluntarily Signed Is a Class-wide
                 Issue. ................................................................................................. 24

CONCLUSION................................................................................................................. 25

TABLE OF AUTHORITIES

**Cases**

*Amara v. CIGNA Corp.*,
  534 F.Supp.2d 288 (D. Conn. 2008)........................................................ 19, 20

*Amara v. CIGNA Corp.*,
  559 F.Supp.2d 192 (D. Conn. 2008)............................................................. 20

*Amara v. CIGNA Corp.*,
  775 F.3d 510 (2d Cir. 2014)................................................................. 5, 7, 9

*Amara v. CIGNA Corp.*,
  925 F.Supp.2d 242 (D. Conn. 2012)............................................................. 20

*Bd. of Trustees of Equity League Pension Trust Fund v. Royce*,
  238 F.3d 177 (2d Cir. 2001)...................................................................... 19

*Boggs v. Boggs*,
  520 U.S. 833 (1997).............................................................................. 4

*Bond v. Marriott*,
  296 F.R.D.403 (D.Md. 2014)...................................................................... 25

*Burke v. Local 710 Pension Fund*,
  No. 98-cv-336518, 2000 WL 336518 (N.D. Ill. Mar. 28, 2000) ..................................... 14

*Carey v. IBEW Local 363 Pension Plan*,
  201 F.3d 44 (2d Cir. 1999)....................................................................... 21

*Caufield v. Colgate-Palmolive Co.*,
  No. 16-civ-4170, 2017 WL 3206339 (S.D.N.Y. 2017) .......................................... 13, 17

*CIGNA v. Amara*,
  563 U.S. 421 (2011)........................................................................... 7, 20

*Coan v. Kaufmann*,
  457 F.3d 250 (2d Cir. 2006)...................................................................... 15

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)............................................................................. 4, 5

*Cooper v. Ruane Cunniff & Goldfarb, Inc.*,
  990 F.3d 173 (2d Cir. 2021)...................................................................... 15

*Cruz v. Raytheon Company*,
  435 F.Supp.3d 350 (D. Mass. 2020) ............................................................. 2, 3

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d. Cir. 2006)......................................................................................13

*Falberg v. Goldman Sachs Group, Inc.*,
    19-civ-9910, 2022 WL 538146 (S.D.N.Y. Feb. 14, 2022) .....................................5, 11, 14

*Fariastantos v. Rosenberg & Assoc. LLC*,
    303 F.R.D. 272 (E.D. Va. 2014) ...............................................................................14

*Fikes Wholesale Inc. v. HSBC Bank USA N.A.*,
    62 F.4th 704 (2d Cir. 2023) ...........................................................................12, 14, 15

*Finnan v. L.F. Rothschild & Co., Inc.*,
    726 F.Supp. 460 (S.D.N.Y. 1989) .............................................................................18

*Fish v. Greatbanc Trust Co.*,
    667 F.Supp.2d 949 (N.D. Ill. 2009) ...........................................................................15

*Frommert v. Becker*,
    153 F.Supp.3d 599 (W.D.N.Y. 2016) .....................................................................7, 8, 9

*Frommert v. Conkright*,
    913 F.3d 101 (2d Cir. 2019)........................................................................................7

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 176 (2d Cir. 1990).......................................................................................18

*Haley v. Teachers Ins. and Annuity Ass'n of Amer.*,
    54 F.4thd 115 (2d Cir. 2022) .....................................................................................17

*Hanks v. Lincoln Life & Annuity Co. of N.Y.*,
    330 F.R.D. 374 (S.D.N.Y. 2019) ...............................................................................17

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*,
    571 U.S. 99 (2013)..............................................................................................21, 24

*Hoeffner v. D'Amato*,
    No. 09-cv-3160, 2019 WL 1428367 (E.D.N.Y. Mar. 29, 2019).....................................25

*In re Currency Conversion Fee Antitrust Litig.*,
    264 F.R.D. 100 (S.D.N.Y. 2010) ...............................................................................17

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
    No. 12-cv-2548, 2017 WL 1273963 (S.D.N.Y. Mar. 31, 2017)..........................14, 17, 24

*In re Petrobras Sec.*,
    862 F.3d 250 (2d Cir. 2017)......................................................................................12

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2005) ............................................................... 18

*In re U.S. Foodservice Inc. Pricing Litig.*,
729 F.3d 108 (2d Cir. 2013) ...................................................................... 4

*Johnson v. Nextel Comm. Inc.*,
780 F.3d 128 (2d Cir. 2015) ................................................................ 4, 18

*Kendall v. Empls. Ret. Plan of Avon Products*,
561 F.3d 112 (2d Cir. 2009) ..................................................................... 22

*Kifafi v. Hilton Hotels Retirement Plan*,
736 F.Supp.2d 64 (D.D.C. 2010) ............................................................. 10

*Korn v. Franchard Corp.*,
456 F.2d 1206 (2d Cir. 1972) .................................................................. 18

*Kurtz v. Costco Wholesale Corp.*,
818 Fed.Appx. 57 (2d Cir. 2020) ...................................................... 4, 5, 6

*Lapin v. Goldman Sachs & Co.*,
254 F.R.D. 168 (S.D.N.Y. 2008) ............................................................. 18

*Laurent v. PricewaterhouseCoopers LLP*,
945 F.3d 739 (2d Cir. 2019) ............................................................ 7, 8, 19

*Laurent v. PricewaterhouseCoopers*,
No. 06-cv-2280, 2014 WL 2893303 (S.D.N.Y. June 26, 2014) ............ 7, 11, 13

*Masten v. Metropolitan Life Ins. Co.*,
543 F.Supp.3d 25 (S.D.N.Y. 2021) ........................................................... 3

*Minto v. Decker*,
108 F. Supp. 3d 189 (S.D.N.Y. 2015) ........................................................ 2

*Mogollan v. La Abundancia Bakery & Rest., Inc.*,
No. 18-cv-3203, 2021 WL 1226923 (S.D.N.Y. Mar. 31, 2021) ..................... 16

*Novella v. Westchester Cnty.*,
661 F.3d 128 (2d Cir. 2011) ............................................................... 21, 22

*Osberg v. Foot Locker, Inc.*,
862 F.3d 198 (2d Cir. 2017) ...................................................................... 7

*Osberg v. Foot Locker, Inc.*,
No. 07-cv-1358, 2014 WL 5796686 (S.D.N.Y. Sept. 24, 2014) ..................... 24

*Perez v. Isabella Geriatric Center, Inc.*,
  No. 13-cv-7453, 2016 WL 5719802 (S.D.N.Y. Sept. 30, 2016) ................................ 6, 7, 9

*Rothstein v. Am. Int'l Grp.*,
  837 F.3d 195 (2d Cir. 2016) ..................................................................................... 14

*Ruppert v. Alliant Energy Cash Balance Pension Plan*,
  255 F.R.D. 628 (W.D. Wis. 2009) ........................................................................ 20, 21

*Sahhriar v. Smith & Wollensky Rest. Grp., Inc.*,
  659 F.3d 234 (2d Cir. 2011) ..................................................................................... 17

*Set Capital LLC v. Credit Suisse Group AG*,
  18-civ-2268, 2023 WL 2535175 (S.D.N.Y. Mar. 16, 2023) ......................................... 5

*Spann v. AOL Time Warner, Inc.*,
  219 F.R.D. 307 (S.D.N.Y. 2003) ......................................................................... 24, 25

