**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Catherine McAlister, Pauline Walker, Lee Kernan, Emily Ross, Scott Batey, Mary Trivett and Joan Brownell, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> Metropolitan Life Insurance Company, MetLife Group, Inc. and the Metropolitan Life Insurance Company Employee Benefits Committee, <br><br> Defendants. | No. 18-cv-11229-DEH-OTW |

**PROTOCOL FOR THE DISCLOSURE, SEARCH AND PRODUCTION**
**OF ELECTRONIC SYSTEMS AND ELECTRONICALLY STORED INFORMATION**

Plaintiffs and Defendants (the "Parties") hereby agree to the following protocol for the production of electronically stored information and hardcopy documents ("ESI and Discovery Protocol"). Nothing in the protocol shall limit a Party's right to seek or object to discovery as set out in applicable rules or object to the authenticity or admissibility of any ESI produced in accordance with this protocol.

I.   **GENERAL AGREEMENTS**

1.   **Scope of Discovery.** The standards, limits and scope of discovery shall be governed by the Federal Rules of Civil Procedure ("FRCP") and the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules"). The Parties agree to meet and confer in good faith regarding any discovery disputes, and any dispute the Parties cannot resolve amicably shall be resolved by the Court. Nothing in this ESI and Discovery Protocol shall be deemed as a waiver of the right of any Party to object to any Request for Production, Request for Admission, Interrogatory or other discovery request.

2.   **No Designation of Discovery Requests.** Productions of ESI in the reasonably usable form set out in this protocol need not include any reference to the requests to which ESI may be responsive, except as may be required by the FRCP.

3.   **Stipulation and Order Regarding Confidential Information.** The Stipulation and Order Regarding Confidential Information (ECF No. 121) is incorporated herein by reference.

## II.     FORM OF ESI PRODUCTION

1.     **Production In Reasonably Usable Form.** The Parties shall produce ESI in connection with this protocol in reasonably usable form.  Except as stated in paragraph II.2 below or as agreed hereafter by the Parties, such reasonably usable form in connection with this protocol shall be the single-page, TIFF-image format with extracted or OCR text and associated metadata as set out in Attachment A, which is incorporated in full in this protocol.  If the receiving Party seeks production in native format of specifically-identified ESI produced originally in TIFF-image form, the producing Party shall respond reasonably and in good faith to any such request.  Parties may produce documents in native format in lieu of producing documents pursuant to the format set forth in Attachment A.

2.     **Documents Subject To Production In Native Format.** Electronic spreadsheets (*e.g.*, Excel), electronic presentations (*e.g.*, PowerPoint), desktop databases (*e.g.*, Access) and audio/video multimedia files that have been identified as responsive shall be produced in native format, as well as other documents that cannot be rendered as TIFF images.  Redacted documents shall be produced in TIFF image format, except for Excel documents and other structured data workbooks, which may be produced in native format with redacted information deleted.

3.     **Deduplication.**  The Parties shall make reasonable efforts to deduplicate ESI. ESI shall be globally deduplicated.  ESI will be considered duplicative if it has the same content at the family level.  Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level).  Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates.

4.     **Email Threading.**  In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize "email thread suppression."  As used in this agreement, email thread suppression means reducing duplicative production of email threads by producing the most recent email containing the thread of emails, as well as all attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced string.  For purposes of this paragraph, only email messages in which the parent document, senders and recipients, and all attachments are exactly the same in content will be considered duplicates.

5.     **Redactions.** All documents, whether in native format or TIFF format, may be redacted to exclude content that is non-responsive, privileged, or entitled to evidentiary or legal protection.  All redactions should indicate the location and basis for the redaction. If a document that is part of a larger document family is wholly non-responsive or privileged, it may be withheld in full but must be replaced by a slipsheet providing the reason that the document was withheld.

