UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Catherine McAlister, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>Metropolitan Life Insurance Company, et al.,<br><br>Defendants. | No. 18-cv-11229-DEH |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS


INTRODUCTION ........ 1

FACTUAL BACKGROUND ........ 2

PROCEDURAL BACKGROUND ........ 2

IMPLEMENTATION OF THE SETTLEMENT SINCE PRELIMINARY APPROVAL ........ 4

THE TERMS OF THE SETTLEMENT ........ 5

ARGUMENT ........ 7

I. The Court Should Grant Final Approval of the Settlement ........ 7

- A. The Class Representatives and Class Counsel Have Adequately Represented the Class. ........ 8
- B. The Settlement Was Negotiated at Arm's Length. ........ 9
- C. The Relief Provided for the Class Is More Than Adequate. ........ 10
  1. The Costs, Risks, and Delay of Trial and Appeal ........ 11
  2. The Effectiveness of Distribution to the Settlement Class ........ 14
  3. The Terms of the Requested Award of Attorneys' Fees, Including Timing of Payment ........ 15
- D. The Reaction of the Settlement Class Will Be Addressed on the Completed Record ........ 16
- E. The Settlement Treats Settlement Class Members Equitably Relative to Each Other ........ 17

II. The Court Should Grant Final Certification of the Settlement Class ........ 19

- A. The Settlement Class Satisfies Rule 23(a) ........ 19
  1. Numerosity ........ 19
  2. Commonality ........ 20
  3. Typicality ........ 20
  4. Adequacy ........ 21
  5. Ascertainability ........ 21
- B. The Settlement Class Satisfies Rule 23(b)(1). ........ 22

III. The Notice Provided to the Settlement Class Satisfied Rule 23 and Due Process ........ 23

IV. The Requirements of CAFA Have Been Satisfied..........24

CONCLUSION..........24

## TABLE OF AUTHORITIES

**Page(s)**

**<u>CASES</u>**

*Amara v. Cigna Corp.*,
No. 3:01-cv-02361 (D. Conn.) ... 13

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ... 19, 22

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000) ... 21

*Beach v. JPMorgan Chase Bank, N.A.*,
No. 17-cv-00563, 2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) ... 14

*Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*,
504 F. Supp. 3d 265 (S.D.N.Y. 2020) ... 11

*Berube v. Rockwell Automation, Inc.*,
No. 2:20-cv-1783 (E.D. Wis.) ... 9

*Brown v. United Parcel Serv. of Am., Inc.*,
No. 1:22-cv-1672 (N.D. Ga.) ... 9

*Cates v. Trs. of Columbia Univ. in City of N.Y.*,
No. 16-cv-6524 (GBD), 2021 WL 4847890 (S.D.N.Y. Oct. 18, 2021) ... 10

*Caufield v. Colgate-Palmolive Co.*,
No. 16-cv-4170, 2017 WL 3206339 (S.D.N.Y. July 27, 2017) ... 22

*Charron v. Pinnacle Grp. N.Y. LLC*,
874 F. Supp. 2d 179 (S.D.N.Y. 2012), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013) ... 16

*Charron v. Wiener*,
731 F.3d 241 (2d Cir. 2013) ... 21

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ... 7, 8, 16

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) ... 19

*Covic v. FedEx Corp.*,
No. 2:23-cv-2593 (W.D. Tenn.) ... 9

*Cruz v. Raytheon Co.*,
No. 1:19-cv-11425 (D. Mass.) ... 14

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) ... 21

*DeVaney v. Delta Air Lines, Inc.*,
No. 2:21-cv-2186 (D. Nev.) ... 9

*Dial Corp. v. News Corp.*,
317 F.R.D. 426 (S.D.N.Y. 2016) ....................17

*Edwards v. N. Am. Power & Gas, LLC*,
No. 3:14-cv-01714 (VAB), 2018 WL 1582509 (D. Conn. Mar. 30, 2018) ....................10

*Hamrick v. E.I. Du Pont de Nemours*,
No. 23-cv-238 ....................9

*Herndon v. Huntington Ingalls, Inc.*,
No. 4:19-cv-52 (E.D. Va.) ....................14

*Holloway v. Kohler Co.*,
No. 23-CV-1242-JPS, 2024 WL 5088316 (E.D. Wis. Dec. 12, 2024) ....................14

*In re AOL Time Warner ERISA Litig.*,
No. 02 Civ. 8853 (SWK), 2006 WL 2789862 (S.D.N.Y. Sept. 27, 2006) ....................10

*In re Citigroup Pension Plan ERISA Litig.*,
241 F.R.D. 172 (S.D.N.Y. 2006) ....................22

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ....................7

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019) ....................8, 10, 11, 17

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
No. 12-cv-2548, 2017 WL 1273963 (S.D.N.Y. Mar. 31, 2017) ....................22

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
327 F.R.D. 483 (S.D.N.Y. 2018) ....................17

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ....................12

*In re MetLife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ....................7

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ....................17

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ....................11

*In re Petrobras Sec.*,
862 F.3d 250 (2d Cir. 2017) ....................22

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) ....................20

*Jander v. Ret. Plans Comm. of IBM*,
No. 15-cv-3781, 2021 WL 3115709 (S.D.N.Y. July 22, 2021) ....................passim

*Kernan v. Metro. Life Ins. Co.*,
No. 18-cv-11229 (RA) (OTW), 2023 WL 3620884 (S.D.N.Y. Mar. 17, 2023), *report and recommendation adopted sub nom. McAlister v. Metro. Life Ins. Co.*, No. 18-cv-11229 (RA), 2023 WL 5769491 (S.D.N.Y. Sept. 7, 2023)....................................................20, 22

*Kohari v. MetLife Grp., Inc.*,
No. 21-cv-6146 (KHP), 2025 WL 100898 (S.D.N.Y. Jan. 15, 2025)................................passim

*Kurtz v. Kimberly-Clark Corp.*,
142 F.4th 112 (2d Cir. 2025)................................................................................................15

*Marin v. 310 Bowery Grp. LLC*,
No. 24 Civ. 1340 (SLC), 2025 WL 893731 (S.D.N.Y. Mar. 24, 2025)....................................11

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997)..................................................................................................20

*Masten v. Metro. Life Ins. Co.*,
No. 18-cv-11229 (DEH), 2024 WL 4350909 (S.D.N.Y. Sept. 27, 2024).................................11

*McCutcheon v. Colgate-Palmolive Co.*,
No. 1:16-cv-04170 (S.D.N.Y.)...............................................................................................13

*McFadden v. Sprint Commc'ns, LLC*,
No. 22-2464-DDC-GEB, 2024 WL 3890182 (D. Kan. Aug. 21, 2024) .............................14, 15