*Stanley v. George Washington Univ.*,
  394 F.Supp.3d 97 (D.C. 2019) ................................................................................. 22

*Thole v. U. S. Bank, N.A.*
  140 S. Ct. 1615 (2020) ................................................................................. 21, 22, 24

*Thorne v. U.S. Bancorp*,
  No. 18-cv-3405, 2021 WL 1977126 (D. Minn. May 18, 2021) ..................................... 11

*Torres v. American Airlines, Inc.*,
  2020 WL 3485580 (E.D. Tex. May 22, 2020) ............................................... 8, 9, 10, 11

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ............................................................................................ 24

*Urlaub v. CITGO Petroleum Corp.*,
  No. 21-cv-4133, 2022 WL 523129 (N.D. Ill. Feb. 22, 2022) ........................................ 3

*Varity v. Howe*,
  516 U.S. 489 (1996) .................................................................................................. 8

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................................. 4, 5

*Wenig v. Messerli & Kramer P.A.*,
  No. 11-cv-3547, 2013 WL 1176062 (D. Minn. Mar. 21, 2013) ..................................... 14

**Statutes**

28 U.S.C. § 636(b)(1)(C) ................................................................................................... 2

ERISA § 204(g)(2), 29 U.S.C. § 1054(g)(2) ................................................................. 9

ERISA § 205, 29 U.S.C. § 1055 ............................................................................... 1, 19, 22

ERISA § 205(a), 29 U.S.C. § 1055(a) ....................................................................... 19

ERISA § 205(d), 29 U.S.C. § 1055(d) ...................................................................... *passim*

ERISA § 205(h)(2), 29 U.S.C. § 1055(h)(2) ............................................................ 22

ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1) ............................................................ 21

ERISA § 409, 29 U.S.C. § 1109 ............................................................................... 15

ERISA § 410, 29 U.S.C. § 1110 ............................................................................... 21

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) ............................................................ 6, 15

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) ............................................................ *passim*

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................... 1, 5, 16

Fed. R. Civ. P. 23(a) ................................................................................................ 16, 17, 19

Fed. R. Civ. P. 23(b)(1) ........................................................................................... 15, 16, 17

Fed. R. Civ. P. 23(b)(2) ........................................................................................... 15, 16, 17

Fed. R. Civ. P. 23(b)(3) ........................................................................................... 14, 15, 17, 18, 25

Fed. R. Civ. P. 23(c)(5) ........................................................................................... 15

Fed. R. Civ. P. 72(b)(3) ........................................................................................... 2

**Regulations**

26 C.F.R. § 1.401(a)-11(b)(2) .................................................................................. 2

26 C.F.R. § 1.401(a)-20 ........................................................................................... 2, 9, 19

26 C.F.R. § 1.411(d)-3(b) ......................................................................................... 9

26 C.F.R. § 1.411(g)(15) .......................................................................................... 9

26 C.F.R. § 1.417(e)-1(d)(4) .................................................................................... 10

Plaintiffs submit this Response to Defendants' Objections (ECF 165) to Magistrate Judge Wang's Report and Recommendation ("R&R").

## INTRODUCTION

Defendants' three objections are recycled arguments from their Opposition to Plaintiffs' Motion for Class Certification that Magistrate Judge Wang correctly rejected.  Defendants base their objection about Plaintiffs' methodology on a false description of Plaintiffs' expert's methodology and seeks to distract attention from their expert's failure to use the methodology that ERISA requires.  Defendants' arguments, while meritless, concern whether Plaintiffs will prove their claims on the merits, which this Court does not need to decide to certify the Class under Rule 23.  Most importantly, Defendants' arguments confirm what Magistrate Judge Wang correctly found was a common issue:  How to measure whether benefits are "actuarially equivalent" under ERISA § 205.

Defendants' objection about the Class's scope is also meritless.  The Class definition is based on the Plan's provisions and the ERISA claims Plaintiffs bring in this case, satisfying Rule 23's requirements under Second Circuit precedent.  Defendants' claim that the Class should be broader, yet they fail to propose any alternative definition, and indeed, oppose certification of *any* Class.  They object to Plaintiffs' narrow proposed Class, hoping it becomes large enough to provide them with another reason to oppose certification.

Defendants' objection that two Plaintiffs and some Class Members signed release agreements fails too.  The releases' plain language makes clear they do not apply to the ERISA claims brought in this case, and Magistrate Judge Wang properly accounted for the releases by certifying a subclass.  Defendants' re-hashed arguments from their previous Opposition Brief have little, if any application, to the subclass that Magistrate Judge Wang correctly certified.

**LEGAL STANDARD**

A district court may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). Where specific objections are made, a court should undertake a *de novo* review. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). "When a party makes only conclusory or general objections," "or simply reiterates the original arguments made below, a court will review the report strictly for clear error." *Minto v. Decker,* 108 F. Supp. 3d 189, 192 (S.D.N.Y. 2015).

**ARGUMENT**

**I.    MetLife's Challenges to Plaintiffs' Loss Methodology Are Meritless.**

     A.    **Plaintiffs Methodology Is Correct Under ERISA and the Plan**

Defendants premise their argument that Plaintiffs used the wrong methodology on the contention that Plaintiffs used a "two-step process." Objection at 16. That is factually wrong.

Plaintiffs claim that Defendants violated ERISA § 205(d), which requires pension plans to provide joint and survivor annuities ("JSAs") to participants which are the "actuarial equivalent of a single annuity ("SLA") for the life of the participant." Defendants acknowledge that "the value of the JSA must be compared to the value of ***the SLA***." Objection at 16 (emphasis added). The JSA/SLA present-value comparison is performed using "the SLA" that a participant was "***offered under the plan***." 26 C.F.R. § 1.401(a)-11(b)(2) (emphasis added).

26 C.F.R. § 1.401(a)-20, Q&A 16 further emphasizes that the comparison is based on the "benefit ***payable under the plan*** . . . .at the same time" (emphasis added); *see also Cruz v. Raytheon Company*, 435 F.Supp.3d 350, 352 (D. Mass. 2020) ("ERISA requires actuarial equivalence between the amount a participant earns under a joint and survivor annuity and the amount the participant would have earned under a single life annuity."). As this Court held when denying the

Motion to Dismiss, actuarial equivalence is a comparison of present values. *Masten v. Metropolitan Life Ins. Co.*, 543 F. Supp. 3d 25, 34 (S.D.N.Y. 2021). The measurement uses the benefit amounts that were "present" when the participant retired. *Cruz*, 435 F. Supp. 3d at 352; *Urlaub v. CITGO Petroleum Corp.*, No. 21-cv-4133, 2022 WL 523129, at * 1 (N.D. Ill. Feb. 22, 2022) (ERISA requires actuarial equivalence between the participant's JSA and SLA the participants could have selected).

Consistent with ERISA's requirements, Plaintiffs' expert, Ian Altman, used the SLA benefit Class Members ***were offered*** under the Plan as reflected in the Plan's records when performing his calculations. Altman Report, ECF 156-1, § 20. For example, for Ross, Altman used the SLA benefit the Plan offered to her listed in Defendants' records ($5,062.01). Altman Report, ECF 156-1, § 16; Altman Reply Report, ECF 156-3, § 17. Altman did not calculate the amount of the SLA he used in his analysis. Altman Reply Report, ECF 156-3, § 17 (describing how he used "***the single life annuities that participants were offered***," values "shown in the Data Sets that Defendants produced.") (emphasis added); and Altman Tran., ECF 151-2, at 131:12-20 (testifying that he used "[t]he single life annuity which is payable to the participant").