6.     **Inadvertent Production.** No Party shall be held to have waived any rights to privilege by the production of a document in this action, unless explicitly disclaimed to the other party in writing.  The Parties agree that production of a document in this action will be without prejudice to any claim to any legally cognizable privilege or evidentiality protection including,

but not limited to attorney-client privilege and attorney work product doctrine. The Parties agree that on receiving from the other party a document which on its face is attorney work product or subject to attorney-client privilege, or upon notice by the other party of the production of attorney work product or attorney-client privileged documents, the receiving party will:

a.      refrain from reading the document any more closely than needed to determine what is necessary to ascertain applicability to attorney work product or attorney-client privilege,

b.      notify the producing party immediately in writing of the protected document and specifically identify its Bates number, and within five (5) business days of discovery of the inadvertent disclosure, return or destroy all copies of such documents, along with any notes or analysis of their contents.

c.      The receiving party will have five (5) business days from receipt of notification of the production of attorney work product or attorney-client privileged documents to determine in good faith whether to contest such claim and to notify the producing party in writing of an objection to the claim of privilege or attorney work product, and the grounds for that objection.

This agreement to return or destroy privileged documents is made without reference to any Order under Federal Rule of Evidence 502, and does not require reasonable efforts to protect the privilege of produced documents.

## III.     PRIVILEGE LOG

Documents withheld on grounds of any applicable privilege may be identified through metadata in a privilege log; provided that the party making the claim describes the nature of the documents, communications, or tangible things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

The following documents need not be included on a privilege log: (a) communications between the parties and counsel (including internal communications within a law firm or a legal department of a corporation, or between co-counsel) on and after the filing of this lawsuit; and (b) work product created by or for trial counsel in this matter after commencement of this action or a party's joinder in this action (whichever is later), or work product created by or for trial counsel in this matter in anticipation of this litigation (c) redacted documents (so long as the receiving parties are able to assess the claim of privilege with respect to the redacted information) and (d) communications with expert witnesses.  The privilege log will contain metadata sufficient to identify the privileged nature of a wholly privileged document.

Dated: December 19, 2023

**IZARD, KINDALL & RAABE LLP**

By: */s/ Christopher M. Barrett*
      Christopher M. Barrett
      Robert A. Izard
29 South Main Street, Suite 305
West Hartford, CT 06107
(860) 493-6292
cbarrett@ikrlaw.com
rizard@ikrlaw.com

*Counsel for Plaintiffs*

**PROSKAUER ROSE LLP**

By: */s/ Russell L. Hirschhorn*
      Russell L. Hirschhorn
      Myron D. Rumeld
Eleven Times Square
New York, New York 10036
(212) 969-3000
rhirschhorn@proskauer.com
mrumeld@proskauer.com

*Counsel for Defendants*

SO ORDERED.

Dale E. Ho
United States District Judge
New York, New York
Dated: December 19, 2023

**ATTACHMENT A**

A.1.    Image Files. Files produced in *.tif image format will be single page black and white *.tif files at 300 DPI, Group IV compression. To the extent possible, original orientation will be maintained (*i.e.*, portrait-to-portrait and landscape-to-landscape). Records in which a color copy is necessary to interpret the document (e.g., photographs, presentations, AUTOCAD, etc.) will be rendered to higher resolution, single-page joint photographic experts group (".jpg" or ".jpeg") format.  Each *.tif file will be assigned a unique name matching the production number of the corresponding page. Such files will be grouped in folders of no more than 1,000 *.tif files each unless necessary to prevent a file from splitting across folders. Files will not be split across folders and separate folders will not be created for each file. Production ("Bates") numbers shall be endorsed on the lower right corner of all images. This number shall be a unique, consistently formatted identifier that will:

> *be consistent across the production;*
>
> *contain no special characters; and*
>
> *be numerically sequential within a given file.*

Bates numbers should be a combination of an alpha prefix along with an 8-digit number (e.g. ABC00000001). The number of digits in the numeric portion of the Bates number format should not change in subsequent productions. Confidentiality designations, if any, will be endorsed on the lower left corner of all images and shall not obscure any portion of the original file.

A.2.    File Text. Except where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, full extracted text will be provided in the format of a single *.txt file for each file (*i.e.*, not one *.txt file per *.tif image). Where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, the redacted *.tif image will be OCR'd and file-level OCR text will be provided in lieu of extracted text. Searchable text will be produced as file-level multi-page UTF-8 text files with the text file named to match the beginning production number of the file. The full path of the text file must be provided in the *.dat data load file.