*Moses v. N.Y. Times Co.*,
79 F.4th 235 (2d Cir. 2023)...............................................................................................15, 19

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950) ........................................................................................................23, 24

*Neor v. Acacia Network, Inc.*,
No. 22-CV-4814 (ER), 2026 WL 1346866 (S.D.N.Y. May 14, 2026)....................................17

*Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*,
318 F.R.D. 19 (S.D.N.Y. 2016) ............................................................................................12

*Parisi v. Am. Airlines, Inc.*,
No. 1:24-cv-9271 (N.D. Ill.) ....................................................................................................9

*Raniere v. Citigroup Inc.*,
310 F.R.D. 211 (S.D.N.Y. 2015) ..........................................................................................13

*Robertson v. Trinity Packaging Corp.*,
No. 19-CV-659 (JLS) (LGF), 2025 WL 2224586 (W.D.N.Y. Aug. 5, 2025) .....................10, 11

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993)..................................................................................................20

*Skrtich v. Pinnacle W. Cap. Corp.*,
No. 2:22-cv-01753 (D. Ariz.)................................................................................................14

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003)....................................................................................12

*Sykes v. Harris*,
No. 09 Civ. 8486 (DC), 2016 WL 3030156 (S.D.N.Y. May 24, 2016)....11, 12

*Toomey v. Demoulas Super Mkts., Inc.*,
No. 1:19-cv-11633 (D. Mass. Mar. 24, 2021)....14

*Tussey v. ABB, Inc.*,
746 F.3d 327 (8th Cir. 2014)....13

*Tussey v. ABB, Inc.*,
850 F.3d 951 (8th Cir. 2017)....13

*Tussey v. ABB, Inc.*,
No. 06-4305 (W.D. Mo. Aug. 16, 2019)....13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)....13, 16, 23

*Watson v. Manhattan Luxury Autos., Inc.*,
No. 20 Civ. 4572 (LGS), 2026 WL 2267941 (S.D.N.Y. Aug. 6, 2026)....15, 19

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982)....23

**STATUTES**

28 U.S.C. § 1715....4, 24

29 U.S.C. § 1055....12, 18

**RULES**

Fed. R. Civ. P. 23....*passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(e)(2)(D) advisory committee’s note to 2018 amendment....17

Plaintiffs Lee Kernan, Emily Ross, Joan Brownell, Catherine McAlister, and Scott Batey, individually and as Settlement Class Representatives, move for an order (1) granting final approval of the class action Settlement Agreement between Plaintiffs and Defendants (collectively, "MetLife"); (2) finally certifying the Settlement Class; (3) confirming that notice to the Settlement Class satisfied Rule 23 and due process; and (4) entering the proposed Final Approval Order and Judgment.[1]

## INTRODUCTION

This Court should grant final approval to the proposed Settlement which has a gross present value of $23 million. Plaintiffs allege that their monthly pension benefits are too low in violation of ERISA. The Settlement provides for increases in pension benefits under the Plan of Allocation so that the Settlement remedy to Class Members is in the same form as the alleged loss. The Settlement Benefit increases will be paid through the Plan without a claim form, except for the estate-claim procedure applicable to Deceased Class Members.

The Settlement was agreed to on the brink of trial, after nearly eight years of litigation, including contested class certification and dispositive motions, expert discovery, and preparation for trial. The value of the Settlement should be considered in light of the litigation risks in this complex and highly technical case. Plaintiffs' legal theory has not been litigated through trial in any case, and there were no appellate rulings on this theory when the parties reached agreement on the material terms of settlement. Defendants also disputed Plaintiffs' expert testimony. Success at trial therefore depended heavily on the resolution of disputed actuarial opinions in a highly

---

[1] Unless otherwise defined, all capitalized terms herein have the same meaning as set forth in the Settlement Agreement, ECF 253-1. Exhibits 1–6 are exhibits to the Settlement Agreement.

technical field. For these reasons, and the additional reasons discussed below, the Settlement satisfies the standard for final approval.

Plaintiffs separately move for an award of attorneys' fees, litigation expenses, Settlement Administration Expenses, and Case Contribution Awards to the Settlement Class Representatives. That request is addressed in Plaintiffs' separately filed motion and supporting memorandum of law, as contemplated by the Court's Preliminary Approval Order. ECF 255 ¶¶ 16–17.

## FACTUAL BACKGROUND

Plaintiffs filed this case on December 3, 2018, on behalf of participants in the MetLife Retirement Plan (the "Plan") and their beneficiaries. *See* ECF 1. Plaintiffs alleged that Defendants violated ERISA by failing to pay certain benefits in amounts that were actuarially equivalent to the default benefit as required under ERISA and the Plan itself. *Id.* ¶ 6. Plaintiffs' operative Second Amended Complaint alleged that the Plan failed to pay qualified joint and survivor annuities ("QJSAs") that were "actuarially equivalent" to the single life annuities ("SLA") participants could have received under the Plan. Second Amended Complaint, ECF 124 ¶ 1. Plaintiffs alleged that MetLife calculated benefits using outdated mortality assumptions — in some instances nearly fifty years out of date — which caused monthly benefits to be less than an "actuarially equivalent" amount. ECF 124 ¶ 8.

## PROCEDURAL BACKGROUND

The complaint was filed on December 3, 2018. ECF 1. On March 26, 2019, Plaintiffs filed a corrected Amended Complaint. ECF 42. On April 18, 2019, Defendants moved to dismiss. ECF 45. On June 14, 2021, the Court denied Defendants' motion in substantial part. ECF 112. On October 21, 2021, Plaintiffs filed the operative Second Amended Complaint, joining Plaintiffs Kernan, Ross, Batey, and Brownell. ECF 124. Defendants answered on November 23, 2021. ECF 131.

On March 3, 2022, Plaintiffs moved to certify the class, which was fully briefed by August 5, 2022. ECFs 140, 150, 155. On March 17, 2023, Magistrate Judge Wang recommended that the District Court grant the motion. ECF 161. Defendants objected and Plaintiffs responded. ECFs 167–168. On September 7, 2023, the District Court accepted and adopted the report and recommendation and certified a litigation class. ECF 172. On September 21, 2023, Defendants filed a Rule 23(f) petition seeking to appeal the Court's grant of class certification and Plaintiffs responded, which the Court of Appeals denied on November 29, 2023. No. 23-1314, ECFs 1, 11, 12.