Defendants claim Altman used a "two-step" calculation. Objection at 7, 14-16. In what they call "Step 1," Defendants falsely suggest that Altman calculated Class Members' SLAs. Objection at 7. The only support that Defendants offer is a page of Altman's deposition testimony during which Altman was asked how the ***Plan*** calculated the SLA amount. Objection at 7 (citing Altman Tran., ECF 151-2, at 193:11-20). Altman accepted the Plan's calculation, as he must, because that was the SLA offered to participants; he did ***not*** calculate them.

Defendants' expert, in sharp contrast, failed to use the SLA amounts offered under the Plan and instead created new, fake "SLA" amounts and used them to determine if Class Members were

receiving actuarially equivalent JSAs. To illustrate, while the Plan indisputably offered Ross an SLA of $5,062.02, Defendants' expert pretended Ross was offered an SLA of $4,754.81. ECF 151-1, Abraham Report, ¶ 58; Altman Reply Report, ECF 156-3, at ¶ 18.

At bottom, ERISA does not dictate how plans calculate the SLAs. But whatever SLA a plan offers must be actuarially equivalent to the JSA it provides participants, consistent with the goal of ERISA § 205(d)'s actuarial equivalence requirement to protect surviving spouses. *Boggs v. Boggs*, 520 U.S. 833, 843 (1997). That is why the SLA that a plan offers, and not an SLA concocted by an expert, is used.

### B. The Court Does Not Have to Resolve the Parties' Methodological Disputes to Certify the Class.

Defendants erroneously argue that the R&R "runs directly counter" to *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) and *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). Objection at 14-16. A "rigorous analysis" at the class certification stage ensures the "proposed damages methodology is consistent with the classwide theory of liability and capable of measurement on a classwide basis." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 123 n.8 (2d Cir. 2013). While a court's "inquiry may overlap with merits issues," "the proponent of class certification need not show that the common questions will be answered, on the merits, in favor of the class." *Johnson v. Nextel Comm. Inc.*, 780 F.3d 128, 138 (2d Cir. 2015) (citations omitted). While Defendants' expert's methodology is plainly wrong, this Court does not have to resolve disputes between experts at the class certification stage. *Kurtz v. Costco Wholesale Corp.*, 818 F. App'x 57, 61-63 (2d Cir. 2020).

In *Kurtz*, defendants argued that the district court's certification was improper because of a "litany of purported failings" in plaintiffs' expert's methodology. *Id.* at 61-62. While the Second Circuit acknowledged that the expert's model "fails to consider some arguably significant

variables," it found the "end-result" to be "statistically reliable." *Id*. at 62.  *Kurtz* affirmed the

district court's certification of the class, rejecting the defendants' reliance on *Comcast*, stating:

> The fact that [the expert's] model may fail to account for other possible
> sources of a price premium simply means that his model may not ultimately
> prove Plaintiff's claim. But it still serves as common evidence of plaintiffs'
> theory of injury and does not run afoul of *Comcast*….
>
> Instead what Defendants allege is a fatal similarity — an alleged failure of
> proof as to an element of plaintiffs' cause of action . . . . A factfinder may
> ultimately agree.  But if that is the case, the class claims will fail as a unit.

*Id.* at 62.

Defendants did not move the exclude Altmann's opinion under *Daubert*.  Like in *Kurtz*,

Defendants' methodology challenge does not preclude the Court from relying on Altman's

opinions at this stage.  *Id.* at 62; *see also Falberg v. Goldman Sachs Group, Inc.*, 19-civ-9910,

2022 WL 538146 (S.D.N.Y. Feb. 14, 2022) (certifying class, finding that defendants' evidence

concerning the proper measure of damages went "to the merits and are not ripe for adjudication.");

*Set Capital LLC v. Credit Suisse Group AG*, 18-civ-2268, 2023 WL 2535175, * 6 (S.D.N.Y. Mar.

16, 2023) (certifying class and holding that defendant's arguments about plaintiff's expert's

methodology raised "question for the damages stage of this litigation" and did not affect whether

the expert's opinions were admissible to "establish the requirements of Rule 23.");  .

In fact, Defendants' challenges to Altman's methodology confirm there are many common

issues, including whether "ERISA requires that QJSAs and QOSAs be 'actuarially equivalent' to

the SLAs offered to participants when they start receiving benefits."  R&R at 14.  The resolution

of this issue will be the same for all Class Members, "generating common answers apt to drive the

resolution of the litigation."  *Amara v. CIGNA Corp.*, 775 F.3d 510, 524 (2d Cir. 2014) (citing

*Dukes*, 564 U.S. at 350).

Defendants' attempt to distinguish cases like *Falberg* and *Perez v. Isabella Geriatric Center, Inc.*, No. 13-cv-7453, 2016 WL 5719802 (S.D.N.Y. Sept. 30, 2016) makes Plaintiffs' point.  Objection at 15, n. 10.  There is a common question of whether Class Members received actuarially equivalent JSAs based on Plaintiffs' methodology.  Altman Report, ECF 156-1, § 18. The claims of the Class will rise or fall based on the answer to this common question. *Kurtz*, 818 F. App'x at 62 (finding common issues, concluding that while "[a] factfinder may ultimately agree" with defendants' methodology, "if that is the case, then the class claims will fail as a unit.").

## C.   Defendants' Reformation Argument Fails.

Defendants try to pigeonhole Plaintiffs' claims into seeking only reformation and then, in reliance on this erroneous argument, contend that a district court case from Texas bars certification. They are wrong for numerous reasons.

Plaintiffs assert three claims for relief. The First Claim is for declaratory and equitable relief. It seeks a broad range of remedies, including re-calculation, correction, and payment of benefits; an accounting; surcharge; disgorgement of amounts wrongfully withheld and profits earned thereon; a constructive trust; an equitable lien; and an injunction. It does ***not*** seek reformation. Second Amended Complaint ("SAC"), ECF 124, ¶¶ 105-109. The Third Claim is for breach of fiduciary duty to the Plaintiffs and Class Members, and it seeks the same equitable relief as the First Claim under ERISA § 502(a)(3).[1] SAC, ¶¶ 116-127. Only the Second Claim seeks reformation of the Plan. SAC ¶¶ 110-115. Defendants' argument that the only relief Plaintiffs are entitled to seek is reformation ignores their First and Third Claims. Objection at 17 and n.12.

---

[1] As discussed below, the Third Claim is an individual claim on behalf of participants. It does not seek relief on behalf of the Plan under ERISA section 502(a)(2).