A.3.    Word Processing Files. Word processing files, including without limitation Microsoft Word files (*.doc and *.docx), will be produced in the above format with tracked changes and comments showing.

A.4.    Presentation Files. To the extent that presentation files, including without limitation Microsoft PowerPoint files (*.ppt and *.pptx), are produced in *.tif image format, such *.tif images will display comments, hidden slides, speakers' notes, and similar data in such files.

A.5.    Spreadsheet or Worksheet Files. To the extent that spreadsheet files, including without limitation Microsoft Excel files (*.xls or *.xlsx), are produced in *.tif image format, such *.tif images will display hidden rows, columns, and worksheets, if any, in such files.

A.6.    Native Files.  ESI that cannot be interpreted in an image format, or for such that may be voluminous and burdensome when printed to image files, may be produced in its native format,

with its file name corresponding to its designated Bates number.  Such files include Microsoft Excel, PowerPoint and Access file types, multimedia files (e.g., ".avi", "mpeg", ".wmv", ".mp3", etc.), AUTOCAD files, source code, and other files that may be requested and/or agreed upon by counsel.  All native files produced must contain a corresponding image placeholder with appropriate endorsements, as well as extracted text.

A.7.    Parent-Child Relationships. Parent-child relationships (*e.g.*, the associations between emails and their attachments) will be preserved. Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record. Parent-child relationships will be identified in the data load file pursuant to paragraph A.14 below.

A.8.    English Language. To the extent any data exists in more than one language, the data will be produced in English, if available. If no English version of a file is available, the producing Party shall not have an obligation to produce an English translation of the data.

A.9.    Embedded Objects. Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, and Access; and PDF. Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded.

A.10.   Compressed Files. Compressed file types (*i.e.*, .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

A.11.   Encrypted Files. The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable electronically stored information that exists in encrypted format (*e.g.*, because password-protected) and that can be reasonably unencrypted.

A.12.   Scanned Hardcopy Documents

> *In scanning hardcopy documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., hard copy documents should be logically unitized).*

> *If a producing Party is requested, and agrees, to provide OCR text for scanned images of hard copy documents, OCR should be performed on a document level and provided in document-level \*.txt files named to match the production number of the first page of the document to which the OCR text corresponds. OCR text should not be delivered in the data load file or any other delimited text file.*

> *In the case of an organized compilation of separate hardcopy documents—for example, a binder containing several separate documents behind numbered tabs—the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the family fields set out below.*

A.13.   Production Numbering.

In following the requirements of Paragraph A.1, the Producing Party shall take reasonable steps to ensure that attachments to documents or electronic files are assigned production numbers that directly follow the production numbers on the documents or files to which they were attached. If a production number or set of production numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each *.tif image will have its assigned production number electronically "burned" onto the image.

A.14.   Data and Image Load Files.

*Load Files Required. Unless otherwise agreed, each production will include a data load file in Relativity (*.dat) format and an image load file in Opticon (*.opt) format.*

*Load File Formats.*

    i.       Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABC001_metadata.dat would be acceptable.

    ii.      The .dat file must be delimited with the standard Concordance delimiters (the use of commas and quotes as delimiters is not acceptable):
ASCII 020 [¶] for the comma character;
ASCII 254 [þ] for the quote character; and
ASCII 174 [®] for new line.

    iii.     Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.

*Fields to be Included in Data Load File. For all documents or electronic files produced, the following metadata fields for each document or electronic file, if available at the time of collection and processing and unless such metadata fields are protected from disclosure by attorney-client privilege or work-product immunity or otherwise prohibited from disclosure by law or regulation, including the European Data Privacy Regulation, will be provided in the data load file pursuant to subparagraph (a), above, except to the extent that a document or electronic file has been produced with redactions.  The term "Scanned Docs" refers to documents that are in hard copy form at the time of collection and have been scanned into *.tif images.  The term "Email and E-Docs" refers to files that are in electronic form at the time of their collection.*

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| PRODBEG [Key Value] | ABC00000001 | Yes | Yes | Beginning production number |