On December 21, 2023, Defendants moved for summary judgment, which the Court denied on September 30, 2024. ECF 199. On July 22, 2025, the Parties participated in a mediation with Robert Meyer, Esq. (JAMS), but were unable to reach a settlement. ECF 206. The Court thereafter scheduled a three-day bench trial to begin on February 17, 2026. ECF 209. On January 7, 2026, the parties filed the Joint Pretrial Order and other required pretrial filings, and Plaintiffs filed a motion in limine. ECFs 223-228. On February 16, 2026, the day before trial was to begin, the Parties agreed in principle to settle the claims of Plaintiffs and the Class. ECF 244.

On June 2, 2026, the Parties executed the Settlement Agreement and Plaintiffs moved for preliminary approval. ECFs 251–254. By Order dated June 9, 2026, and filed June 10, 2026, the Court issued its Order Preliminarily Approving Class Action Settlement & Release (the "Preliminary Approval Order"), which preliminarily approved the Settlement, preliminarily certified the Settlement Class, appointed Class Representatives and Class Counsel, approved the form and manner of the Class Notice, and scheduled the Fairness Hearing for November 12, 2026. ECF 255.

## IMPLEMENTATION OF THE SETTLEMENT SINCE PRELIMINARY APPROVAL

Since the Court entered the Preliminary Approval Order, the Parties have implemented the notice program the Court approved.

**CAFA Notice**. Consistent with paragraph 10 of the Preliminary Approval Order, Defendants served notice of the Settlement on the appropriate federal and state officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715. Declaration of Russell L. Hirschhorn ("Hirschhorn Decl.") ¶¶ 2–8 & Exs. A–D. The service dates and expiration of the statutory waiting period are addressed below.

**Class Notice**. Consistent with paragraph 11 of the Preliminary Approval Order, the Parties caused the Class Notice to be sent to Settlement Class Members by first-class mail, using contact information maintained by the Plan's current recordkeeper. Declaration of Christopher M. Barrett in Support of Motion for Final Approval ("Barrett Decl.") ¶¶ 6–7; Declaration of Abimbola Adediji ("Adediji Decl.") ¶¶ 3–7. The Adediji Declaration describes the number of recipients, mailing dates, returned mail, follow-up efforts, and projected delivery results. Adediji Decl. ¶¶ 3–9. Epiq projects that, once it completes its September 29, 2026 re-mailing to updated addresses located through tracing, it will have successfully sent the Class Notice to approximately 58,007 of the 58,650 potential Settlement Class Members, or approximately 98.9%. *Id.* ¶¶ 8–9.

**Settlement Website**. Consistent with paragraph 14 of the Preliminary Approval Order, Class Counsel established and has maintained the Settlement Website, www.MetLifePensionSettlement.com, on which the Preliminary Approval Order, the Class Notice, the Settlement Agreement and its exhibits, and the Second Amended Complaint have been posted; this motion and the accompanying motion for attorneys' fees, expenses, and Case Contribution Awards will be posted upon filing. The Estate Claim Form is also available to all Settlement Class Members on the Settlement Website. Barrett Decl. ¶¶ 8–9. Class Counsel have

responded to approximately 324 inquiries from Settlement Class Members and their representatives and have sent Estate Claim Forms to approximately 15 Settlement Class Members who requested them. *Id.* ¶¶ 8, 10.

**Objections**. The deadline for Settlement Class Members to object to the Settlement is October 23, 2026 — twenty days before the Fairness Hearing — which is after the filing of this motion. ECF 255 ¶ 20. As of September 28, 2026, no Settlement Class Member has filed or served an objection to the Settlement, to the proposed Plan of Allocation, to the requested attorneys' fees and expenses, or to the requested Case Contribution Awards. Barrett Decl. ¶ 13. Plaintiffs will file a supplemental submission addressing any objections received, consistent with the Court's schedule for responses to objections. ECF 255 ¶ 20 (responses to objections due no later than November 2, 2026, ten days before the Fairness Hearing).

**Independent Fiduciary**. Section 2.2 of the Settlement Agreement permits Defendants, at their sole election and cost, to retain an Independent Fiduciary to approve the Settlement on behalf of the Plan. If one is retained, its written determination will be submitted to the Court consistent with ECF 255 ¶ 18. Barrett Decl. ¶ 14.

## THE TERMS OF THE SETTLEMENT

The material terms of the Settlement Agreement (ECF 253-1) are summarized below. The Agreement and Plan of Allocation govern the calculation and payment of Settlement Benefits.

The Settlement Class is defined as follows:

> All Plan participants (and their beneficiaries) who accrued a benefit under the MetLife Traditional Formula, GenAmerica Corporation Performance Plan and Trust ("GenAm Formula"), New England Life Insurance Company Retirement Plan and Trust ("New England Life Insurance Company Formula") and/or in a Personal Retirement Account and who commenced, or became eligible to commence, receipt of that benefit on or after January 1, 2013, except any Plan participant who elected a lump sum benefit prior to the Preliminary Approval Order.

The Settlement has a gross present value of $23 million (the "Gross Settlement Amount"). The Plan of Allocation allocates 80% of the Net Settlement Amount to Settlement Class Members in Pay Status and 20% to Settlement Class Members Not in Pay Status. ECF 253-1, Plan of Allocation §§ I.A, III(4). The division between these groups reflects their proportions of estimated losses as calculated by the actuarial experts in this case. Barrett Decl. ¶ 15. Court-approved deductions reduce the amount available for Settlement Benefits; the $18.4 million and $4.6 million division of the $23 million Gross Settlement Amount describe the corresponding shares of the Gross Settlement Amount, not the net amount payable to the two groups.

Within ninety days after the Settlement Effective Date (or, if later, the date the Final Increased Benefits Appendix becomes final under the Settlement Agreement), the Plan will be amended to implement the increased Settlement Benefits. Settlement Agreement § 3.5. Payments will begin in accordance with the Agreement's Benefit Increase Payment Date provisions, including payment of the applicable retroactive lump sum. *Id.* § 3.6. Settlement Class Members Not in Pay Status receive increases upon commencement of qualifying benefit forms under the Plan of Allocation. No claim form is required for these increases. A Successor seeking a Death Benefit for a Deceased Class Member must submit an Estate Claim Form under the Agreement and Plan of Allocation. Barrett Decl. ¶ 8; ECF 253-1, Plan of Allocation § II(8).

In exchange, upon the Effective Date, Plaintiffs and each Settlement Class Member will release the Released Claims described in the Settlement Agreement, and the Action will be dismissed with prejudice. The release covers the claims specified in the Agreement, including claims based on the alleged facts and the settlement's actuarial calculations and allocation. It preserves rights and duties under the Agreement and individual, non-class benefit-denial claims which are outside the defined Released Claims. Settlement Agreement §§ 1.39–1.40, 4.1. The

release must be considered together with the relief allocated to the affected groups under Rule 23(e)(2)(D).