Moreover, before a court orders "appropriate equitable relief," it must find an ERISA violation requires "redress."   ERISA § 502(a)(3)(B), 29 U.S.C. § 1132(a)(3)(B). Because the determination of what remedy is "appropriate" is made *after* a district court decides that Defendants have violated ERISA, the Court should reject Defendants' attempt to force the Court to decide now whether reformation is the *only* appropriate remedy. *Amara*, 775 F.3d at 532; *Osberg v. Foot Locker, Inc.*, 862 F.3d 198, 213-15 (2d Cir. 2017). Defendants' related speculation about hypothetical problems that may arise if the court later grants a certain remedy does not defeat class certification. *Laurent v. PricewaterhouseCoopers,* No. 06-cv-2280, 2014 WL 2893303, at * 4 (S.D.N.Y. June 26, 2014) (rejecting argument that the interest rate selected could generate "intra-class conflict" because it was "premature to speculate about a conflict that does not exist."); *see also Perez*, 2016 WL 5719802, at * 5 (granting certification, declining to decide the merits of defendant's argument that "none of its policies are *per se* illegal."). Further, ERISA § 502(a)(3) provides district courts wide authority to craft "appropriate equitable relief. . . .to redress [ERISA] violations." *Laurent v. PricewaterhouseCoopers LLP*, 945 F.3d 739, 745 (2d Cir. 2019). The power "is not cabined by the pleadings or the requests of the parties." *Frommert v. Becker*, 153 F. Supp. 3d 599 (W.D.N.Y. 2016), *aff'd,* 913 F.3d 101 (2d Cir. 2019).

In *Laurent*, the Second Circuit reversed a district court's decision that "limit[ed] the availability of equitable remedies under § 502(a)(3)," stating that the "when construing a remedy in equity under ERISA § 502(a)(3), courts are to be guided by equitable principles, as modified by the obligations and injuries identified by ERISA itself." *Laurent*, 945 F.3d at 748 (citing *CIGNA v. Amara*, 563 U.S. 421, 445 (2011). In doing so, *Laurent* found that "the outcome advocated by [defendant] that even where employes prove an ERISA violation, they have no remedy — is inconsistent with the maxim of equity that equity suffers not a right to be without a remedy,"

concluding it was "not aware of any ERISA-related purpose that denial of a remedy would serve." *Laurent*, 945 F.3d at 748 (cleaned up; citing *Varity v. Howe*, 516 U.S. 489, 512 (1996)).

Defendants wrongly contend that *Laurent* holds that reformation is the ***only*** remedy available to Plaintiffs. Objection at 17 n.12. Far from it. While the ***plaintiffs*** in *Laurent* sought to reform the plan, *Laurent*, 945 F.3d at 942, the court held "that § 502(a)(3) authorizes district courts to grant equitable relief — ***including*** reformation…." *Id.* at 748. (detailing the equitable remedies available). Thus, reformation was not the only possible remedy. Defendants try to avoid ***providing any remedy***, an outcome that *Laurent* rejected. *Id*. In any event, this Court should not decide now what remedy it may ultimately grant to certify the Class.[2]

Moreover, whether reformation is a proper remedy is not, ultimately, a class certification issue. For example, if a class is not certified, the individual Plaintiffs prevail and reformation is the appropriate remedy, Defendants would still have the problem, under their view of the world, that the Plan is reformed for some but not all similarly situated participants in the Class. Accordingly, reformation is at best an issue the Defendants should contest during the remedy phase of the case.

In *Torres v. American Airlines, Inc.*, 2020 WL 3485580 (E.D. Tex. May 22, 2020), the court considered "the form of reformation plaintiffs advocated," Objection at 16, which is why Defendants are trying to force this Court to decide now that Plaintiffs' only remedy is reformation. As discussed above, the Court should not do so. Moreover, this Court should not follow *Torres* even as to Plaintiffs' Second Claim because the decision is not consistent with *Laurent*. *Torres*

---

[2] Even if the Court eventually orders reformation, it would not have to do so in the sweeping way Defendants suggest and could instead only change the ratio created between Class Members' SLAs and their JSAs.  Altman Report, ECF 156-1, § 5; Altman Tran., ECF No. 151-2, at 118. The more sweeping changes that Defendants advocate would not be "tailored" to the ERISA violation, which Defendants admit it must be. *Frommert*, 153 F. Supp. 3d at 606.   Opp., ECF 150, at 18, 24.

denied class certification because the court determined that some class members might be harmed if the entire plan was reformed, ignoring its authority to craft "appropriate equitable relief" to redress the ERISA violation. *Torres*, 2020 WL 3485580, at * 11. *Torres* only found a conflict among class members because it pre-determined the relief it would ultimately provide, an issue that this Court should not decide at this stage. *Perez*, 2016 WL 5719802, at * 5.

Defendants' reasons why "conclusions reached in *Torres* apply. . . .in a more pronounced way" each fail. Objection at 18-19. Their suggestion that some Class Members "come out ahead with the use of the Plan's assumptions, as opposed to Altman's," Objection at 18, assumes that this Court could not provide "appropriate equitable relief" under ERISA § 502(a)(3), which is wrong as discussed above. Moreover, to be clear, Altman concluded that ***all*** Class members are receiving JSAs that are lower than the JSAs that would be actuarially equivalent to the SLA they were offered. Altman Report, ECF 156-1, §§ 17-18, Contrary to Defendants' argument, Objection at 17, this includes those that started receiving their benefits after age 70 and 1/2, to whom ERISA § 205(d)'s actuarial equivalence requirements equally apply. Altman Reply Report, ECF 156-3, ¶ 19; 26 C.F.R. § 1.401(a)-20, Q&A-17.

*Torres* also ignored that ERISA requires that any "appropriate equitable relief" must protect class members' existing benefits because ERISA's anti-cutback rule prohibits plan amendments from reducing benefits earned before the amendment. ERISA § 204(g)(2); 26 C.F.R. §§ 1.411(d)-3(b) and (g)(15). Defendants do not explain how it could be "appropriate equitable relief" to remedy one ERISA violation by creating another, and courts providing relief under ERISA § 502(a)(3) have done so in ways that protect participants' existing benefits. *Amara*, 775 F.3d at 521-22 (affirming remedy because no class members "could be made worse off"); *see also Frommert*, 153 F. Supp. 3d at 606, aff'd by 913 F.3d at 107 (affirming remedy that did not provide

"lower benefits than similarly situated" and did not penalize participants). *Torres* did not consider whether it could fashion relief consistent with this requirement.

### D.     MetLife's Attempt to Create an Inter-Class Conflict Fails.

Defendants' attempt to manufacture a conflict between Class members based on Altman's "exclusion of other assumptions that Plaintiffs conceded are reasonable" is baseless and insufficient to deny certification.  Objection at 18-19.  Boiled down, Defendants' expert calculated damages using slightly different assumptions than Altman and contends that some Class members might prefer using these other assumptions that Altman does not recommend.  Abraham Report, ECF 151-1, ¶¶ 88-110.

Defendants' own "examples" illustrate the error of the argument.  Objection at 19. While Altman used the precise mortality assumptions that MetLife's actuary recommended based on the Plan's "credible"[3] mortality experience, Altman Report, ECF 156-3, § 10, Defendants try to create a conflict by using more generic "baseline tables" that Altman did not select.  Objection at 19 (citing Altman Tran., ECF 151-2, at 150:19-152:23 and Abraham Report, ECF 151-1, ¶ 119).

Defendants also contend "there appears to be significant conflict within the potential class members" about which month of the IRS Segment Rates they prefer Altman to use.  Abraham Report, ECF 151, at Appendix III.  But Altman used only Segment Rates from November, not any other month.  Altman Report, ECF 156-1, § 14.  Contrary to MetLife's suggestion, plans must use the same month "time and method" Segment Rates for all plan participants, 26 C.F.R. § 1.417(e)-1(d)(4), prohibiting Altman from choosing different month's rates for different Class members.