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| PRODEND | ABC00000008 | Yes | Yes | Ending production number |
| PRODBEGATT | ABC00000009 | Yes | Yes | Beginning production number of parent in a family |
| PRODENDATT | ABC0000100 05 | Yes | Yes | Ending production number of last page of the last attachment in a family |
| CUSTODIAN(S) | Smith, John | Yes | Yes | Name of Custodian from whose files the item is produced . |
| DUPCUSTODIAN / ALLCUSTODIANS | Smith, John | Yes | Yes | All Custodian(s) that possessed the document or electronic file—multiple custodians separated by semicolon |
| NATIVEFILE | Natives\ 001\001\ ABC 00000001.xl s | N/A | Yes | Path and file name for native file on production media |
| FILEDESC | Microsoft Office 2007 Document | N/A | Yes | Description of the type file for the produced record. |
| FOLDER | \My Documents\ Document1. doc | N/A | Yes | Original source folder for the record produced. |
| FILENAME | Document1. doc | N/A | Yes | Name of original electronic file as collected. |
| FILESIZE | 2.143 | N/A | Yes | Size (in kilobytes) of the source native file |

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| DOCEXT | DOC | N/A | Yes | File extension for email or e-doc |
| TITLE | Smith Presentation to Committee | Yes | Yes | Any value populated in the Title field of the source file metadata or item properties |
| PAGES | 2 | Yes | Yes | Number of pages in the produced document or electronic file (not applicable to native file productions). |
| FAMDATE | 10/09/2005 | N/A | Yes | The sent date (for emails) or last modified date (for non-emails) of the family parent document. |
| MD5HASH | 3AA649395 D4AB9EEC CF34DA1D E68A819 | N/A | Yes | The MD5 hash value of the file. |
| AUTHOR | John Smith | N/A | Yes | Author information as derived from the properties of the document. |
| DATECREATED | 10/09/2005 | N/A | Yes | Date that non-email file was created as extracted from file system metadata |
| TIMECREATED | 10:33 am | N/A | Yes | Time that non-email file was created as extracted from file system metadata |
| DATELASTMOD | 10/09/2005 | N/A | Yes | Date that non-email file was modified as extracted from file system metadata |

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| TIMELASTMOD | 10:33 am | N/A | Yes | Date that non-email file was modified as extracted from file system metadata, time zone set to GMT |
| DATELASTPRINTED | 10/09/2005 | N/A | Yes | Date the item was last printed |
| TIMELASTPRINTED | 10:33 am | N/A | Yes | Time the item was last printed, time zone set to GMT |
| SUBJECT | Changes to Access Database | N/A | Yes | "Subject" field extracted from email message or metadata properties of the document |
| FROM | John Beech | N/A | Yes | "From" field extracted from email message |
| TO | Janice Birch | N/A | Yes | "To" field extracted from email message |
| CC | Frank Maple | N/A | Yes | "Cc" or "carbon copy" field extracted from email message |
| BCC | John Oakwood | N/A | Yes | "Bcc" or "blind carbon copy" field extracted from email message |
| DATESENT | 10/10/2005 | N/A | Yes | Sent date of email message (mm/dd/yyyy format) |
| TIMESENT | 10:33 am | N/A | Yes | Sent time of email message, time zone set to GMT |
| DATERCVD | 10/10/2005 | N/A | Yes | Received date of email message (mm/dd/yyyyformat) |

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| TIMERCVD | 10:33 am | N/A | Yes | Received time of email message, time zone set to GMT |
| CONFIDENTIALITY | HIGHLY CONFIDENTIAL | Yes | Yes | Text of confidentiality designation, if any |
| TEXTPATH | Text\001\ 001\ ABC00000000 01.txt | N/A | Yes | Path to *.txt file containing extracted or OCR text |
| PRODVOL | VOL001 | Yes | Yes | Name of the Production Volume |

A.15.   Production Media. Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), external hard drive, secure FTP site, or similar electronic format. Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (ABC001, ABC002, *etc.*). Deliverable media should be labeled with the name of this action, the identity of the producing Party, and the following information: Volume name, production range(s), and date of delivery.