## ARGUMENT

### I. The Court Should Grant Final Approval of the Settlement

In the Second Circuit, "[t]here is a strong judicial policy in favor of settlements, particularly in the class action context." *Kohari v. MetLife Grp., Inc.*, No. 21-cv-6146 (KHP), 2025 WL 100898, at *4 (S.D.N.Y. Jan. 15, 2025) (quoting *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 330 (E.D.N.Y. 2010)). Final approval of a class action settlement under Rule 23(e)(2) requires the Court to find that the settlement is "fair, reasonable, and adequate," considering whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to one another.

Fed. R. Civ. P. 23(e)(2).

Rule 23(e)(2) factors "supplement rather than displace" the *Grinnell* factors, and "not every factor must weigh in favor of [the] settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *Kohari*, 2025 WL 100898, at *8 (internal quotation marks omitted) (quoting *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004)); *accord Jander v. Ret. Plans Comm. of IBM*, No. 15-cv-3781, 2021 WL 3115709, at *2 (S.D.N.Y. July 22, 2021). The nine *Grinnell* factors are set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000): (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing

damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

At preliminary approval, this Court found that the Settlement "appears to be fair, reasonable, and adequate, and within the range of possible approval," and that it "is the result of serious, informed, arm's-length negotiations conducted by experienced counsel." ECF 255 ¶ 3. Final approval requires the Court to assess the Settlement under Rule 23(e)(2) on the completed record, including notice, class reaction, and the requested fees and Case Contribution Awards. The Court does not "reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute"; it weighs the risks of litigation against the certainty of recovery under the Settlement. *Grinnell*, 495 F.2d at 456; *Kohari*, 2025 WL 100898, at *5, *9.

### A. The Class Representatives and Class Counsel Have Adequately Represented the Class.

"Rule 23(e)(2)(A) requires a Court to find that 'the class representatives and class counsel have adequately represented the class' before preliminarily approving a settlement." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019). That requirement remains satisfied. The Settlement Class Representatives challenge the Plan's actuarial assumptions and seek relief for the resulting alleged benefit shortfalls. Their own Settlement Benefits are determined under the applicable provisions of the Plan of Allocation. The representation of the Settlement Class's different benefit and release categories is addressed below.

Additionally, the named Plaintiffs have been exemplary representatives. They spent significant time on behalf of the class in this hard-fought litigation, gathering their relevant documents, providing them to counsel, responding to counsel's requests, reviewing documents

and preparing for trial. Declaration of Robert A. Izard in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Case Contribution Awards ("Izard Decl.") ¶¶ 22–23.

Class Counsel — Izard, Kindall & Raabe LLP ("IKR") and Bailey & Glasser LLP ("B&G") — are experienced class-action and ERISA practitioners who vigorously prosecuted this Action for nearly eight years, through the eve of trial. Class Counsel are among the few firms nationally that litigate actuarial-equivalence claims of this kind.[2] Izard Decl. ¶¶ 6–7 & Ex. A; Declaration of Gregory Y. Porter in Support of Plaintiffs' Motion for Final Approval of Class Settlement ("Porter Decl.") ¶ 6 & Ex. A. Class Counsel have continued to represent the Settlement Class vigorously since preliminary approval, responding to approximately 324 inquiries from Settlement Class Members and their representatives and sending Estate Claim Forms to approximately 15 Settlement Class Members who requested them. Barrett Decl. ¶¶ 8, 10. The adequacy factor is satisfied.

**B. The Settlement Was Negotiated at Arm's Length.**

The case was thoroughly litigated before settlement. Because this case settled on the brink of trial, the parties completed extensive fact discovery, including exchanging initial disclosures, serving and answering interrogatories, producing a substantial number of documents and substantial amounts of data, and deposing fact witnesses. Izard Decl. ¶ 12(d). Moreover, the parties engaged in substantial expert discovery, including exchanging multiple reports by their respective

[2] *See, e.g.*, *Skrtich v. Pinnacle W. Cap. Corp.*, No. 2:22-cv-01753 (D. Ariz.) (settled); *Berube v. Rockwell Automation, Inc.*, No. 2:20-cv-1783 (E.D. Wis.) (settled); *McFadden v. Sprint Commc'ns, LLC*, No. 2:22-cv-2464 (D. Kan.) (settled); *Holloway v. Kohler Co.*, No. 2:23-cv-1242 (E.D. Wis.) (settled); *Covic v. FedEx Corp.*, No. 2:23-cv-2593 (W.D. Tenn.) (pending); *Brown v. United Parcel Serv. of Am., Inc.*, No. 1:22-cv-1672 (N.D. Ga.) (pending); *DeVaney v. Delta Air Lines, Inc.*, No. 2:21-cv-2186 (D. Nev.) (pending); *Parisi v. Am. Airlines, Inc.*, No. 1:24-cv-9271 (N.D. Ill.) (pending); *Hamrick v. E.I. Du Pont de Nemours*, No. 23-cv-238 (D. Del.) (consolidated; pending).

actuarial experts, and each Party deposing the other's actuarial expert twice. *Id.* ¶ 12(e). The parties also mediated with Mr. Meyer, an experienced mediator in ERISA cases. *Id.* ¶ 12(g). Consequently, Class Counsel had ample information to understand the strengths and weaknesses of the case prior to settlement. *See Robertson v. Trinity Packaging Corp.*, No. 19-CV-659 (JLS) (LGF), 2025 WL 2224586, at *11 (W.D.N.Y. Aug. 5, 2025); *Edwards v. N. Am. Power & Gas, LLC*, No. 3:14-cv-01714 (VAB), 2018 WL 1582509, at *8 (D. Conn. Mar. 30, 2018); *In re AOL Time Warner ERISA Litig.*, No. 02 Civ. 8853 (SWK), 2006 WL 2789862, at *5 (S.D.N.Y. Sept. 27, 2006). Courts in this District have approved settlements on comparable or less developed records. *See Kohari*, 2025 WL 100898, at *9 (settlement after fact discovery and partial expert discovery); *Cates v. Trs. of Columbia Univ. in City of N.Y.*, No. 16-cv-6524 (GBD), 2021 WL 4847890, at *2 (S.D.N.Y. Oct. 18, 2021) (awarding fees in ERISA class settlement reached after summary judgment, days before bench trial).