---

[3] "Actuaries use experience studies to select a mortality assumption that better matches the plan's experience than a standard baseline mortality table." Altman Report, ECF 156-1, § 9, n.27. Plans with large participant populations can have "credible" experience, measured by the number of deaths in the plan population.

Defendants' expert recommends his clients use the Segment Rates as an interest rate assumption and many of his clients use the November Segment Rates that Altman selected.  Abraham Tran., ECF 156-5, at 234:17-237:9; 79:6-84:25.

MetLife's speculation that some Class Members may prefer one set of assumptions over another, Objection at 18, is based on the same wrong interpretation of ERISA § 502(a)(3) as *Torres. Falberg*, 2022 WL 538146 (S.D.N.Y. Feb. 14, 2022) (rejecting suggestion that some class members might prefer using different comparator funds to measure the plan's options' performances); *Laurent,* 2014 WL 2893303, at * 4 (rejecting defendant's suggestion that using a different interest rate created conflict because it was "premature to speculate about a conflict that does not exist.").

While *Torres* found that some class members are "better off" under the plan's current assumptions, that conclusion does not apply here since ***each*** Class Member would receive a greater JSA using Altman's proposed assumptions.  Altman Report, ECF 156-3, §§ 17, 18. In *Thorne v. U.S. Bancorp*, No. 18-cv-3405, 2021 WL 1977126 (D. Minn. May 18, 2021), the plaintiffs' expert proposed six sets of actuarial assumptions and under some, class members would potentially receive lower benefits. *Id*. at * 3. In sharp contrast, Altman proposed only one set of assumptions under which ***all*** Class Members' benefits increase.  Altman Report, ECF 156-3, §§ 13-14.

## II.    THE CLASS THAT MAGISTRATE JUDGE WANG CERTIFIED WAS PROPER

This Court should overrule MetLife's objections about the scope of the Class.  Objection at 20-22. Boiled down, MetLife suggests that the Court should expand the Class to include more Plan participants only so it can argue the Class is too big to be certified. As explained below, the Class that Magistrate Judge Wang certified was proper.

A "proposed class is defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.,* 862 F.3d 250, 269 (2d Cir. 2017). The Class here is limited to participants in the Plan's Traditional Part whose JSA benefits were calculated in a specified way starting in 2013.  Plaintiffs' Motion, ECF 140.   This definition of the Class gives the Court "a clear sense of who is suing about what," *In re Petrobras Sec.,* 862 F.3d at 269, and Plaintiffs identify Class Members using Defendants' records.  Altman Report, ECF 156-1, § 1(c); *see also Fikes Wholesale Inc. v. HSBC Bank USA N.A.*, 62 F.4th 704, 716 (2d Cir. 2023) (definition that provided the "timeframe. . . .and place. . . .in which a particular group was allegedly harmed" was "all that is needed.").

Contrary to Defendants' suggestion, there is good reason for this Class definition. The Plan's various parts use different formulae (and actuarial assumptions) to calculate JSAs.  Plan Document, ECF 142-1, § 1.02.   Even within the Plan's Traditional Part, Defendants do not calculate all participants' JSA benefits in the same way.  For most participants in the Traditional Part, the "Accrued Benefit" is a certain life annuity ("CLA"). Objection at 4. For proposed Class Members, the accrued benefit is a *12-year* CLA. *Id.* at 9. But for the Plan's "as of June 30, 2008" participants, the accrued benefit is a *5-year* CLA. *Id.* In other words, the "as of June 30, 2008" group has a different benefit structure.

The difference is important, and not because ERISA applies differently to the "as of June 30, 2008" group.  Rather, those participants receive a subsidized benefit, which affects whether they receive actuarially equivalent JSAs.  Altman Report, ECF 156-1, §§ 18-19; Altman Tran., ECF 151-2, at 120:1-23.   So, while their JSA benefits were calculated using the "same assumptions" as members of the proposed Class, those assumptions generated higher conversion factors for "as of June 30, 2008" participants than for members of the proposed Class.  Altman

Report, ECF 156-1, § 18. Accordingly, while the same actuarial assumptions were used for some non-Class members, Defendants applied those assumptions to a different formula and the resulting conversion factors are not the same.

Plaintiffs' claim Defendants did not provide actuarially equivalent JSA benefits.  While the Plan's unreasonable actuarial assumptions affect the analysis, the key to their actuarial equivalence claim is the conversion factor that the assumptions generate under the Plan's formula.  Altman Report, ECF 156-3, § 4.  Each Class member had the same benefit structure and had their benefits calculated using the same formula and, because of that formula, did not receive an actuarially equivalent benefit.  Therefore, the scope of the proposed Class is proper.  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263-64 (2d. Cir. 2006); *see also* Altman Transcript, ECF 151-2, at 183:6-15.

Courts have regularly certified classes in ERISA cases that do not include all plan participants.  *Caufield v. Colgate-Palmolive Co.*, No. 16-civ-4170, 2017 WL 3206339, * 8 (S.D.N.Y. 2017), certified a class of ERISA plan participants whose benefits were calculated "under any of Appendices B, C or D" of Colgate's pension plan. *Laurent v. Pricewaterhouse-Coopers,* 2014 WL 2893303 at * 3, certified a class of ERISA participants that began receiving benefits when the plan used the formula that allegedly violated ERISA. The class in *Falberg*, 2022 WL 538146 at * 10, only included plan participants that invested in the 401k plan's options that charged allegedly excessive fees. The court in *In re J.P. Morgan Stable Value Fund ERISA Litig.*, No. 12-cv-2548, 2017 WL 1273963, * 7 (S.D.N.Y. Mar. 31, 2017), certified classes of plan participants whose "investment performance underperformed" a stated index.

Defendants repeatedly use the term "gerrymandering" to suggest the Class is too narrow but do not propose an alternative definition.  Objection at 20, 21.  Instead, they identify additional

participants they suggest could be included in the Class, but then contend those additional participants should not be members of ***any class***. Objection at 20-21. And, while a broader class could theoretically be certified, the proposed Class's narrower definition does not render certification improper.

Defendants wrongly suggest that the case's outcome "will necessarily affect [non-class members'] right to relief." Objection at 22. The Second Circuit effectively rejected MetLife's argument in *Fikes Wholesale Inc. v. HSBC Bank USA N.A.*, 62 F.4th 704 (2d Cir. 2023), holding those who were "by definition excluded from the class" were "irrelevant" to whether class certification was proper because "non-class cannot be bound by any orders" in the case. *Id*. at 717 (citing *Rothstein v. Am. Int'l Grp.*, 837 F.3d 195, 204 (2d Cir. 2016)). While Defendants could be required to litigate with those who are not Class members, Objection at 22, that is even more true if no class is certified, and not a reason why this Court should deny class certification.

The cases on which Defendants rely do not apply. Objection at 20. In *Burke v. Local 710 Pension Fund*, No. 98-cv-336518, 2000 WL 336518 (N.D. Ill. Mar. 28, 2000), there was a certified class in another case that sought the same remedy. The proposed classes in *Wenig v. Messerli & Kramer P.A.*, No. 11-cv-3547, 2013 WL 1176062 (D. Minn. Mar. 21, 2013), and *Fariastantos v. Rosenberg & Assoc. LLC*, 303 F.R.D. 272 (E.D. Va. 2014), were limited to a single county's residents to avoid the Fair Debt Collection Practices Act's damages cap, with plaintiffs' counsel planning to bring another class action comprised of another county's residents about the same conduct. *Wenig*, 2013 WL 1176062, at * 6; *Fariastantos*, 303 F.R.D. at 278. The courts in *Wenig* and *Fariastantos* found that the proposed classes did not meet Rule 23(b)(3)'s "superiority" requirement because defining the class based on a person's county of residence was not a "fair" or "efficient" way to "adjudicate the controversy." *Wenig*, 2013 WL 1176062, at * 6. Here, the Class

14

was not defined to preserve claims that will be part of a subsequent class action. Moreover, Rule 23(b)(3)'s "superiority" requirement is not an issue if the Court determines that certification under Rule 23 (b)(1) or (b)(2) is proper.