Although the parties did not reach agreement during the mediation, the mediation process materially advanced the parties' understanding of the strengths and weaknesses of their respective positions and facilitated the subsequent arm's-length negotiations that ultimately resulted in settlement the day before trial. Izard Decl. ¶ 12(g), (i). Courts have found procedural fairness in these circumstances. *See Kohari*, 2025 WL 100898, at *2, *8 (settlement reached through continued negotiations after an unsuccessful mediation was procedurally fair where negotiations were "at least in part conducted with the assistance of an experienced mediator"); *GSE Bonds*, 414 F. Supp. 3d at 693 ("a mediator's involvement in settlement negotiations can help demonstrate their fairness.").

**C. The Relief Provided for the Class Is More Than Adequate.**

Rule 23(e)(2)(C) requires consideration of the costs, risks, and delay of trial and appeal; the effectiveness of distribution; the terms and timing of attorneys' fees; and agreements identified

under Rule 23(e)(3). The Settlement's $23 million gross present value must be evaluated against the contested liability and damages issues remaining for trial and appeal. Surviving summary judgment did not establish Plaintiffs' entitlement to recovery. The parties' experts disagreed over the actuarial assumptions and the proper method of measuring any shortfall. Izard Decl. ¶ 10.

**1. The Costs, Risks, and Delay of Trial and Appeal**

In assessing this factor, courts "may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." *GSE Bonds*, 414 F. Supp. 3d at 693 (internal quotation marks omitted) (quoting *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 36 (E.D.N.Y. 2019)). This inquiry subsumes several of the traditional *Grinnell* factors, including the complexity, expense, and likely duration of the litigation and the risks of establishing liability and damages. *See Robertson*, 2025 WL 2224586, at *11. Courts favor a settlement that "results in substantial and tangible present recovery, without the attendant risk and delay . . . ." *Marin v. 310 Bowery Grp. LLC*, No. 24 Civ. 1340 (SLC), 2025 WL 893731, at *7 (S.D.N.Y. Mar. 24, 2025) (quoting *Sykes v. Harris*, No. 09 Civ. 8486 (DC), 2016 WL 3030156, at *12 (S.D.N.Y. May 24, 2016)). This is true in a complex ERISA class action. *See Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*, 504 F. Supp. 3d 265, 269–70 (S.D.N.Y. 2020) (describing "the protracted and sharply-contested nature of ERISA litigation").

The Plan's accrued benefit is a certain and life annuity rather than a single life annuity. Defendants contended that the same assumptions used to convert the single life annuity to a joint and survivor annuity also had to be used in converting the accrued benefit to the single life annuity. Acceptance of that position could eliminate the losses calculated by Plaintiffs' expert. The Court left the competing actuarial positions for evaluation through expert testimony. *Masten v. Metro. Life Ins. Co.*, No. 18-cv-11229 (DEH), 2024 WL 4350909, at *7 (S.D.N.Y. Sept. 27, 2024). Accordingly, the scope of any Plan reformation also presented a risk to the amount of recovery or

whether the class would recover anything at all. A dispute that turns on competing actuarial testimony carries "the very real risk that [the factfinder] could be swayed by experts . . . who could minimize or eliminate the amount of Plaintiffs' losses." *Jander*, 2021 WL 3115709, at *3 (internal quotation marks omitted) (quoting *Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 318 F.R.D. 19, 24 (S.D.N.Y. 2016)); *see also Kohari*, 2025 WL 100898, at *9 (reliance on expert testimony "creates further litigation risk and uncertainty").

Additional disputes concerned which benefit forms receive the protections of ERISA § 205, 29 U.S.C. § 1055, and whether releases signed by some class members on separation from MetLife foreclosed some claims. Those issues could reduce recovery or remain contested on appeal even after a favorable trial decision. Further proceedings on these issues would require additional expense and delay before Settlement Class Members obtained any relief. Further, the existing class certification order and denial of Defendants' Rule 23(f) petition reduced, but did not eliminate, certification risk. Although MetLife may be able to withstand a greater judgment, that factor does not resolve the disputed merits or make the compromise unreasonable. *See Kohari*, 2025 WL 100898, at *10.

The risk of delay independently supports approval. This Action has already proceeded for nearly eight years. Because the Second Circuit has not directly addressed Plaintiffs' theory of actuarial inequivalence, the party that lost at trial would likely have appealed, and post-trial motions and appellate review could have delayed any recovery for years, if at all. *See Sykes*, 2016 WL 3030156, at *12; *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003); *Kohari*, 2025 WL 100898, at *9 (citing *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138–39 (S.D.N.Y. 2010)). This case would likely be similar to other ERISA class actions asserting novel theories of liability that can have significant life cycles after trial. In *Tussey v. ABB,*

*Inc.*, for example, trial occurred in January 2010; the judgment was reduced on appeal in 2014; and the case did not settle until 2019 — nearly a decade after trial. *See Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014) (affirming in part, reversing in part, and vacating in part); *Tussey v. ABB, Inc.*, 850 F.3d 951, 954 (8th Cir. 2017) (remanding on damages); *Tussey v. ABB, Inc.*, No. 06-4305 (W.D. Mo. Aug. 16, 2019), ECF 869 (granting final approval of settlement). *See also, e.g., Amara v. Cigna Corp.*, No. 3:01-cv-02361 (D. Conn.) (twenty-five years of litigation); *McCutcheon v. Colgate-Palmolive Co.*, No. 1:16-cv-04170 (S.D.N.Y.) (nine years). That risk carries particular weight for this Settlement Class, a substantial portion of whom are retirees in their sixties and seventies, for whom continued delay in receiving corrected benefits is not merely inconvenient. The Settlement avoids that risk: increased benefits will be implemented on the schedule specified in the Agreement following the Settlement Effective Date, with the applicable retroactive payments, without requiring Settlement Class Members to await the outcome of trial and appeal. The Settlement thus falls within "a range of reasonableness . . . which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 219 (S.D.N.Y. 2015) (internal quotation marks omitted) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 119 (2d Cir. 2005)).

For in-pay-status participants who elected a 50% or 75% JSA, the Settlement provides a recovery of approximately 32% of Plaintiffs' expert's calculated losses before interest which is more than reasonable. Barrett Decl. ¶ 18. ERISA class settlements involving statutory claims often settle for comparable or lower percentages of plaintiffs' asserted damages. *See, e.g., Kohari*, 2025 WL 100898, at *10 (approving ERISA settlement with MetLife defendants of approximately 19% to 27% of estimated losses); *Jander*, 2021 WL 3115709, at *4 (approximately 25.8% of "the most

optimistic estimate of recoverable damages"); *Toomey v. Demoulas Super Mkts., Inc.*, No. 1:19-cv-11633 (D. Mass. Mar. 24, 2021), ECF 95 at 10, approved ECF 100 (D. Mass. Apr. 7, 2021) (settlement approximately 15–20% of alleged losses); *Beach v. JPMorgan Chase Bank, N.A.*, No. 17-cv-00563 (S.D.N.Y. May 20, 2020), ECF 211, approved 2020 WL 6114545, at *2 (S.D.N.Y. Oct. 7, 2020) (settlement of 16% of alleged losses).