Defendants' reliance on *Coan v. Kaufmann*, 457 F.3d 250 (2d Cir. 2006), and *Cooper v. Ruane Cunniff & Goldfarb, Inc.*, 990 F.3d 173 (2d Cir. 2021), is misplaced. Objection at 21. *Coan* concerned plan participants that brought a claim "in a representative capacity on behalf of the plan" under ERISA § 502(a)(2). *Coan*, 457 F.3d at 259-260. *Cooper* similarly concerned parties suing on behalf of a plan. *Cooper*, 990 F.3d at 185. In contrast, Plaintiffs do ***not*** assert any claims on behalf of the Plan under ERISA §§ 409 and 502(a)(2). *See* SAC, ECF 124, ¶¶ 105-127. Instead, they assert individual claims under ERISA §502(a)(3), and they do not bring claims "on behalf of the Plan. *Id*. Therefore, Defendants concerns about Plan-wide relief simply do not exist.[4]  And, as discussed above, Plaintiffs' claims do not affect every Plan participant or the rights of non-Class members. *Fikes*, 62 F.4th at 717.

## III.   THE RELEASES DO NOT BAR CERTIFICATION OF THE CLASS AS A WHOLE OR THE SUBCLASSES

Under Rule 23(c)(5), courts can divide a class into subclasses and treat each subclass as a separate class. Fed. R. Civ. P. 23(c)(5). Defendants contend that because 464 Class Members signed releases, certification is not proper because the issue of whether the releases were knowing and voluntary raises individualized questions. Objection at 22-25. Because ***every*** release must be

---

[4] The plaintiffs in *Fish v. Greatbanc Trust Co.*, 667 F.Supp.2d 949 (N.D. Ill. 2009), filed a putative class action but moved to proceed on behalf of all plan participants without obtaining class certification. *Fish* found the plaintiffs did not have to "jump through the procedural hoops required for Rule 23 class certification," but that the case had to be structured to protect plan participants, noting that Rule 23.1's procedure for derivative shareholder actions may be appropriate.

knowing and voluntary, Defendants essentially argue that *no* case involving releases can ever be certified. This is plainly not the law.

As an initial matter, Defendants' sweeping argument that the Releases prevent Plaintiffs from satisfying any of Rule 23's requirements *except* numerosity does not explain how Rule 23's subparts apply to the release question or why the Subclass that Magistrate Judge Wang proposed to certify with Plaintiff Kernan as the representative is problematic. *Id.* at 22. Accordingly, the "clear error" standard of review applies. *Mogollan v. La Abundancia Bakery & Rest., Inc.*, No. 18-cv-3203, 2021 WL 1226923, at *5-6 (S.D.N.Y. Mar. 31, 2021) ("clear error" standard applies when party makes "merely perfunctory objections" or ones that are "conclusory, general or simply rehash or reiterate the original briefs to the magistrate.") (citations omitted). Magistrate Judge Wang did not commit clear error in the R&R.

Adding slightly more specificity, Defendants argue that Brownell and Ross's claims (but not Kernan's) are atypical of the Release Subclass, citing to their Opposition Brief in which they argued against certification of the *Class* as a whole. But Defendants do not explain why Brownell and Ross's claims are atypical of the *Subclass*. Objection at 23 (citing Opp., ECF 150). MetLife also claims that the Subclass does not share common claims and defenses because the issue of whether a release was "knowing and voluntary" is individualized. Both arguments fail.

Contrary to MetLife's suggestion, the Subclass for those that signed Release Agreements satisfies each of Rule 23(a)'s requirements and, at a minimum, satisfies Rules 23(b)(1) and (b)(2). *See* R & R at 16. There are 464 members of the Subclass and, as Magistrate Judge Wang correctly found, the Subclass presents common legal and factual issues, including "which actuarial assumptions should be used to determine whether JSA benefits are actuarially equivalent to the SLA offered to participants when they started receiving benefits." R&R at 14; *see also* Plaintiffs'

Opening Brief, ECF 141, at 6-7 (citing *Hanks v. Lincoln Life & Annuity Co. of N.Y.*, 330 F.R.D. 374, 349 (S.D.N.Y. 2019) (commonality is a "low hurdle."). Typicality is also satisfied because each member of the Subclass's "claim arises from the same course of events and each class member makes similar legal arguments to prove defendant's liability." *Sahhriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011); *Caufield*, 2017 WL 3206339, at * 4 (typicality satisfied as defendants "used a consistent method to calculate" ERISA benefits and the "alleged errors in that method would have applied across the class.")

In *In re J.P. Morgan Stable Value Fund ERISA Litig.*, No. 12-cv-2548, 2017 WL 1273963, at **10-11 (S.D.N.Y. Mar. 31, 2017), the court granted certification even though some class members signed releases, finding that this defense was only one "factor in the class certification calculus." The court in *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100 (S.D.N.Y. 2010), likewise certified a Rule 23(b)(3) class that included members subject to a release defense, finding that "[t]o the extent these potential defenses could present some individual issues, there are many ways in which this Court can deal with those issues when they arise." *Id*. at 116.

In this case, the R & R correctly recommends certification under Rule 23(b)(1) and (2). R & R at 16. Accordingly, common issues do not have to predominate.  In *Haley v. Teachers Ins. and Annuity Ass'n of Amer.*, 54 F.4th 115 (2d Cir. 2022), the Second Circuit analyzed whether affirmative defenses to ERISA claims would predominate under Rule 23(b)(3), not under Rule 23(a)'s commonality requirement. Accordingly, under *Haley,* the Court does not need to consider the impact of the release on commonality.

That Brownell and Ross also may be subject to a release defense is an obstacle to class certification *only* when a "class representative is subject to unique defenses which threaten to become the focus of the litigation," *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 179 (S.D.N.Y.

2008), *and* if "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990). Here, Brownell and Ross are not subject to any "unique defenses" because all members of the Release Subclass are subject to the same defense.  Consequently, the Releases present common issues that can be addressed as a single unit through a class action. *Korn v. Franchard Corp.*, 456 F.2d 1206, 1210 (2d Cir. 1972); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 75-76 (S.D.N.Y. 2005) (certifying class in ERISA case where some class members signed releases, finding the releases "contain substantially similar language" and were "subject to treatment on a class-wide basis."); *Finnan v. L.F. Rothschild & Co., Inc.*, 726 F.Supp. 460, 465 (S.D.N.Y. 1989).

Likewise, there is no danger that Subclass Members "will suffer" if the Court certifies the Subclass because releases present Subclass-wide issues of contract interpretation.  Defendants' affirmative defense, while meritless, does not negate the many other common issues of fact and law that exist, much less overwhelm them under Rule 23(b)(3)'s "more demanding predominance requirement."  *Johnson*, 780 F.3d at 138.