Settlements in other actuarial-equivalence cases provide useful context: *Holloway v. Kohler Co.*, No. 23-CV-1242-JPS, 2024 WL 5088316, at *1 (E.D. Wis. Dec. 12, 2024), described gross settlement value of approximately one-third of claimed classwide damages; *McFadden v. Sprint Commc'ns, LLC*, No. 22-2464-DDC-GEB, 2024 WL 3890182, at *5 (D. Kan. Aug. 21, 2024), described approximately 36% of potential classwide damages. *See also Cruz v. Raytheon Co.*, No. 1:19-cv-11425 (D. Mass.) (approximately 40% of maximum damages); *Herndon v. Huntington Ingalls, Inc.*, No. 4:19-cv-52 (E.D. Va.) (approximately 35% of maximum damages); *Skrtich v. Pinnacle W. Cap. Corp.*, No. 2:22-cv-01753 (D. Ariz.) (approximately one-third of maximum classwide damages). But, none of the Plans in these cases provided for converting a certain-and-life-annuity accrued benefit to a single life annuity before comparison of the single life annuity to the challenged joint-and-survivor benefit. Therefore, none of these cases shared an additional risk of no recovery from a remedy the Court could order.

**2. The Effectiveness of Distribution to the Settlement Class**

Rule 23(e)(2)(C)(ii) requires the Court to examine "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." The Settlement provides relief in a form closely aligned with the claims asserted: Plaintiffs allege that Settlement Class Members received monthly annuity payments that were lower than actuarially equivalent amounts, and the Settlement correspondingly increases those monthly annuity payments going forward. Distributing relief through the Plan's benefit-payment

system preserves the retirement-income character of the relief and reduces the administrative burden on living Settlement Class Members. *See McFadden*, 2024 WL 3890182, at *3 ("Class members will receive relief through increases to their future monthly benefit payments, eliminating the need for Class members to file claims and sustain other administrative obligations associated with a filing process."); *Kohari*, 2025 WL 100898, at *3, *11 (approving distribution without a claim form as "appropriate, and consistent with prior cases"). For living Settlement Class Members, relief does not depend on submitting a claim form. They do not need to take any action to receive a remedy.

For Deceased Class Members (participants and beneficiaries), their successors must use the Estate Claim Form, which is due within six months of Final Approval under the Plan of Allocation. ECF 253-1, Plan of Allocation § II(8). The Estate Claim Form is available to all Settlement Class Members on the Settlement Website, and Class Counsel have sent it to approximately 15 Settlement Class Members who requested it. Barrett Decl. ¶¶ 8–9. This method limits the burden on recipients while providing a means to identify the proper recipient of a deceased member's benefit.

#### 3. The Terms of the Requested Award of Attorneys' Fees, Including Timing of Payment

The Court must consider the requested fees together with the relief to the class. *Moses v. N.Y. Times Co.*, 79 F.4th 235, 244–45 (2d Cir. 2023); *Kurtz v. Kimberly-Clark Corp.*, 142 F.4th 112, 118–21 (2d Cir. 2025); *see also Watson v. Manhattan Luxury Autos., Inc.*, No. 20 Civ. 4572 (LGS), 2026 WL 2267941, at *3–7 (S.D.N.Y. Aug. 6, 2026). Plaintiffs' separate motion requests attorneys' fees of $7,600,000 (approximately 33% of the Gross Settlement Amount), litigation expenses of $564,551.40, Settlement Administration Expenses of $90,185.70, and Case Contribution Awards of $12,000 for each of the five Settlement Class Representatives. If approved

as requested, these deductions would leave a Net Settlement Amount of $14,685,262.90. Plaintiffs' Memorandum of Law in Support of Motion for Attorneys' Fees, Expenses, and Case Contribution Awards ("Fee Mem.") at 1, 8; Izard Decl. ¶¶ 5, 19–22; Porter Decl. ¶ 10; Barrett Decl. ¶ 21. That division between counsel and the Settlement Class is reasonable. The entire Net Settlement Amount will be delivered to Settlement Class Members as increased Plan benefits under the Plan of Allocation, without any claims process for living Settlement Class Members, and Defendants' obligation to pay those increased benefits continues for life even if the benefits actually paid exceed the Net Settlement Amount. Barrett Decl. ¶ 19. That recovery was obtained despite substantial risk that the Settlement Class would recover nothing after trial and appeal, as discussed above.

The Agreement provides for payment of approved fees and costs within thirty days of the Settlement Effective Date, permits Defendants to object to the request, and does not condition the Settlement on approval of the requested awards. Settlement Agreement §§ 2.7(h)–(i), 2.8.1, 2.8.2; ECF 255 ¶ 16. These terms preserve judicial review of the deductions.

There are no agreements required to be disclosed under Rule 23(e)(3). Barrett Decl. ¶ 22.

### D. The Reaction of the Settlement Class Will Be Addressed on the Completed Record.

The *Grinnell* factors include "the reaction of the class to the settlement." *Grinnell*, 495 F.2d at 463. As of September 28, 2026, no Settlement Class Member has filed or served an objection to the Settlement, Plan of Allocation, or requested awards. Barrett Decl. ¶ 13. A low objection rate after adequate notice can support approval. *See Wal-Mart*, 396 F.3d at 118; *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 197–98 (S.D.N.Y. 2012), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013). "[T]he absence of objections by the class is extraordinarily positive and weighs in favor of settlement." *Jander*, 2021 WL 3115709, at *3 (internal quotation

marks omitted) (quoting *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 431 (S.D.N.Y. 2016)). The objection period remains open until October 23, 2026. Plaintiffs will supplement the record after that deadline and address any objections before the Fairness Hearing, consistent with ECF 255 ¶ 20.

### E. The Settlement Treats Settlement Class Members Equitably Relative to Each Other.

Rule 23(e)(2)(D) requires equitable treatment of class members relative to one another. An allocation must have a reasonable basis that accounts for differences in the claims. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 496 (S.D.N.Y. 2018). "Consideration of this factor could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *GSE Bonds*, 414 F. Supp. 3d at 698 (quoting Fed. R. Civ. P. 23(e)(2)(D) advisory committee's note to 2018 amendment). "[I]n the case of a large class action the apportionment of a settlement can never be tailored to the rights of each plaintiff with mathematical precision." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y.), aff'd, 117 F.3d 721 (2d Cir. 1997) (per curiam). Rather, an allocation must be "rationally related to the relative strengths and weaknesses of the respective claims asserted," and may account for differing litigation risks, legal defenses, and damages issues among categories of class members. *See Neor v. Acacia Network, Inc.*, No. 22-CV-4814 (ER), 2026 WL 1346866, at *2 (S.D.N.Y. May 14, 2026); *In re PaineWebber*, 171 F.R.D. at 133–34. "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel," and a "plan of allocation that reimburses class members based on the extent of their injuries is generally

reasonable." *Jander*, 2021 WL 3115709, at *6 (internal quotation marks and citations omitted); *accord Kohari*, 2025 WL 100898, at *11.