Defendants' primary argument is that the releases were "knowing and voluntary." Objection at 23. It is highly unlikely that this issue will "threaten to become the focus of the litigation." Because application of the Releases is an affirmative defense, it will only come up if Plaintiffs prevail on liability. Defendants' liability will be the focus of the litigation in the first instance. After that, the Release issue could only come up if the Releases bar Plaintiff's' claims. As set forth below, they do not. But, regardless of that fact, whether they do is a common issue under the Releases' plain terms. Accordingly, whether the Releases were knowing and voluntary

is at best a third tier issue that the Court will likely never reach. Because this issue will not "threaten to become the focus of the litigation," it should not defeat commonality under Rule 23(a).

### A. The Scope of the Releases Is Common to the Subclass

#### i. The Subclass-Wide Claims Were Carved Out of the Releases

"Congress created substantive rights for pension plan participants and expressly created private causes of action in federal courts to vindicate those rights." *Laurent*, 945 F.3d at 749 (citation omitted).  ERISA § 205's actuarial equivalence requirement is one of those rights.  *Bd. of Trustees of Equity League Pension Trust Fund v. Royce*, 238 F.3d 177, 180 (2d Cir. 2001) ERISA §§ 205(a) and (d); 26 C.F.R. § 1.401(a)-20, Q&A 1 and 2 (JSA "requirements are appliable to any benefit payable under a plan" and describing the "rights" provided by ERISA's "survivor annuity requirements")

Here, the Subclass brings claims under ERISA § 205(d), which provides plan participants the right to actuarially equivalent JSA benefits. Second Amended Complaint, ECF 124, ("SAC"), ¶¶ 1, 8. These claims are carved out of the Releases. Each Release states:

> This Agreement . . . does ***not*** affect any ***rights*** or benefits that vested . . . prior to your execution of this Agreement ***under any*** employee benefit plans governed by ERISA.

Ross Release, ECF 152-1, at ML002644; Brownell Release, ECF 152-2, at ML002639 (emphasis added). Every Subclass member's Release has this protective language. Therefore, application of the Releases is common and does not bar any Subclass member's claims in this case.

Like this case, in *Amara v. CIGNA Corp.*, 534 F.Supp.2d 288 (D. Conn. 2008), some named plaintiffs and class members signed releases that carved out "any claims for benefits under any retirement, savings, or other employee benefit programs." *Id.* at 314. The court found that the

release's carve-out covered claims that the plan's terms violated ERISA, i.e., the claims were ***not*** released.  The court concluded:

> [There is] no indication that either party, much less both, intended to draw the kind of fine distinctions CIGNA now argues the Court should read into the exception. CIGNA points to no language, either in the waivers themselves or in the SPD for the Severance Pay Plan, that suggests, let alone explicitly states, that the exception covers only claims for benefits under the terms of the Plan, and not claims under ERISA itself.

*Id.* at 316. Accordingly, in *Amara v. CIGNA Corp.*, 559 F.Supp.2d 192, 200-01 (D. Conn. 2008), the court certified the class, finding that the release agreements did not apply to the Class's claims.[5] This Court should do the same.

Defendants argue that Brownell's release is materially different because it covers "any claim for any enhancement or differential over and above the benefit vested." Objection at 10; Brownell Release, ECF 152-2, at ML002639.  But an "enhancement" is a "grant of additional age and service credit" under the Plan. Objection at 10.  Brownell is not seeking any "enhancement" or differential over and above the benefit vested." She is seeking to enforce her right to the benefits required to be provided to her under ERISA. Therefore, the different language in Brownell's Release does not apply to the claims she alleges.

*Ruppert v. Alliant Energy Cash Balance Pension Plan*, 255 F.R.D. 628 (W.D. Wis. 2009), concerned whether a plan sponsor violated ERISA when calculating pension benefits. *Id*. at 637. The release in *Ruppert* said plaintiff would "retain any vested rights under all qualified retirement plans of [Alliant's] in which [plaintiff] is a participant and all rights associated with such benefits, as determined by the official terms of those plans." *Id*. at 635. The court found that: (1) "the release

---

[5] The court in *Amara* affirmed its class certification decision after the Supreme Court's decision in *CIGNA v. Amara*, 563 U.S. 421 (2011) about the scope of equitable relief available under ERISA § 502(a)(3) in 925 F.Supp.2d 242, 262-65 (D. Conn. 2012).

agreements each contain carve-outs related to plaintiff's pension benefit rights"; (2) the release does not discharge future injuries; and (3) "to the extent plaintiff's releases could be construed as releasing defendant from this ERISA suit, the agreement would be unenforceable because agreements that waive future violations of ERISA are unenforceable, 29 U.S.C. § 1110, as are agreements that "alienate" pension entitlements by forfeiting them, 29 U.S.C. § 1056(d)(1)." *Id.* The *Ruppert* court's reasoning is spot-on.  Like in *Ruppert*, each Release carves out "rights" that Subclass Members have "under ERISA."  Ross Release, ECF 152-1, at ML-002644; Brownell Release, ECF 152-2, at ML-002639.

### ii.    The Releases Were Signed Before Class Member Claims Accrued.

All releases cover only claims "up to and including the date you execute this Agreement, which is when employees terminated their employment." MetLife Opp., ECF 150, at 9-10. They do "not affect any rights that you may have arising out events that occur ***after*** you have executed this Agreement." Releases, ECF 152-1, 152-2, at ML002644, 2639 (emphasis added).

A claim "accrues when the plaintiff can file suit to obtain relief."  *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 105 (2013).   For a claim to accrue, a participant must have (1) suffered harm to make the claim actionable, *Carey v. IBEW Local 363 Pension Plan*, 201 F.3d 44, 48 (2d Cir. 1999), and (2) know or reasonably should know that he has a cause of action.  *Novella v. Westchester Cnty.*, 661 F.3d 128, 147 (2d Cir. 2011). In the case of a defined benefit plan, if the plaintiffs "had not received their vested pension benefits" they could ***not*** bring "a cause of action under ERISA…"  *Thole v. U. S. Bank, N.A.* 140 S. Ct. 1615, 1619 (2020). Because the Subclass-wide claim is a violation of the right to receive actuarially equivalent benefits, and these failures had not occurred when any Subclass member signed a release, Subclass members did not release their claims.

In *Novella*, the plaintiff received a disability pension payment that he subsequently learned was too low. *Novella*, 661 F.3d at 131. The defendants argued that the statute of limitations ran from the date the pensioner received his first check. *Id.* at 144. Instead, the district court held that the claim accrued after the participant objected to his low benefits and his administrative claim for additional benefits was denied. *Id.* On appeal, the court concluded that the claim arose when the participant "knows or reasonably should know of the miscalculation," which occurred **after** the benefits were first paid but before the formal denial of benefits in the administrative process. *Id.* at 147.[6] Here, the claim accrued when Defendants failed to pay Subclass Members actuarially equivalent benefits. Because a signed release was a condition to receiving any benefits, this first payment indisputably occurred *after* every Subclass Member signed a release. Objection at 9.