The allocation reflects both the estimated losses of the affected groups and the relative litigation risks associated with their claims. The 80/20 division of the Net Settlement Amount between the already retired and in-pay-status and the not-in-pay-status groups reflects the relative estimated losses for those groups. Barrett Decl. ¶ 15. Within the in-pay-status group, claim values reflect the difference between current and adjusted actuarial values, subject to the Plan of Allocation's litigation-risk discounts and minimum Discounted Claim Value. ECF 253-1, Plan of Allocation §§ I.A, II.

For those in pay status who are already receiving benefits, the Plan of Allocation applies a 30% reduction for specified benefit categories that are not indisputably qualified joint and survivor annuities to account for the additional risk that these benefits are not within the scope of ERISA § 205. The 25% discount for claims subject to releases accounts for the additional defense that those releases could bar recovery. These discounts recognize the potential effect of the defenses while preserving substantial value for the affected claims; they do not assume that Defendants would necessarily prevail. Barrett Decl. ¶ 16. Where both discounts apply, they operate sequentially, leaving 52.5% of the otherwise calculated claim value. Finally, the elections identified in Section III(3)(A) receive no increase because they do not involve a conversion using the actuarial assumptions challenged in this Action. Members making those elections therefore suffer no benefit reduction attributable to the challenged assumptions. Barrett Decl. ¶ 17.

For members not yet in pay status, the allocation uses a Future Settlement Percentage and applicable multipliers, with no increase for the elections listed in Section III(3)(A). ECF 253-1,

Plan of Allocation §§ II(5), III. These provisions address differences in the asserted claims and expected future benefit elections rather than assuming identical losses for every member.

Equitable treatment also requires consideration of the requested Case Contribution Awards. *See Moses*, 79 F.4th at 244–45. Recent authority evaluates a representative's time, effort, burdens, and the ultimate recovery in determining an appropriate award. *See Watson*, 2026 WL 2267941, at *8 (approving a $10,000 award). The representatives' ordinary Settlement Benefits are calculated under the applicable allocation provisions. The separately requested Case Contribution Awards total $60,000 and compensate the documented efforts described in Izard Decl. ¶¶ 22–23 and Fee Mem. at 12–13. The requested awards are modest relative to the class relief and consistent with amounts approved in this District, as explained in Fee Mem. at 12–13.

## II. The Court Should Grant Final Certification of the Settlement Class

The Court must determine that the Settlement Class satisfies Rule 23(a) and an applicable provision of Rule 23(b). Settlement removes the need to consider trial manageability, but does not relax the other certification requirements. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620–22 (1997). The Court preliminarily certified the Settlement Class under Rules 23(a) and 23(b)(1). ECF 255 ¶ 6. That class is broader than the litigation class certified in 2023: it includes additional Plan formulas and members who have not commenced benefits. *Compare* ECF 172 *with* ECF 255. The final certification analysis therefore addresses the Settlement Class as defined, including the interests of those additional groups.

### A. The Settlement Class Satisfies Rule 23(a).

#### 1. Numerosity

A forty-member class is presumed to satisfy numerosity. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). The Plan's records, as compiled in the data files provided to Epiq, identify 58,650 potential Settlement Class Members. Adediji Decl. ¶¶ 3, 6, 9;

Barrett Decl. ¶ 5. Joinder is impracticable. *See Kernan v. Metro. Life Ins. Co.*, No. 18-cv-11229 (RA) (OTW), 2023 WL 3620884, at *3 (S.D.N.Y. Mar. 17, 2023), *report and recommendation adopted sub nom. McAlister v. Metro. Life Ins. Co.*, No. 18-cv-11229 (RA), 2023 WL 5769491 (S.D.N.Y. Sept. 7, 2023).

**2. Commonality**

The central common issue is whether the challenged actuarial assumptions and conversion methods comply with ERISA's actuarial-equivalence requirements. Factual differences do not defeat commonality where the alleged injuries "derive from a unitary course of conduct by a single system." *Kohari*, 2025 WL 100898, at *6 (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)). Common questions include whether ERISA required Defendants to use different actuarial assumptions; the challenged assumptions were reasonable; the resulting annuity benefits were actuarially equivalent under each covered Plan formula and benefit form; and Settlement Class Members are entitled to recalculated benefits. Because these questions can be resolved using common proof applicable to the Settlement Class as a whole, Commonality is satisfied.

**3. Typicality**

The Settlement Class Representatives challenge Defendants' use of unreasonable actuarial assumptions to calculate benefits under the Plan. Claims arising from the same challenged conduct and presenting the same legal theory satisfy typicality notwithstanding differences in the resulting recovery. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 75 (S.D.N.Y. 2006). "[M]inor variations in the fact patterns underlying [the] individual claims" do not defeat typicality. *Kohari*, 2025 WL 100898, at *6 (quoting *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993)). The claims here rest on Defendants' calculation of benefits under the Plan and the asserted actuarial-equivalence requirements. The claims seek relief for the resulting reductions in benefits. The Representatives' pursuit of relief therefore advances the Settlement Class's shared interest in remedying the

challenged benefit calculations. The Representatives' own circumstances also span several of the categories the Plan of Allocation addresses: each receives a joint and survivor annuity calculated under the Plan's Traditional Part, with survivor percentages of 50% and 100%, and Ms. Brownell executed a separation release. Barrett Decl. ¶ 16.

**4. Adequacy**

Adequacy under Rule 23(a)(4) is twofold: the class representative must have an interest in vigorously pursuing the claims of the class and must have no interests antagonistic to those of other class members. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).

Class Counsel's experience and vigorous prosecution of this Action support their adequacy. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). The Settlement Class Representatives and the other Settlement Class Members share an interest in obtaining relief from Defendants' challenged calculation of Plan benefits. The Plan of Allocation accounts for differences in estimated losses and litigation risks, including those associated with separation releases, benefit forms, Plan formulas, and pay status, as explained above. Plaintiffs submit that these differences warrant adjustments in relative recoveries but do not create a fundamental conflict between the Representatives and the Settlement Class. *See Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013) (adequacy requires that "no fundamental conflicts exist"); *Kohari*, 2025 WL 100898, at *6. The Representatives' own recoveries are calculated under the same Plan of Allocation provisions — including, for Ms. Brownell, the release discount — that govern other members' benefits, Barrett Decl. ¶ 16, and their pursuit of relief advances the Settlement Class's common interest in remedying the challenged benefit calculations.