Moreover, ERISA § 205 requires pension plans to provide actuarially equivalent JSAs on the "annuity starting date" — which is the "first day of the first period for which an amount is payable as an annuity." ERISA §§ 205(a), (d) and (h)(2). Accordingly, before the "annuity starting date," Plan participants have not suffered an injury to provide them with a right to seek any relief. *Thole*, 140 S. Ct. at 1619; *Kendall v. Empls. Ret. Plan of Avon Products*, 561 F.3d 112, 122 (2d Cir. 2009) (plaintiff lacked standing to challenge her "future benefits…that are not yet determined," but suffered a quantifiable injury on another claim that plan violated ERISA because her "claim relates to a past and present reduction in accrued benefits.").

Because members of the Release Subclass signed their Releases when they "terminated their employment," Opp., ECF 150 at 9-10, and "benefits can only be paid…after [participants] terminate employment with MetLife," 2014 SPD, ECF 156-2, at ML000680, the day at which

---

[6] In *Stanley*, the release similarly did not apply to "claims that arise after [plaintiff] signs this Agreement." However, the plaintiff paid the excessive fees *before* signing the release. *Stanley*, 394 F.Supp.3d at 104, 105 n.5.  *Stanley* is also distinguishable for this reason.

MetLife was required to provide an actuarially equivalent JSA, the annuity start date, was **after**

Subclass members signed their Releases.  For example, Brownell signed her Release on August

24, 2017, but she did not start receiving her benefits until June 1, 2018.  Brownell Release, ECF

152-2, at 6; Altman Report, ECF 156-1, § 17(b). While Magistrate Judge Wang did not decide the

issue, her analysis in the R&R is instructive.  Magistrate Judge Wang stated:

> [I]t seems unlikely that a release signed by employees upon their termination and
> <u>years</u> before their election of retirement benefits could prevent those employees
> from ever litigating any future claims above their election of retirement benefits or
> the appropriate calculation of those benefits.  Such a draconian result would allow
> employers to routinely avoid the requirements of ERISA that are at issue in this
> very case.

R&R, ECF 161, at 13, n. 8 (citing Order on Motion to Dismiss that it is ERISA's policy to "protect

the interests of participants in employee benefit plans. . . .").

Moreover, the statement upon which Defendants rely, Objection at 25, merely reflects an

estimate of benefits at an assumed benefit commencement date. The actual benefit commencement

date could be different if, for example, a participant did not begin their benefits immediately after

leaving MetLife. 2014 SPD, 156-4, at ML000672 (JSA amount "will be calculated…based on your

age and that of your survivor on the date your benefit becomes effective."); Altman Report, ECF

156-1, § 20.  Likewise, participants might terminate their service earlier or later than is reflected

in the disclosure or the compensation element used in the Plan's base formula could change.

Altman Report, ECF 156-1, § 20.  Defendants cited these instances when describing some of the

flaws in the quality of the Data Set.  *Id*. at n.44. Additionally, the Plan's SPD makes clear that

MetLife can "amend. . . .all or any part of [the] Plan at any time."  2014 SPD, ECF 156-5, at

ML000671, 675. So, the benefits could have changed up until benefit commencement date

regardless of any disclosure that Defendants provided.

More to the point, Plaintiffs do not challenge a disclosure of benefits, they challenge the payment of benefits that were not actuarially equivalent.[7]   That claim did not accrue until an improper benefit was actually paid and Subclass members suffered an actual loss. *Thole,* at 140 S. Ct. 1615, 1619; *Heimeshoff*, 571 U.S. at 105; *Novella*, 661 F.3d at 147.[8]

### iii.   Whether the Release Was Voluntarily Signed Is a Class-Wide Issue

Additionally, all Releases expressly provide that "you affirm that this Agreement has been executed ***voluntarily*** by you . . . this Agreement constitutes the full understanding between [the parties]"). Releases, ECF 152-1 at ML002646, ECF 152-2 at ML002642. At the very least, the resolution of whether Subclass Members are bound by this provision is a Subclass-wide issue.

MetLife tries to distinguish various cases certifying classes where class members signed releases (that they expect Plaintiffs to cite), Objection at 24, but Defendants ignore the fact that whether the releases were "knowing and voluntary" was not a bar to certification in any of those cases.  MetLife claims that there was "no issue surrounding the knowingness or voluntariness" in *In re J.P. Morgan Stable Value Fund ERISA Litig*ation because the release was pursuant to a prior class action settlement, Objection 24, but does not articulate why a different standard applies.

Defendants rely primarily on *Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307 (S.D.N.Y. 2003). *Spann* involved several different release agreements executed under different

---

[7] If Plaintiffs sued before they started receiving benefits, Defendants undoubtedly would have argued that Plaintiffs had not been injured because, for example, Defendants could have amended the Plan before they started receiving their benefits. Under Article III, "the mere risk of future harm, standing alone, cannot qualify as a concrete harm." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021).

[8] In any event, all issues relating to claim accrual are Subclass-wide. Accordingly, even if this was a disclosure claim, because of these Subclass-wide disclosures, the Subclass should be certified. *Osberg v. Foot Locker, Inc.*, No. 07-cv-1358, 2014 WL 5796686, * 3 (S.D.N.Y. Sept. 24, 2014) (certifying class, concluding the effect of defendants' communications was a common issue "[r]egardless of whether the answer. . . .is affirmative or negative. . . .").

circumstances, including some that were signed when the class members received the benefit challenged in the case. *Id.* at 314. Some class members signed General Releases, some signed Lump Sum Releases, some signed both, and some participated in the plan's administrative review process. *Id.* at 318. Accordingly, the court held that the release defense required a fact-specific inquiry into the circumstances surrounding the execution of each release and whether class members exhausted their administrative remedies. *Id.* at 319. Here, there are no such issues as the material terms of the releases are the same.[9]

## **CONCLUSION**

For the reasons set forth above and in Plaintiffs' Motion for Class Certification (ECF 140-142 and 155-156), this Court should adopt Magistrate Judge Wang's well-reasoned R&R and overrule Defendants' objections.

Dated:  June 2, 2023                    Respectfully submitted,

                                        */s/ Douglas P. Needham*
                                        **IZARD, KINDALL & RAABE LLP**
                                        Douglas P. Needham
                                        Robert A. Izard (admitted *pro hac vice*)
                                        Seth R. Klein
                                        29 South Main Street, Suite 305
                                        West Hartford, CT 06107
                                        Tel: (860) 493-6292
                                        Fax: (860) 493-6290
                                        rizard@ikrlaw.com
                                        dneedham@ikrlaw.com
                                        sklein@ikrlaw.com

---

[9] *Hoeffner v. D'Amato*, No. 09-cv-3160, 2019 WL 1428367 (E.D.N.Y. Mar. 29, 2019), is not relevant because the court declined to certify one of the proposed subclasses because some of members of that subclass were not owed any fiduciary duties. In *Bond v. Marriott*, 296 F.R.D.403, 408 (D.Md. 2014), the court denied certification under (b)(3), summarily stated that it "***may*** be required to conduct an individualized analysis of the viability of claims for each class member."(emphasis added).  Moreover, *Bond* found that the named plaintiff did not satisfy typicality because "he did not execute a release," an issue that does not apply with regard to Ross and Brownell's ability to represent the Release Subclass.  *Id.* at 408.

**BAILEY & GLASSER LLP**
Gregory Y. Porter (admitted *pro hac vice*)
Mark G. Boyko
1054 31st Street, NW, Suite 230
Washington, DC 20007
(202) 463-2101
(202) 463-2103 fax
gporter@baileyglasser.com
mboyko@baileyglasser.com

***Counsel for Plaintiffs***