**5. Ascertainability**

An ascertainable class is one "defined using objective criteria that establish a membership with definite boundaries," and the requirement "will only preclude certification if a proposed class

definition is indeterminate in some fundamental way." *In re Petrobras Sec.*, 862 F.3d 250, 264, 269 (2d Cir. 2017).

The Settlement Class is defined using objective criteria — covered Plan formulas, benefit commencement or eligibility dates, and the exclusion for pre-order lump-sum elections — and membership can be determined from Defendants' records. *See In re J.P. Morgan Stable Value Fund ERISA Litig.*, No. 12-cv-2548, 2017 WL 1273963, at *12 (S.D.N.Y. Mar. 31, 2017). The Settlement Class is ascertainable.

**B. The Settlement Class Satisfies Rule 23(b)(1).**

Rule 23(b)(1)(A) is designed for cases "where the party is obliged by law to treat the members of the class alike . . . or where the party must treat all alike as a matter of practical necessity." *Amchem*, 521 U.S. at 614 (internal quotation marks omitted).

Because ERISA requires fiduciaries to treat similarly situated plan participants alike, courts regularly certify ERISA benefits claims under Rule 23(b)(1)(A). *Caufield v. Colgate-Palmolive Co.*, No. 16-cv-4170, 2017 WL 3206339, at *6 (S.D.N.Y. July 27, 2017). Absent certification, thousands of Settlement Class Members would be left to pursue individual claims, risking "inconsistent or varying adjudications" that would establish incompatible standards of conduct for Defendants with respect to the calculation of actuarially equivalent benefits under the same Plan. Fed. R. Civ. P. 23(b)(1)(A); *see McAlister*, 2023 WL 5769491, at *8. That risk "speaks directly to ERISA suits, because the defendants have a statutory obligation, as well as a fiduciary responsibility, to 'treat the members of the class alike.'" *Kohari*, 2025 WL 100898, at *7 (quoting *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 (S.D.N.Y. 2006)). The requested Plan Amendment provides a common mechanism for implementing relief under the applicable formula-specific provisions. For the additional formulas and benefit forms included in the Settlement Class, the relevant risk is that separate adjudications would impose incompatible

obligations on Defendants in administering the Plan, rather than merely produce different recovery amounts. Rule 23(b)(1)(A) is satisfied.

**III. The Notice Provided to the Settlement Class Satisfied Rule 23 and Due Process**

Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." For a class certified under Rule 23(b)(1), Rule 23(c)(2)(A) permits the Court to direct appropriate notice. The governing due-process inquiry is whether the notice is reasonably calculated, under the circumstances, to inform affected persons and allow them to present objections. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Notice need only "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114 (internal quotation marks omitted) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)).

This Court approved the form and manner of Class Notice in the Preliminary Approval Order. ECF 255 ¶ 13. The Class Notice described the Settlement, Plan of Allocation, requested awards, objection procedures and deadlines, and Fairness Hearing, and directed recipients to the Settlement Website for the underlying documents. The Adediji Declaration establishes how the approved program was carried out, including the number of Settlement Class Members to whom notice was mailed, returned mail, and follow-up efforts for undeliverable notices. Adediji Decl. ¶¶ 3–9. Notice through the Plan's contact records was suited to reaching both current benefit recipients and members not yet in pay status. *Id.* ¶¶ 3–4. Epiq mailed the Class Notice to 58,596 Settlement Class Members on July 27, 2026, and, on September 1, 2026, to the 76 records in a supplemental data file, which consisted of 42 additional potential Settlement Class Members and updated addresses for 34 previously provided records; traced and re-mailed returned notices; and projects that, upon completion of its September 29, 2026 re-mailing, it will have successfully sent

notice to 58,007 of 58,650 potential Settlement Class Members, or approximately 98.9%. Adediji Decl. ¶¶ 5–9. The implemented notice program provided a reasonable opportunity to learn of the Settlement and present objections, satisfying Rules 23(c)(2)(A) and 23(e)(1)(B) and due process. *Mullane*, 339 U.S. at 314.

## IV. The Requirements of CAFA Have Been Satisfied

The Class Action Fairness Act requires each defendant that is a party to a proposed settlement to serve the required notices on appropriate federal and state officials within ten days after the proposed settlement is filed. 28 U.S.C. § 1715(b). Final approval may not be entered until ninety days after the later of the required federal and state service dates. *Id.* § 1715(d). Defendants served the required notices on June 11, 2026, and, after some recipients reported difficulty opening the electronic exhibits, re-sent the notices with hard-copy exhibits on or about July 13, 2026. Hirschhorn Decl. ¶¶ 4–8 & Exs. A–D. Defendants have confirmed delivery to all recipients and have not received any returned mail or any response from a CAFA Notice recipient indicating an intent to object to the Settlement or to appear at the Fairness Hearing. *Id.* ¶¶ 8–9. The ninety-day period expired on September 9, 2026, and, measured from the re-mailing, will expire on October 11, 2026 — both before the November 12, 2026 Fairness Hearing. These facts establish compliance with § 1715.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement, finally certify the Settlement Class, and enter the accompanying proposed Final Approval Order and Judgment.

DATED: September 28, 2026

Respectfully submitted,

*s/ Christopher M. Barrett*

IZARD, KINDALL & RAABE LLP
Robert A. Izard (admitted pro hac vice)
Craig A. Raabe
Christopher M. Barrett
29 South Main Street, Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
Fax: (860) 493-6290
rizard@ikrlaw.com
craabe@ikrlaw.com
cbarrett@ikrlaw.com

BAILEY & GLASSER LLP
Gregory Y. Porter (admitted pro hac vice)
Mark G. Boyko
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
(202) 463-2101
(202) 463-2103 fax
gporter@baileyglasser.com
mboyko@baileyglasser.com

*Class Counsel*

**L.R. 7.1 WORD COUNT COMPLIANCE CERTIFICATE**

The undersigned hereby certifies that, pursuant to Local Rule 7.1(c), Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement complies with the word-count limitations and contains 7,449 words, as determined through the word count feature of the Microsoft Office Word version used to prepare the memorandum.

*s/ Christopher M. Barrett*

IZARD, KINDALL & RAABE LLP
Christopher M. Barrett
29 South Main Street, Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
cbarrett@ikrlaw.com